1   DANIEL C. SNYDER (Oregon State Bar No. 105127)
    *Pro hac vice*
2   PUBLIC JUSTICE
    1620 L Street NW, Suite 630
3   Washington, DC 20036
    Telephone:      (202) 861-5251
4   Facsimile:      (202) 232-7203
5   dsnyder@publicjustice.net

6   RACHEL S. DOUGHTY (California State Bar No. 255904)
    LILY A. RIVO (California State Bar No. 242688)
7   GREENFIRE LAW, PC
    2748 Adeline St., Suite A
8   Berkeley, CA 94703
    Telephone:      (510) 900-9502
9   Facsimile:      (510) 900-9502
    rdoughty@greenfirelaw.com
10  lrivo@greenfiirelaw.com
11
12  *Attorneys for Plaintiff US Right To Know*

13              UNITED STATES DISTRICT COURT
14            NORTHERN DISTRICT OF CALIFORNIA
15              SAN FRANCISCO DIVISION
16

17  US RIGHT TO KNOW,                    )   Case No. 23-CV-02956-TSH
                                         )
18          Plaintiff,                   )   **PLAINTIFF'S MOTION FOR ATTORNEYS'**
                                         )   **FEES AND COSTS**
19      v.                               )
                                         )   Hearing Date: March 20, 2025
20  UNITED STATES DEPARTMENT OF          )   Time: 10:00 a.m.
    DEFENSE, UNIFORMED SERVICES          )   Judge: Hon. Thomas Hixson
21  UNIVERSITY OF THE HEALTH SCIENCES,   )   Dept: E – 15th Floor
                                         )
22          Defendant.                   )
                                         )
23  _____ )

24
25
26
27
28

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................. III

BACKGROUND ................................................................................................................................. 1

STANDARD OF REVIEW .................................................................................................................. 5

ARGUMENT ..................................................................................................................................... 7

I.      USRTK IS ELIGIBLE FOR AN AWARD OF FEES & COSTS. .................................................. 7

    A.      *USRTK Prevailed Because the Court's FOIA Production Order is a "Judicial Order" Under 5 U.S.C. § 552(a)(4)(E)(ii)(I) that Changed the Legal Relationship Between the Parties.* ............................................................................................... 7

    B.      *USRTK Prevailed Because USU Unilaterally and Voluntarily Changed its Positions Under 5 U.S.C. § 552(a)(4)(E)(ii)(II) by Abandoning Affirmative Defenses and Claimed Exemptions.* ................................................................................. 9

    C.      *USRTK Prevailed Because this Lawsuit was the Catalyst Causing USU to Finally Respond to the FOIA Request.* ........................................................................... 10

II.     USRTK IS ENTITLED TO AN AWARD OF FEES & COSTS. .................................................. 11

III.    USRTK REQUESTS AN AWARD OF $81,821.83 IN ATTORNEYS' FEES AND COSTS.* .......................................................................................................................... 14

CONCLUSION ................................................................................................................................ 20

# TABLE OF AUTHORITIES

**CASES**

*Am. Civ. Liberties Union of N. Cal. v. Drug Enf't Agency,* 2012 WL 5951312, at *4 (N.D. Cal. Nov. 8, 2012) ................................................................................................................................. 13

*Brayton v. Off. of the U.S. Trade Rep.*, 641 F.3d 521 (D.C. Cir. 2011)..................................... 10

*Church of Scientology v. Harris*, 653 F.2d 584 (D.C. Cir. 1981)................................. 10, 11, 13

*Cotton v. Heyman*, 63 F.3d 1115 (D.C. Cir. 1995) ...................................................................... 11

*Davy v. C.I.A.*, 456 F.3d 162 (D.C. Cir. 2006) ............................................................................. 8

*Davy v. C.I.A.*, 550 F.3d 1155 (D.C. Cir. 2008) .................................................................... 6, 14

*Elec. Priv. Info. Ctr. v. Nat'l Sec. Agency*, 87 F. Supp. 3d 223 (D.D.C. 2015)........................... 7

*Environmental Defense Fund v. United States Environmental Protection Agency*, No. 17-CV-02220 (APM), 2022 WL 136792 (D.D.C. Jan. 13, 2022) ...................................................... 10

*Fox v. Vice*, 563 U.S. 826 (2011).................................................................................................. 7

*Grand Canyon Tr. v. Bernhardt*, 947 F.3d 94 (D.C. Cir. 2020) ................................................ 10

*Hiken v. Dep't of Def.*, 836 F.3d 1037 (9th Cir. 2016) ...................................................... 6, 7, 15

*Jud. Watch, Inc. v. F.B.I.*, 522 F.3d 364 (D.C. Cir. 2008) ........................................................... 8

*Jud. Watch, Inc. v. U.S. Dep't of Just.*, 878 F. Supp. 2d 225 (D.D.C. 2012).............................. 10, 12, 13

*Long v. IRS*, 932 F.2d 1309 (9th Cir. 1991)...................................................................... 6, 13, 18

*Miller v. U.S. Dep't of State*, 779 F.2d 1378 (8th Cir. 1985)..................................................... 11

*Morales v. City of San Rafael*, 96 F.3d 359 (9th Cir. 1996) ....................................................... 7

*Moreno v. City of Sacramento*, 534 F.3d 1106 (9th Cir. 2008) ................................................. 15

*Nationwide Bldg. Maint., Inc. v. Sampson*, 559 F.2d 704 (D.C. Cir. 1977) ............................... 6

*Poulsen v. Dep't of Def.*, 994 F.3d 1046 (9th Cir. 2021)............................................... 6, 7, 8, 10

*Rosenfeld v. U.S. Dep't of Just.,* 904 F. Supp. 2d 988 (N.D. Cal. 2012)................................... 14

*Sierra Club v. U.S. Env't Prot. Agency*, 75 F. Supp. 3d 1125 (N.D. Cal. 2014) ......................... 8, 11, 13

*Sierra Club v. U.S. Env't Prot. Agency*, No. 19-CV-03018 (APM), 2021 WL 7210058, at *2 (D.D.C. Mar. 31, 2021) .......................................................................................................... 9

*U.S. Dep't of Def. v. FLRA,* 510 U.S. 487 (1994) ........................................................................... 13

*Weisberg v. U.S. Dep't of Just.*, 745 F.2d 1476 (D.C. Cir. 1984) .............................................. 6

**STATUTES**

10 U.S.C. §3309 ............................................................................................................................. 4

5 U.S.C. §552(a) ..................................................................................................................... passim

5 U.S.C. §552(b) ........................................................................................................................ 3, 5

PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS
*US Right to Know v. United States Department of Defense, Uniformed Services University of the Health Sciences*
(Case No. 23-CV-02956-TSH)

Plaintiff US Right to Know ("USRTK") respectfully moves the Court for an award of attorneys' fees and costs pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552(a)(4)(E)(i). USRTK completely prevailed in this action, which caused Defendant Uniformed Services University of the Health Sciences ("USU" or the "Agency") to finally search for records responsive to USRTK's FOIA Request after 2.5 years of delay, process those records and apply any lawful exemptions, and produce those records to USRTK on a date certain consistent with this Court's Order regarding Case Management and FOIA Record Production, ECF No. 24 ("FOIA Production Order"). While USU originally redacted large portions of responsive emails and fully redacted responsive attachments, after repeated pushback by USRTK, the Agency ultimately folded and changed its position, producing records to USRTK that contained virtually no redactions. Had USU simply complied with FOIA at the time it originally received USRTK's FOIA Request in 2021, this litigation would have been avoided. Now, with the merits resolved, USRTK requests the Court order USU to compensate USRTK's attorneys for their reasonable fees and costs, as outlined herein and in the supporting declarations filed herewith.

## **BACKGROUND**

USRTK is a nonprofit investigative public health research group that uncovers, reports on, and publishes documents and information obtained through public record law and whistleblowers that expose corporate wrongdoing or government failures that threaten our health, environment, and food system. Declaration of Gary Ruskin ("Ruskin Decl."), submitted herewith, ¶ 3. USRTK has co-authored academic studies, published in journals like Public Health, and was a recipient of the 2021 James Madison Freedom of Information Award from the Society of Professional Journalists for USRTK's investigations of the food and agrochemical industries. *Id*. ¶¶ 4, 6. USRTK's work has been featured in the New York Times, the British Medical Journal, and other global media outlets. *Id*. ¶ 3.

For the last 4.5 years, USRTK has been investigating high-risk virological research and the origins of COVID-19. *Id*. ¶ 7. A major part of USRTK's investigation involves public record requests under state and federal law. *Id*. ¶ 10. USRTK has filed more than 160 international, federal, and state public record requests as part of its investigation. *Id*. The records USRTK obtains from these requests

are available on USRTK's website, as well as housed in the University of California, San Francisco's food and chemical industry document libraries. *Id*. ¶ 5. As part of its investigations, USRTK was the first group to bring to light important internal academic communications regarding the origins of COVID-19, *id.* ¶ 6, including whether the virus originated from the Wuhan Institute of Virology (the so-called "lab leak" theory) or a natural origin. *Id*. ¶¶ 7–9. Based on the records USRTK has obtained about COVID-19, the organization has written over 90 news articles about high-risk virological research and the origins of the virus, testified before Congress on the topic, and its findings have been covered in major media outlets like the Wall Street Journal and Washington Post. *Id*. ¶¶ 17, 19. Much of USRTK's work is groundbreaking: it was the first to report that U.S. scientists proposed to work with the Wuhan Institute of Virology to engineer coronaviruses with the unique features of SARS-CoV-2 the year before the virus emerged and that the scientists behind those proposals planned to do research in Wuhan to save costs, which was concealed from the U.S. Government funders. *Id*. ¶ 18.

USRTK submitted the FOIA Request at issue in this litigation to USU on January 11, 2021. *Id*. ¶ 20; ECF No. 1-1 (copy of Request). The request sought public records concerning COVID-19 from two doctors at USU and their communications with a variety of individuals and specified email domain addresses. *Id*. USU provided an automated receipt of the FOIA Request and a "delivery date" for responsive records of June 1, 2021. *Id*. ¶ 21. USU did not communicate with USRTK or respond to the FOIA Request in 2021 or 2022. *Id*. As such, USRTK wrote USU on January 11, 2023 – two years after the request was originally filed – requesting that USU provide a determination of whether it would comply with the FOIA Request, an updated estimated completion date, and a response to USRTK's request for a fee waiver. *Id*. ¶ 21; ECF No. 1 (Complaint) ¶ 46; ECF No. 22 (Answer) ¶ 46.. USU made the decision not to respond to this correspondence, and USRTK received no further communication from USU between January 11 and the date USRTK filed its Complaint, June 15, 2023. Ruskin Decl. ¶ 22.

USU filed its Answer to USRTK's Complaint on September 11, 2023. ECF No. 22. In its Answer, Defendant admits that it never responded to the FOIA Request, never responded to USRTK's written correspondences about the Request, never provided USRTK with an updated estimated

completion date, and never provided USRTK with the requisite 20-day "determination" under the FOIA. *Id*. ¶¶ 43–49, 52–53. Despite these admissions, USU raised the following affirmative defenses in its Answer: "The Complaint fails to state a claim upon which relief may be granted," "[t]he information that Defendant has withheld or will withhold in response to Plaintiff's FOIA request may be exempt in whole or part from public disclosure under FOIA, 5 U.S.C. § 552(b)," and "Plaintiff's FOIA requests [sic] fail to reasonably describe the records sought." ECF No. 22, Affirmative Defenses Nos. 1, 2 & 4.

The parties thereafter reached a stipulation on how this case would be litigated. That stipulation was tendered to the Court on September 26, 2023, with a request from the parties that the Court enter the stipulation as an Order of the Court. *See* ECF No. 24 p. 1. In the stipulation, USU stated that "Defendant has completed the process of locating potentially responsive records" and committed to providing all responsive records to USRTK within sixty days of the Court's entry of the FOIA Production Order. *Id*. ¶ 4.a. USU also committed to a streamlined process to avoid motion practice on the FOIA exemptions, wherein USRTK would provide USU a list of records it believed improperly redacted or withheld. The parties would thereafter confer about that list and, if USRTK requested, USU would provide "reasonable information to justify any exemptions or withholdings claimed." *Id*. ¶ 4.c. USU further agreed that, if it agreed to remove redactions and produce records as part of the FOIA Production Order process, it would produce those records to USRTK within thirty days. *Id*. ¶ 4.d. The Court's FOIA Production Order was signed and entered on September 28, 2023. *Id*. at 4; *see also* Declaration of Daniel C. Snyder ("Snyder Decl.") ¶¶ 12–13.

USU produced responsive records on November 29, 2023. Snyder Decl. ¶ 14. USRTK staff reviewed the records for content, substance, and responsiveness. *Id*. According to USRTK's review, "[v]irtually every record produced by USU was redacted," including "99% of the attachments" being fully withheld under FOIA Exemption 5, the deliberative process privilege. Ruskin Decl. ¶ 24. USU also asserted redactions under Exemption 4, related to confidential business information or trade secrets, and Exemption 6, which concerns "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(4), (6). Snyder Decl. ¶ 14. Exhibit A to the Snyder Decl. includes a sampling of the fully blacked out pages produced by

USU in its first production.

On January 3, 2024, USRTK provided its "List of Redactions and Withholdings" that it believed were improper under the FOIA. Snyder Decl. ¶ 15. The 26-page single-spaced letter went through the 182 emails and 492 attachments that USU had produced and redacted, providing an argument for why exemptions should not apply to the specific records. *Id*. Exhibit B to the Snyder Decl. is a copy of USRTK's January 3, 2024, letter.

The parties conferred on January 23, 2024, to discuss the withholdings. *Id*. ¶ 16. During that call, USU agreed to remove Exemption 6 redactions as they pertained to third parties, revise its deliberative process claims, provide further explanation for those withholdings, and make a second amended production of responsive records by February 28, 2024. *Id*. For its part, USU also raised at this time that records may be subject to additional withholdings under Exemption 3 (pertaining to records specifically exempt from disclosure by statute), based on 10 U.S.C. § 3309. *Id*.; *see also* Snyder Decl. Ex. C (copy of confirmatory email between counsel for parties).

On February 28, 2024, USU made its second amended production of responsive records. *Id*. USRTK again reviewed this production and identified many problematic redactions, which it asked its attorneys to review. Ruskin Decl. ¶ 27. On March 13, USU provided a letter to USRTK containing USU's justifications for its withholdings on the challenged records. Snyder Decl. ¶ 18. USU claimed its March 13 letter was subject to "FRE 408," even though the process being followed was required by the Court in its FOIA Production Order. *Id*. In that letter, USU agreed to remove Exemption 6 redactions except for some Department of Defense employees, but otherwise claimed that its withholdings under Exemption 5, deliberative process, were a proper application of the "consultant corollary." *Id*. The pertinent records were seemingly scholarly articles and science being shared with foreign nationals and non-governmental third parties, many seeking funding from USU. Ruskin Decl. ¶ 27.

On March 19, USRTK responded to USU's March 13 letter and February 28 production. In that letter, USRTK asserted that the Agency had failed to sustain its burden to substantiate its withholdings. Snyder Decl. ¶ 19. A copy of USRTK's response is contained in Exhibit D to the Snyder Decl. In its response, USRTK specifically challenged the unlawful use of the consultant corollary, and proposed a

1  path forward: USU will reprocess all deliberative process withholdings line-by-line, provide a *Vaughn*

2  index for each withholding made under Exemption 3, and provide a final position on whether it will

3  stand on its invocation of the consultant corollary. *Id.* Ex. C p. 2–3.

4      By email on March 28, USU requested an additional 45-60 days to consider USRTK's proposal,

5  which USRTK agreed to. *Id.* ¶ 20. On April 25, USU informed USRTK that it would conduct another

6  review of the outstanding Exemption 3 and 5 withholdings and make a subsequent, revised production

7  by July 3, 2024. *Id.* ¶ 21.

8      On July 8, 2024, USU made its third amended production of records responsive to the FOIA

9  Request. Ruskin Decl. ¶ 30. USRTK reviewed the records, and it became apparent "that USU had

10  changed its position and abandoned all of its withholdings." *Id.* "Whereas USU's first production had

11  redacted 99% of attachments and huge swaths of emails, the July 3 production removed virtually all

12  redactions under (b)(5) and (b)(3). Only limited and uncontested redactions under (b)(6), personal

13  privacy, remained." Snyder Decl. ¶ 22. Attached to the Snyder Decl. as Exhibit E are the unredacted

14  records previously referenced (and fully blacked out) in Exhibit A. USRTK immediately placed all

15  unredacted records on its public webpage, which has been accessed over 2,000 times in the past three

16  months alone. Ruskin Decl. ¶ 16. USRTK also provided the unredacted records to congressional staff

17  investigating matters related to COVID-19's origins. Ruskin Decl. ¶ 30. USRTK's analysis of the

18  records also shows government officials making statements that contradict certain virologists' claims

19  about the role Mr. Anthony Fauci played in grant funding decisions. *Id.* ¶ 32.

20      On July 11, 2024, USRTK advised USU that the merits portion of this case had been resolved.

21  *Id.* ¶ 23. On July 22, USRTK transmitted its fees and costs demand to USU. *Id.* The parties thereafter

22  engaged in a protracted attempt to settle USRTK's fees and costs, which was ultimately unsuccessful.

23  *Id.* ¶ 24. USRTK offered to mediate the fee dispute before a magistrate judge, but USU declined. *Id.*

24                                    **STANDARD OF REVIEW**

25      "The court may assess against the United States reasonable attorney fees and other litigation

26  costs reasonably incurred in any case under this section in which the complainant has substantially

27  prevailed." 5 U.S.C. § 552(a)(4)(E)(i). A plaintiff "substantially prevails" if the plaintiff "obtained relief

28

through either—(I) a judicial order, or an enforceable written agreement or consent decree; or (II) a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial." 5 U.S.C. § 552(a)(4)(E)(ii)(I)–(II). "A complainant is deemed eligible for a fee award by satisfying either subsection." *Poulsen v. Dep't of Def.*, 994 F.3d 1046, 1050 (9th Cir. 2021) (quotation omitted). If a plaintiff establishes eligibility to fees and costs, "the district court may, in the exercise of its discretion, determine that the [complainant] is *entitled* to an award of attorney's fees." *Id.* (alteration and emphasis in original) (citing *Long v. IRS*, 932 F.2d 1309, 1313 (9th Cir. 1991) (per curiam)).

In making the "entitlement" determination, courts consider four criteria: "(1) the public benefit from the disclosure, (2) any commercial benefit to the plaintiff resulting from the disclosure, (3) the nature of the plaintiff's interest in the disclosed documents, and (4) whether the government's withholding of the records had a reasonable basis in law." *Hiken v. Dep't of Def.*, 836 F.3d 1037, 1044 (9th Cir. 2016) (citation omitted). "Essentially, the first three factors assist a court in distinguishing between requesters who seek documents for public informational purposes and those who seek documents for private advantage." *Davy v. C.I.A.*, 550 F.3d 1155, 1160 (D.C. Cir. 2008) ("*Davy II*"). As to the fourth factor in the entitlement calculus, "[t]he question is not whether [the plaintiff] has affirmatively shown that the agency was unreasonable, but rather whether the agency has shown that it had any colorable or reasonable basis for not disclosing the material until after [the plaintiff] filed suit"; and if the agency makes such a showing, that factor is "weighed along with other relevant considerations in the entitlement calculus." *Id.* at 1162–63 (citation omitted). In deciding fees and costs, courts should "bear[] in mind that under FOIA, attorneys' fees are to be awarded in light of [FOIA's] basic policy— 'the encouragement of maximum feasible access to government information.'" *Weisberg v. U.S. Dep't of Just.*, 745 F.2d 1476, 1499 (D.C. Cir. 1984) (quoting *Nationwide Bldg. Maint., Inc. v. Sampson*, 559 F.2d 704, 715 (D.C. Cir. 1977)).

After satisfying both eligibility and entitlement, the next step is to determine an award of "reasonable" fees and costs that were "reasonably incurred" in the case. 5 U.S.C. § 552(a)(4)(E)(i). "The 'customary method' for awarding fees is the lodestar method, which is performed by multiplying the number of hours reasonably expended by the prevailing party in the litigation by 'reasonable hourly

1   rate.'" *Hiken*, 836 F.3d at 1044 (quoting *Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir.

2   1996)). There is a "strong presumption" that the lodestar figure represents a reasonable award. *Id.* "It is

3   axiomatic that 'trial courts need not, and indeed should not, become green-eyeshade accountants' in

4   examining fee requests since '[t]he essential goal in shifting fees (to either party) is to do rough justice,

5   not to achieve auditing perfection.'" *Elec. Priv. Info. Ctr. v. Nat'l Sec. Agency*, 87 F. Supp. 3d 223, 235

6   (D.D.C. 2015) (quoting *Fox v. Vice*, 563 U.S. 826, 838 (2011)).

7                                                    **ARGUMENT**

8            USRTK is both eligible and entitled to fees and costs in this case. USRTK is eligible for fees for

9   three independent reasons: (A) the Court's FOIA Production Order, ECF No. 24, is a "judicial order"

10  within the meaning of 5 U.S.C. § 552(a)(4)(E)(ii)(I) because it changed the legal relationship between

11  the parties; (B) USU voluntarily and unilaterally changed its position in this litigation as to its

12  affirmative defenses and as to its invocation of the FOIA exemptions; and (C) USRTK's case was the

13  catalyst that caused USU to respond to the FOIA Request. USRTK is entitled to fees and costs because

14  the records produced benefit the public interest, USRTK gained no commercial benefit from the

15  litigation, USRTK's interest in responsive records is to investigate the COVID-19 pandemic and

16  promote the government's transparency and accountability, and USU's failure to timely respond to the

17  FOIA and invocation of disclosure exemptions had no reasonable basis in law. Finally, USRTK's

18  requested fees and costs are reasonable and represent the exercise of sound billing discretion.

19  **I.       USRTK is Eligible for an Award of Fees & Costs.**

20           USRTK substantially prevailed in this litigation and is eligible for fees and costs under 5 U.S.C.

21  § 552(a)(4)(E)(ii)(I) (judicial order), (II) (change in agency position), and under the catalyst theory.

22           *A.   USRTK Prevailed Because the Court's FOIA Production Order is a "Judicial Order" Under*
23           *5 U.S.C. § 552(a)(4)(E)(ii)(I) that Changed the Legal Relationship Between the Parties.*

24           First, USRTK substantially prevailed by securing a "judicial order" within the meaning of 5

25  U.S.C. § 552(a)(4)(E)(ii)(I). FOIA production orders that require responsive records to be produced by a

26  date certain satisfy the "judicial order" requirement because such orders change the legal relationship of

27  the parties. For instance, in *Poulsen*, the district court issued a minute order that adopted the defendant

28

1    agency's position on when it could complete production of responsive records. 994 F.3d at 1049. The

2    Ninth Circuit held this minute order satisfied the statute's "judicial order" requirement because before

3    the order issued, the defendant agency had "no judicial direction to produce documents by specific

4    dates," meaning the order "altered the legal relationship between the parties." *Id*. at 1053 (quoting *Davy*

5    *v. C.I.A.*, 456 F.3d 162, 165–66 (D.C. Cir. 2006) ("*Davy I*").

6          The D.C. Circuit held the same in *Davy I*. There, the parties reached a joint stipulation regarding

7    a FOIA production schedule which was tendered to the district court and memorialized as a court order.

8    456 F.3d at 164. On appeal, the Court held the order satisfied the eligibility requirement because it

9    "changed the legal relationship between [the plaintiff] and the defendant" and the plaintiff "was awarded

10   some relief on the merits of his claim," namely, timely production of the sought-after government

11   records. *Id*. at 165. Courts in this district and elsewhere have reached identical conclusions. *See, e.g.,*

12   *Sierra Club v. U.S. Env't Prot. Agency*, 75 F. Supp. 3d 1125, 1141 (N.D. Cal. 2014) ("Although the

13   parties agreed on the deadlines, the fact that the Court required production by a specified date changed

14   the legal relationship between the parties and therefore qualifies Plaintiffs as eligible for fees."); *Jud.*

15   *Watch, Inc. v. F.B.I.*, 522 F.3d 364, 368–69 (D.C. Cir. 2008) (stipulation signed by district court that

16   required the production of responsive record after opportunity to apply redactions made plaintiff eligible

17   for fees and costs).

18         Here, the Court ordered Defendant to "process responsive records and release any non-exempt

19   responsive records (or portions thereof) to Plaintiff within sixty (60) days of the date of the Order of the

20   Court approving the parties' stipulation." ECF No. 24 ¶ 4.a.  The Court entered its Order on September

21   28, 2024, and USU provided USRTK with its production on November 29, 2024. Snyder Decl. ¶ 14. In

22   its Complaint, USRTK asked the Court to "Order Defendant to promptly provide USRTK all of the

23   information sought in this action," ECF No. 1 at p. 10 ¶ 1, and USU subsequently agreed to provide

24   those records by a date certain after suit commenced. As such, the Court's FOIA Production Order

25   "changed the legal relationship" between the parties, and USRTK "was awarded some relief on the

26   merits of" its claim – prompt production of responsive records. Under the statute and prevailing case

27   law, this means USRTK substantially prevailed.

28

**PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS**
*US Right to Know v. United States Department of Defense, Uniformed Services University of the Health Sciences*
(Case No. 23-CV-02956-TSH)

*B. USRTK Prevailed Because USU Unilaterally and Voluntarily Changed its Positions Under 5 U.S.C. § 552(a)(4)(E)(ii)(II) by Abandoning Affirmative Defenses and Claimed Exemptions.*

Second, USRTK substantially prevailed under 5 U.S.C. § 552(a)(4)(E)(ii)(II) because USU unilaterally and voluntarily changed its positions by abandoning its affirmative defenses and claimed exemptions. One way a FOIA plaintiff establishes eligibility under this prong is through an agency's change in its legal position during a lawsuit. For example, a plaintiff was eligible for fees and costs when the agency filed an answer asserting various affirmative defenses, but then abandoned those defenses through its conduct in litigation. *Sierra Club v. U.S. Env't Prot. Agency*, No. 19-CV-03018 (APM), 2021 WL 7210058, at *2 (D.D.C. Mar. 31, 2021). There, the Environmental Protection Agency ("EPA") argued in its answer that "[t]he Complaint fails in whole or in part to state a claim upon which relief can be granted," "Plaintiff is not entitled to information protected from disclosure by one or more exemptions to FOIA," and "Plaintiff's request does not reasonably describe the records sought." *Id*. But in a later-filed status report, EPA agreed to search for responsive records, process them, and produce them to the plaintiff. *Id*. This change in agency position was sufficient for eligibility because the defendant "cannot walk back from the litigation position it took at the start of this case." *Id*.

Just like EPA's answer, here USU's Answer pleads identical affirmative defenses: "The Complaint fails to state a claim upon which relief may be granted," "The information that Defendant has withheld or will withhold in response to Plaintiff's FOIA request may be exempt in whole or part from public disclosure under FOIA, 5 U.S.C. § 552(b)," and "Plaintiff's FOIA requests fail to reasonably describe the records sought." ECF No. 22, Affirmative Defenses Nos. 1, 2 & 4. And yet, USU entered into a stipulation in which it represented that, following the initiation of the complaint, "Defendant has completed the process of locating potentially responsive records" and agreed to process and release "non-exempt" records to Plaintiff "within sixty (60) days of the date of the Order of the Court." ECF No. 24. This about-face demonstrates a significant and unilateral change in USU's position as compared to the affirmative defenses staked out in its Answer.

Just like its affirmative defenses, USU also abandoned the overwhelming majority of its disclosure exemptions in this case. For purposes of fee eligibility, an agency's disclosure of documents

that it previously withheld under the FOIA's exemptions "plainly constitutes a voluntary or unilateral change in position by the agency caused by the lawsuit." *Jud. Watch, Inc. v. U.S. Dep't of Just.*, 878 F. Supp. 2d 225, 233 (D.D.C. 2012) (quotation omitted). This is true regardless of whether the agency claims the production was "discretionary" or already based on documents in the public record. *Id.* USRTK substantially prevailed when USU made its final production of records responsive to the FOIA Request, in which USU produced unredacted records it previously withheld. Ruskin Decl. ¶ 30.

### C. USRTK Prevailed Because this Lawsuit was the Catalyst Causing USU to Finally Respond to the FOIA Request.

Finally, USU also prevailed because this lawsuit was the catalyst causing USU to finally respond to USRTK's FOIA Request and produce responsive records. A plaintiff is eligible for fees and costs pursuant to the "catalyst" theory by showing that the "institution and prosecution of the litigation cause[d] the agency to release the documents obtained." *Grand Canyon Tr. v. Bernhardt*, 947 F.3d 94, 97 (D.C. Cir. 2020) (quoting *Church of Scientology v. Harris*, 653 F.2d 584, 587 (D.C. Cir. 1981)). "Under this doctrine, a plaintiff 'substantially prevailed' not only when he obtained an official disclosure order from a court, *but also when* he substantially caused the government to release the requested documents before final judgment." *Poulsen,* 994 F.3d at 1051 (quoting *Brayton v. Off. of the U.S. Trade Rep.*, 641 F.3d 521, 524–25 (D.C. Cir. 2011) (emphasis original)).

*Environmental Defense Fund v. United States Environmental Protection Agency* is instructive. No. 17-CV-02220 (APM), 2022 WL 136792 (D.D.C. Jan. 13, 2022). There, EPA missed the FOIA's 20-day determination deadline, sent the FOIA requester "sporadic and nonsubstantive" communications, and "never substantively responded by providing records or giving a reason for refusing to do so." *Id.* at *4. "It was only after the litigation commenced that EPA finally indicated it would process and produce responsive records." *Id.* at *5. Based on those facts, the court concluded that it was the requester's FOIA complaint that caused the defendant to release the requested records. *Id.*

Here, USRTK submitted its FOIA Request to USU on January 11, 2021. Snyder Decl. ¶ 11. The Agency's only response to the FOIA Request prior to the commencement of litigation was to provide an automatic acknowledgment of receipt and an initial due date of June 1, 2021. *Id.*; *see also* ECF No. 22,

1   Answer ¶¶ 43–44. Having heard nothing from the Agency for eighteen months, on January 11, 2023,

2   USRTK wrote an email to USU and its FOIA Public Liaison, requesting the agency provide a final

3   determination, respond to the fee waiver request, and provide an updated estimated completion date.

4   Snyder Decl. ¶ 11; ECF No. 22, Answer ¶¶ 46–49. USU did not respond to this correspondence, and

5   USRTK filed suit on June 15, 2023. *Id*. Only after the suit was commenced – some 2.5 years after the

6   submittal of the FOIA Request – did USU search for, process, and produce records to USRTK. Snyder

7   Decl. ¶ 12. If USRTK had not filed suit, it would likely still be awaiting responsive records. As such,

8   USRTK also prevailed because its lawsuit was the catalyst of USU's compliance with the FOIA.

9   **II.    USRTK is Entitled to an Award of Fees & Costs.**

10       USRTK is entitled to an award of fees & costs. The first factor in the entitlement analysis is the

11  public benefit derived from disclosure. "The public-benefit prong 'speaks for an award of attorney's fees

12  where the complainant's victory is likely to add to the fund of information that citizens may use in

13  making vital political choices.'" *Cotton v. Heyman*, 63 F.3d 1115, 1120 (D.C. Cir. 1995) (internal

14  brackets, citation omitted). The public benefit factor takes into account the "degree of dissemination and

15  the likely public impact that might result from disclosure." *Sierra Club*, 75 F. Supp. 3d at 1142 (citing

16  *Church of Scientology*, 700 F.2d at 493). It is in the public interest to disclose information to the media

17  or private parties who "seek to shed light on the actions of the government and the underlying

18  circumstances of newsworthy events." *Miller v. U.S. Dep't of State*, 779 F.2d 1378, 1389-90 (8th Cir.

19  1985).

20       As described above, USRTK is a nonprofit investigative public health research organization.

21  USRTK works to "uncover, report on, and publish documents obtained through public records laws and

22  whistleblowers that expose corporate wrongdoing or government failures that threaten our health,

23  environment, and food system." Ruskin Decl. ¶ 3. USRTK is presently engaged in "an investigation into

24  high-risk virological research and the origins of COVID-19." *Id*. ¶ 7. To that end, USRTK has filed

25  more than "160 international, federal and state public records requests, including 108 Freedom of

26  Information Act requests, seeking hundreds of thousands of pages of relevant federal record." *Id*. ¶ 10.

27       Based on the records USRTK has obtained and reviewed, USRTK has "written over 90 news

28

**PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS**
*US Right to Know v. United States Department of Defense, Uniformed Services University of the Health Sciences*
(Case No. 23-CV-02956-TSH)

1    articles about high-risk virological research and the origins of COVID-19," testified before Congress on

2    COVID-19, and findings from USRTK's COVID-19 "investigation have been covered in the Wall Street

3    Journal, New York Times, Washington Post, USA Today, New Yorker, Vanity Fair, Science, the BMJ,

4    Journal of Medical Ethics and many other outlets." *Id.* ¶¶ 17, 19. Much of this information pertains to

5    previously non-public records, and USRTK was the first organization to report that U.S. scientists

6    proposed to work with the Wuhan Institute of Virology to engineer coronaviruses with the unique

7    features of SARS-CoV-2 the year before the virus emerged from that city." *Id.* ¶ 18. USRTK also

8    "revealed that the scientists behind the proposal planned to do some of its research in Wuhan to save on

9    costs, but concealed this from DARPA (their desired funder) to evade concerns about safety and

10   security." *Id.*

11        As it pertains to the final, unredacted records produced in this case, USRTK promptly posted the

12   entire production on its public COVID-19 website, *id.* ¶ 30, which has been accessed more than 2,000

13   times in the last three months alone. *Id.* ¶ 16. USRTK also directed its staff researchers to review and

14   investigate the final records and provided them to congressional staff investigating matters related to

15   COVID-19's origins. *Id.* ¶ 30. Indeed, the records produced by USU in this case "contradicts certain

16   virologists' claims that [National Institute of Allergy and Infectious Disease Director Anthony] Fauci

17   had little to do with grant funding decisions, and that grant funding was entirely decided by the

18   [National Institute of Health's] Study Committee review. *Id.* ¶ 31. "Surely the public has an interest in

19   documents that cast doubt on the accuracy of government officials' representations regarding the

20   possible politicization of agency decisionmaking." *Judicial Watch*, 878 F. Supp. 2d at 236.

21        The public interest in COVID-19, a pandemic that killed over a million people in the United

22   States and nearly seven million people worldwide, is self-evident. Ruskin Decl. ¶ 7. There remain

23   internal disputes within the United States' agencies about whether COVID-19 was the result of a "lab

24   leak" or "natural origin." *Id.* "Only after we have access to all available evidence can we evaluate both

25   natural-origin and lab-origin hypotheses. In this context, we are working to call for, and participate in,

26   an honest, open and transparent investigation into the origin of COVID-19." *Id.* ¶ 9.

27        USRTK's work in this case adds previously non-public records into the sphere of information

28
PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS
*US Right to Know v. United States Department of Defense, Uniformed Services University of the Health Sciences*
(Case No. 23-CV-02956-TSH)

concerning COVID-19. Ruskin Decl. ¶¶ 31-32. The records, disseminated by USRTK on its webpage

and to Congressional staff, have already had a public impact. *Id.* ¶ 30. Accordingly, the public benefit

factor weighs in favor of USRTK's entitlement to fees and costs.

The second and third entitlement factors are frequently considered together. *Sierra Club*, 75 F.

Supp. 3d at 1144. In general, "[i]f either commercial benefit will inure to the plaintiff from the

[obtained] information or plaintiff intends to protect a private interest…an award of attorney's fees is

not recoverable." *Id.* (quoting *Church of Scientology,* 700 F.2d at 494). Conversely, "where plaintiff is

indigent or a nonprofit public interest group, an award of attorney's fees furthers the FOIA policy of

expanding access to government information." *Id.* Ninth Circuit precedent instructs courts evaluating

these two factors that they "should generally award fees if the complainant's interest in the information

sought was…public-oriented." *Id.* (quoting *Long*, 932 F.2d at 1316). Additionally, "where a plaintiff is a

'nonprofit public interest group, an award of attorney's fees furthers the FOIA policy of expanding

access to government information.'" *Am. Civ. Liberties Union of N. Cal. v. Drug Enf't Agency,* 2012

WL 5951312, at *4 (N.D. Cal. Nov. 8, 2012) (citing *Church of Scientology*, 700 F.2d at 494)).

Both factors weigh in favor of awarding fees and costs. USRTK is a non-profit organization.

Ruskin Decl. ¶ 3. "USRTK has no commercial interest in the records that are responsive to this Request,

because USRTK intended to use them in conjunction with its COVID-19 investigation, research, and

journalism." *Id.* ¶ 20. USRTK's advocacy in this matter contributes "significantly to public

understanding of the operations or activities of the government," especially as it relates to COVID-19

and public health emergencies. *U.S. Dep't of Def. v. FLRA,* 510 U.S. 487, 495, 114 S.Ct. 1006, 127

L.Ed.2d 325 (1994). Accordingly, the Court should find these factors support a fees and costs award.

*See also, e.g., Jud. Watch, Inc.*, 878 F. Supp. 2d at 236 (factors weigh in favor of fees where "Judicial

Watch has no commercial stake in this litigation and because it sought records from the DOJ to further

the FOIA's purpose").

The fourth factor considers "whether the government's withholding of the records sought had a

reasonable basis in law." *Sierra Club*, 75 F. Supp. 3d at 1145. The denial of a FOIA request must have a

colorable basis in law and not merely for the purpose of frustrating the requester. *Rosenfeld v. U.S.*

*Dep't of Just.,* 904 F. Supp. 2d 988, 999 (N.D. Cal. 2012) (citations omitted). The burden is on the government to demonstrate that its conduct is reasonable. *Davy II,* 550 F.3d at 1163.

      USU had no colorable basis in law in denying USRTK access to the records sought in the FOIA Request. The Agency admits that it failed to comply with the FOIA's 20-day determination deadline, failed to provide an estimated completion date, failed to render a decision on USRTK's request for a waiver of search and production fees, and failed to communicate with USRTK *whatsoever* for years until after suit was commenced. Snyder Decl. ¶¶ 11–12; ECF No. 22, Answer at ¶¶ 42–49, 72 ("Defendant admits that, as of the date of the Complaint, it had not provided Plaintiff with an estimated date of completion of any response to its FOIA request."). As to the Agency's invocation of the FOIA's disclosure exemptions, "[v]irtually every record produced by USU [in its first production] was redacted, including every attachment being fully withheld under the Deliberative Process privilege, b(5), and under alleged personal privacy interests, b(6)…99% of attachments to emails were fully withheld." Ruskin Decl. ¶ 24. After receiving USRTK's "challenge list" pursuant to the Case Management Order, ECF No. 24 ¶ 4, the Agency agreed to re-review its exemptions and made a second subsequent production that reversed some of the contested withholdings, but not all. Snyder Decl. ¶¶ 18–19. Following a second round of pushback and conferral, the Agency again agreed to re-review the production and ultimately made a third production in which "it became apparent that USU had changed its position and abandoned all of its withholdings," Ruskin Decl. ¶ 30, except for some unchallenged redactions under Exemption 6. Snyder Decl. ¶ 22.

      In sum, all entitlement factors weigh in favor of awarding USRTK fees and costs.

## III.    USRTK Requests an Award of $81,821.83 in Attorneys' Fees and Costs.*

      USRTK requests the Court award it $75,237.87 in fees and $6,583.96 in costs, for a total of $81,821.83.[1] The table below presents a summary for the Court's convenience. The hours identified herein and on the supporting declarations are current through December 18, 2024, for the Snyder firm

---

[1] Note that the Bahr and Drury declarations were necessarily prepared before the final hours were compiled and so there are some discrepancies in their final tally as compared to those included in the final motion.

and mid-day December 20, 2024, for Greenfire Law; additional hours incurred litigating "fees-on-fees" will be tendered with USRTK's reply brief:

| Timekeeper & Role | Experience | Hourly Rate | Billed Hours | Hours Sought (percent reduction) | Total Requested |
|---|---|---|---|---|---|
| Daniel C. Snyder, Lead Counsel | 15 years (as of 2025) 2010 Graduate | $878 | 62.80 | 56.52, with 10% "haircut" | $46,864.08 |
| Rachel Doughty, Co-Counsel & Local Counsel | 21 years (as of 2025) 2004 Graduate | $878 | 14.8 | 13.6 (1% reduction) | $11,501.80 |
| Lily Rivo, Co-Counsel & Local Counsel | 20 years (as of 2025) 2005 Graduate | $777 | 26.70 | 17.82 (33% reduction) | $13,457.64 |
| Christian Bucey, Co-Counsel & Local Counsel | 8 years (as of 2025) 2017 Graduate | $777 | 1.4 | 0 (100% reduction) | Zero – Billing Discretion |
| Donna Wallace, Senior Paralegal | Professional Staff | $239 | 1.8 | 0 (100% reduction) | Zero – Billing Discretion |
| Kathy Morris, Senior Paralegal | Professional Staff | $239 | .3 | .3 | $71.70 |
| Jessica San Luis, Senior Paralegal | Professional Staff | $239 | 5.2 | 4.0 (23% reduction) | $1,027.70 |
| Nuria de la Fuente, Legal Assistant | Professional Staff | $239 | 6.5 | 2.85 (56% reduction) | $681.15 |
| **Total** | | | 119.60 | 96.09 | $75,237.87 |

USRTK submits declarations herewith from attorneys Daniel C. Snyder (Exhibit F) and Rachel Doughty (Exhibit A) that contain detailed timesheets for the hours incurred in this case. At a high level, counsel incurred time preparing and filing the complaint in this case; conferring and setting a production schedule; reviewing records for the lawful use of exemptions; litigating those exemptions through repeated conferrals with USU's attorneys, and negotiating and litigating fees and costs. In contingency matters like this, *see* Snyder Decl. ¶ 10, Ruskin Decl. ¶ 13, 15, "the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008).

The lodestar calculation is based on reasonable hourly rates multiplied by hours reasonably expended in the litigation. *Hiken*, 836 F.3d at 1044. First, as to hourly rates, USRTK submits the declaration of Richard Drury,[2] an attorney licensed to practice law in the State of California. Declaration of Richard Drury ("Drury Decl.") ¶ 2. Mr. Drury, a 1990 graduate of Yale Law School, has an extensive legal background, including clerking for Chief Judge Thelton E. Henderson of this Court from 1990-1992 and serving as legal director for Communities for a Better Environment for nearly a decade. *Id*. ¶¶ 2–3. Mr. Drury is a founding partner of Lozea Drury LLP, where he represents "workers, community groups, and public interest organizations." *Id*. ¶ 3. He is also an Adjunct Professor at the University of California Berkeley School of Law, Golden Gate University School of Law, and the New College School of Law. *Id*. Mr. Drury has been named a "SuperLawyer" every year since 2008. *Id*.

"As a practicing California lawyer for over thirty years," Mr. Drury is "very familiar with rates charged by public interest lawyers in the San Francisco Bay Area and the market for services performed by attorneys with the level of experience and competence of the lawyers in this action." *Id*. ¶ 4. Mr. Drury outlines his expertise and familiarity with fee awards in this district, describing various fee awards that have been made to partners, associates, and paralegals. *Id*. ¶¶ 6–17. Mr. Drury is familiar with Greenfire Law, P.C.'s attorneys, identifying hourly rates that are consistent with those sought in this litigation for 2025 rates. *Id*. ¶ 18. Mr. Drury opines that the adjusted Laffey Matrix is a "useful benchmark in determining reasonable market rates[,]" with multiple courts relying on the Matrix, including this Court. *Id*. ¶ 19. The current Matrix contains the following rates: "paralegals - $258; 1-3 year lawyers - $473; 4-7 year lawyers - $581; 8-10 year lawyers - $839; 11-19 year lawyers - $948; 20+ year lawyers - $1,141." *Id*. ¶ 20.

Mr. Drury familiarized himself with his litigation, reviewing pertinent litigation filings, communications regarding exemptions, and settlement correspondences. *Id*. ¶¶ 21–22. Mr. Drury "reviewed the resumes and background of Plaintiff's counsel, including Daniel Snyder and the work of the nonprofit legal advocacy organization for which he serves as the Director of the Environmental

---

[2] USRTK includes the costs it has paid to its expert witnesses with this Motion. In the event that additional declarations are required, USRTK will amend its cost bill on reply.

Enforcement Project, Public Justice." *Id*. ¶ 23. Mr. Drury is also "personally familiar with Greenfire

Law, PC, and its principal, Rachel Doughty[,]" noting that they "have a reputation for high quality

public interest work." *Id*.

    In preparing his work for this case, Mr. Drury "studied the prevailing market rates for attorneys

in these areas. In doing so, I have consulted with colleagues about prevailing market rates for work in

these courts and reviewed rates based on fee awards." *Id*. ¶ 24. Based on his review of the applicable

materials and understanding of prevailing market rates in this legal community, it is Mr. Drury's opinion

that "the market rates identified by Plaintiffs' counsel are well within the range of, if not below,

prevailing market rates for attorneys with comparable expertise and skill in the San Francisco Bay Area"

and that the "rates for counsel who billed time in this matter are consistent with, or substantially lower

than, rates for attorneys with similar skill and experience for comparable litigation in the Northern

District of California." *Id*. ¶¶ 25–26. For instance, Mr. Drury believes the current rate Ms. Doughty and

Mr. Snyder would command is $1141/hour and $948/hour, respectively, although each has sought a

lower hourly rate of $878/hour, and that Ms. Rivo, who seeks $777/hour, could command $948/hour. *Id*.

¶ 26.A., C. Mr. Drury opines that a reasonable rate for legal secretaries and staff is $175-$239/hour, and

$275/hour for senior paralegal work. *Id*. ¶ 27. USRTK requests support staff be compensated at

$239/hour.

    Mr. Drury also notes that Plaintiff "achieved excellent results, as demonstrated by the fact that

through their diligent and detailed analysis, they achieved a near complete lifting of exemptions and

withholdings set forth by Defendant in their initial production of documents." *Id.* ¶ 28. This result was

achieved despite the fact that "[t]he expense and risk of public interest litigation has not diminished over

the years; to the contrary, these cases are in many ways more difficult than ever." *Id*. ¶ 29. Because of

USRTK's counsel's expertise, the excellent results achieved, and the "significant risk that they may

have received no monetary recovery for their substantial time expenditures," Mr. Drury opines that the

Court's fee award should include "a multiplier of 1.5 or higher" to "compensate for this contingent risk

as well as the exceptional result of the litigation." *Id*. ¶ 30. The use of such a multiplier is well within the

discretion of the Court, and factors that are considered in determining whether to award a multiplier

1    include "the skill requisite to perform the legal service properly," "whether the fee is fixed or

2    contingent," "the amount involved and the results obtained," and "the experience, reputation, and ability

3    of the attorneys[.]" *Long v.* 932 F.2d at 1314 n.4. As discussed in the supporting declarations and herein,

4    USRTK submits that its attorneys' skill, experience, and reputation, coupled with the excellent results

5    achieved and the contingent nature of the fee, weigh in favor of awarding a multiplier in this case.

6         The second part of the lodestar calculation relates to hours reasonably expended in the litigation.

7    USRTK retained David Bahr, a nationally recognized FOIA expert, to review its work in this case and

8    render an opinion on whether USRTK's attorneys were reasonable in their billed hours. Mr. Bahr has

9    practiced public interest law for thirty years, with a specialized expertise in FOIA litigation. Declaration

10   of David Bahr ("Bahr Decl.") ¶¶ 1–2. Mr. Bahr's FOIA expertise is exemplified by his "two-year

11   appointment, in 2014, to the twenty-member Freedom of Information Act Advisory Committee, created

12   under the auspices of the National Archives and Records Administration." *Id.* ¶ 5. Mr. Bahr was

13   awarded the "2001 Sunshine Award issued by the Society of Professional Journalists," which reflects his

14   "significant contribution to public understanding and education about laws governing open records and

15   meetings" and in recognition of his "outstanding efforts in advocacy under the [FOIA] and state public

16   records laws and personal courage in working to keep public information publicly available." *Id.* ¶ 6.

17        Mr. Bahr reviewed the case file in this matter, including pleadings, the case management and

18   FOIA record production order, timesheets, declarations of Plaintiff's counsel, correspondence between

19   the parties, and the records disclosed by USU on November 29, 2023, and on July 3, 2024. *Id.* ¶ 8. Mr.

20   Bahr concludes that "plaintiff's attorneys were efficient in prosecution of this case and that the very

21   modest amount of time for which compensation is requested is reasonable and appropriate." *Id.* ¶ 9. It is

22   Mr. Bahr's opinion that the "time for which Plaintiff seeks compensation is very reasonable and

23   appropriate for a case of this type[,]" and indeed reflects a "modest amount of time" which is "below

24   what similar FOIA cases have settled for." *Id.* ¶ 10. Mr. Bahr notes that USU's "obstinacy" in handling

25   and processing the FOIA Request and litigation is the exact type of agency behavior that sparked the

26   Open Government Act of 2007. *Id.* ¶¶ 12–13. This includes USU's "unreasonable affirmative defenses"

27   and "lack of foundation for Defendant's withholding decisions[.]" *Id.* ¶¶ 13–14. Mr. Bahr further opines

28

1  that "[t]he ultimate disclosure of the unlawfully withheld information" contained within USU's

2  responsive records "was directly caused by the 'push-back' of Plaintiff's counsel[,]" requiring USRTK

3  "to spend significant time and energy, expenditures that were a direct consequence of Defendant's

4  overly broad — and thus unlawful — assertions of FOIA's disclosure exemptions in the first two rounds

5  of production." *Id*. ¶ 15.

6          USRTK anticipates that USU will argue this case was "non-litigated" and thus USRTK

7  overbilled the matter. As such, USRTK requested Mr. Bahr to compare the hours incurred in this case to

8  other similarly-situated FOIA matters. Mr. Bahr's analysis is that "even in venues with substantially

9  lower billing rates than apply in the San Francisco legal market, these matters were resolved by federal

10 agencies agreeing to pay more, in some instances significantly more, costs and fees to resolve the cases"

11 than USRTK seeks here. *Id*. ¶ 15. Mr. Bahr opines:

12              Significantly, even in a FOIA case involving a negotiated disclosure process
              such as this matter, there are almost always a variety of good-faith
13            disagreements or questions regarding production, withholding, or search
              adequacy and other deviations from the most direct route to resolution.
14            These matters each require time and expense to address as reflected in the
              time records Plaintiff provides here, records that I believe reflect the
15            necessary and reasonable expenditures of time spent prosecuting this case.

16 *Id*. ¶ 6. Mr. Bahr concludes that the time USRTK incurred in this matter is reasonable and fully

17 compensable, including time spent preparing its case evaluation and complaint, reviewing USU's

18 unlawful invocation of the FOIA's disclosure exemptions, and corresponding with defense counsel. *Id*.

19 ¶¶ 17–21. Mr. Bahr notes that USRTK and its attorneys exercised sound billing judgment in this case,

20 reducing hours where appropriate. *Id*. ¶ 22. As such, Mr. Bahr concludes "that the modest total amount

21 of legal time for which plaintiff is requesting reimbursement is reasonable and appropriate." *Id*.

22         In addition to USRTK's fees, Plaintiff also incurred $1,005.96 in recoverable costs. These costs

23 include the filing fee, *pro hac vice* fee, postage related to the service of the complaint, and legal research

24 costs. *See* Snyder Decl. ¶ 28; Doughty Decl. ¶¶ 11-12. USRTK has also incurred $5,578.00 in

25 compensable expert witness costs for Mr. Drury ($760.00) and Mr. Bahr ($4,818.00). Doughty Decl. ¶

26

27

28

10. These costs are also recoverable.

Based on the lodestar analysis and USRTK's experts' opinions, USRTK requests the Court award it a lodestar of $75,237.86 in attorneys' fees and $6,583.96 in costs, for a total of $81,821.83.

## **CONCLUSION**

USRTK completely prevailed in this lawsuit, which caused USU to release records responsive to the FOIA Request after years of waiting and later remove virtually all of the contested withholdings on the records. USRTK is both eligible and entitled to an award of fees & costs and respectfully requests the Court award Plaintiff a total of $80,188.03 (plus additional fees incurred from the date of the included time sheets forward). USRTK asks the Court to also weigh the merits of a fee multiplier in this matter, based on the factors identified above.


Respectfully Submitted this 20th Day of December, 2024.

*/s/ Rachel Doughty*                                    */s/ Daniel C. Snyder*
RACHEL S. DOUGHTY (California State Bar        Daniel C. Snyder (Oregon State Bar No. 105127)
No. 255904)                                              *Pro hac vice*
LILY A. RIVO (California State Bar No. 242688)   PUBLIC JUSTICE
GREENFIRE LAW, PC                                    1620 L Street NW, Suite 630
2748 Adeline St., Suite A                             Washington, DC 20036
Berkeley, CA 94703                                    Telephone:      (202) 861-5251
Telephone:      (510) 900-9502                     Facsimile:      (202) 232-7203
Facsimile:      (510) 900-9502                     dsnyder@publicjustice.net
rdoughty@greenfirelaw.com
lrivo@greenfirelaw.com


*Attorneys for Plaintiff US Right to Know*


Under N.D. Cal. Local Rule 5-1(i)(3), in lieu of a signature, I attest that I obtained approval, on December 11, 2024, from Mr. Snyder for the filing of this declaration.

1

                                   /s/ *Rachel Doughty*

2

                                 Rachel Doughty
                                 ATTORNEY FOR PLAINTIFF

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS
*US Right to Know v. United States Department of Defense, Uniformed Services University of the Health Sciences*
(Case No. 23-CV-02956-TSH)