DANIEL C. SNYDER (Oregon State Bar No. 105127)
*Pro hac vice*
PUBLIC JUSTICE
1620 L Street NW, Suite 630
Washington, DC 20036
Telephone:    (202) 861-5251
Facsimile:    (202) 232-7203
dsnyder@publicjustice.net

RACHEL S. DOUGHTY (California State Bar No. 255904)
LILY A. RIVO (California State Bar No. 242688)
GREENFIRE LAW, PC
2748 Adeline St., Suite A
Berkeley, CA 94703
Telephone:    (510) 900-9502
Facsimile:    (510) 900-9502
rdoughty@greenfirelaw.com
lrivo@greenfiirelaw.com

Attorneys for Plaintiff US RIGHT TO KNOW

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| US RIGHT TO KNOW,<br><br>    Plaintiff,<br><br>    v.<br><br>UNITED STATES DEPARTMENT OF DEFENSE, UNIFORMED SERVICES UNIVERSITY OF THE HEALTH SCIENCES,<br><br>    Defendant. | Case No. 23-CV-02956-TSH<br><br>**DECLARATION OF DANIEL C. SNYDER IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS** |

I, Daniel C. Snyder, hereby declare as follows:

1. I am over the age of eighteen and competent to make this declaration, which is based upon my personal knowledge. I am lead counsel for Plaintiff US Right to Know ("USRTK") in the

1. above-captioned litigation, and am admitted in this case *pro hac vice*.

2. I make this declaration in support of Plaintiff USRTK's Motion for Attorneys' Fees and Costs.

**QUALIFICATIONS**

3. I am the Director of the Environmental Enforcement Project at PUBLIC JUSTICE, a national non-profit public interest law firm that takes on the biggest threats to justice in our society – abusive corporate power and predatory practices, the assault on civil rights and liberties, and the destruction of Earth's sustainability.

4. I graduated from the University of Oregon in 2007 (summa cum laude, Phi Betta Kappa) and from the University of Oregon School of Law in 2010 (Order of the Coif). My focus in law school was environmental law, and I successfully completed almost all of the environmental law courses offered in the curriculum. During law school, I clerked with the Oregon Department of Justice, Natural Resources Division, from 2008-2009, and participated in the Law School's Environmental Law Clinic in 2009. I held many paid positions during law school, ranging from plaintiff's securities litigation work to construction defect liability.

5. I was admitted to the Oregon State Bar in 2010 and have been a member in good standing ever since. I was admitted to the District of Columbia's Bar in 2023, where I too am in good standing.

6. Since graduating law school, the focus of my career has been the enforcement of our Nation's environmental laws against polluters. From 2010 to 2022, I practiced environmental law with the Law Offices of Charles M. Tebbutt, P.C. I joined PUBLIC JUSTICE in 2022 as a Senior Attorney, and became Director of the Environmental Enforcement Project in 2023.

7. In my career, I have litigated before many federal courts, including: the District of Oregon, the Eastern and Western Districts of Washington, the District of Colorado (admitted), the District of Columbia, the Northern District of California, the District of Montana, the Eastern District of

North Carolina, the Middle District of Florida, the District of Idaho, and the Fifth and Ninth Circuit Courts of Appeals. I have also litigated matters before the Oregon Court of Appeals, the Oregon Supreme Court, the Washington Court of Appeals, and the Idaho Supreme Court. I am admitted *pro hac vice* in the instant matter.

8.  A major component of my environmental law practice focuses on the public's access to governmental records. Knowing what our government is up to, and why, are questions that frequently arise in environmental and public health advocacy. I have assisted clients with hundreds of public record requests under State and Federal laws, with a particular expertise in the Federal Freedom of Information Act or "FOIA." I have served as lead or co-lead counsel in many FOIA cases, in courts ranging from the District of Oregon, to the District of Montana, to the District for the District of Columbia. I have also litigated nearly a dozen FOIA matters on behalf of USRTK before the Northern District of California as part of USRTK's efforts to investigate the United States government's response to the COVID-19 pandemic, perhaps the largest public health issue of our time. In the past, I have taught seminars to law students and advocates about how to use the FOIA, and routinely provide advice to fellow public interest attorneys on using the FOIA to obtain records for their clients.

9.  Despite the breadth of my FOIA experience and expertise, this is the first time I have been required to engage in motion practice for fees and costs. In every other case where my client was a prevailing party, I have been able to successfully negotiate fees and costs without involving the Court. That includes every prior case brought in this District on behalf of USRTK.

10. My public interest law practice is contingency-based, whether in the FOIA realm or in the environmental law arena. The overwhelming majority of my clients have no funds to pay attorneys' fees, even at "low bono" rates. As such, I am very familiar with the various "fee-shifting" statutes under federal law. Most recently, I was awarded a rate of $512/hour in an enforcement action in the Eastern District of Washington, Yakima division. *Community Association for Restoration of the Environment,*

*Inc. et al v. DBD Washington LLC et al.,* No. 1:19-cv-3110-TOR, Dkt. No. 191 (E.D. Wash. December 1, 2023). In that case, the Court, Judge Thomas O. Rice, awarded me 100% of the billed time that I requested to be compensated for in the litigation (591.4 hours).

## LITIGATION HISTORY

11.     This case began as most FOIA matters do – with Defendant Uniformed Services University ("USU") effectively ignoring USRTK's January 11, 2021 FOIA Request (the "Request"). Despite USU's acknowledgment of the Request with a delivery date of June 1, 2021, the agency took no action on it for two years. ECF No. 22, Answer at Paras. 43-44. When no records or correspondences were forthcoming, USRTK sent a January 11, 2023 correspondence to USU, requesting information about the status of the Request, an updated estimated completion date, and the disposition of USRTK's request for a waiver of fees. USU never responded to this correspondence, and USRTK filed suit on June 15, 2023. *Id*. at Paras. 43-48.

12.     After suit was commenced, the parties discussed a production schedule and case management process for the case. Based on those discussions, the Court entered a production order that required USU to produce records responsive to the Request within 60 days of the Court's entry of the order. ECF No. 24 at Para 4.a. Only after initiation of the case did USU "complete[] the process of locating potentially responsive records[.]" *Id*. Para. 2. The Court ordered the parties to engage in a process to discuss problematic disclosure exemptions, with Plaintiff identifying those records to which it seeks *Vaughn*-type information, and Defendant providing its specific justifications for those exemptions challenged by USRTK.

13.     The process mentioned in Para. 12 is a case management strategy that USRTK has used in its other FOIA litigation in this District. USRTK's goal in undertaking this process is to minimize the amount of motion practice that is often entailed in FOIA litigation, decreasing the cost to the U.S. taxpayer and promoting judicial efficiency.

14. USU finally produced responsive records to USRTK's January 11, 2021 FOIA Request on November 29, 2023, sixty days from the date the Court entered the Production Order (entered September 28, 2023). As per my usual practice, I asked USRTK and its staff to review the records for content, substance, and responsiveness. I was told only a short time later by USRTK that virtually all of the records produced by USU were redacted under Exemptions 5 (deliberative process) and 6 (personal privacy). In fact, 99% of the production's 492 attachments were fully blacked-out pages, and the majority of the 182 emails also contained substantial redactions. Attached hereto as Exhibit A is a true and correct copy of excerpts of USU's November 29, 2023 production, which is meant to illustrate the degree to which USU redacted responsive information. USU also asserted redactions under Exemption 4, related to confidential business information or trade secrets, and Exemption 6, which concerns "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(4), (6).

15. On January 3, 2024, USRTK provided its "List of Redactions and Withholdings" to which it requested USU substantiate its withholdings under the FOIA. The letter went through the 182 emails and attachments that USU had redacted under the FOIA, and described USRTK's preliminary reasons why it believed such redactions were improper. The 26-page, single-spaced letter concluded by "implor[ing] [USU] to take a close look at these exemptions, as many appear facially unsupportable because the withheld records either originate from outside the federal government or were shared with individuals outside the federal government, vitiating the Exemption 5 deliberative process privilege." Attached hereto as Exhibit B is a true and correct copy of USRTK's January 3, 2024 letter.

16. On January 23, 2024, I conferred with USU's attorney at the time, AUSA Ekta Dharia, by phone. We discussed USU's withholdings, USRTK's position about those withholdings, and how USU would address those concerns. During the call, USU agreed to remove b(6) redactions as to third parties, revise its deliberative process withholdings and provide further explanation for those

withholdings it maintained were lawful, and make an amended production of responsive records by February 28, 2024. USU also explained that some records may also be subject to withholding under Exemption 3, based on 10 U.S.C. § 3309. Attached hereto as Exhibit C is a true and correct copy of my email correspondence with Ms. Dharia between January 23-24, 2024.

17. USU made a second revised production of responsive records on February 28, 2024. I again asked USRTK and its staff to review this revised production. It became clear on review that USU maintained a majority of the redactions that USRTK contested as improper.

18. On March 13, 2024, USU provided a letter to USRTK, allegedly containing USU's legal justifications for withholding the challenged records. I had previously granted USU an extension to this deadline, as Ms. Dharia had been replaced on the case by AUSA Valerie Smith. USU designated this letter as "confidential" under Federal Rule of Evidence 408, even though the requested justifications were required as part of the Court's Production and Case Management Order, ECF No. 24 at Para. 4.c. In that letter, USU agreed that it would remove the challenged Exemption 6 redactions for individuals that were outside of the US Government. As to the challenged deliberative process exemptions, USU asserted that the withholdings were a proper extension of the "consultant corollary."

19. I responded to USU's letter by email dated March 19, 2024. In that email, I thanked USU for removing the challenged Exemption 6 withholdings, but I explained that USU had not sustained its burden to substantiate the remaining disclosure exemptions. As to the consultant corollary, I describe how the "doctrine only extends deliberative process protection to 'communications between Government agencies and outside consultants hired by them,' so long as 'the consultant does not represent an interest of its own, or the interest of any other client, when it advised the agency that hires it.'" *See* Exhibit D hereto, a true and correct copy of the March 19, 2024 email (quoting *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 10 (2001).

20. AUSA Valerie Smith informed me by email on March 28, 2024 that the Defendant

required an additional 45-60 days to consider USRTK's objections and proposal. USRTK stipulated to that additional time.

21. On April 25, 2024, USU informed Plaintiff that it would conduct another review of the outstanding b(3) and b(5) withholdings and make a subsequent, revised production. USRTK agreed that such a production could occur on July 3, 2024, to accommodate a prior personal obligation for Ms. Smith.

22. On July 3, 2024, USU provided its third amended production in this case. USRTK's review showed that USU had abandoned its position about the lawfulness of the exemptions being invoked. Whereas USU's first production had redacted 99% of attachments and huge swaths of emails, the July 3 production removed virtually all redactions under b(5) and b(3). Only limited and uncontested redactions under (b)(6), personal privacy, remained. Provided herewith as Exhibit E are true and correct excerpts of the previously fully-withheld records contained in Exhibit A hereto.

23. USRTK advised USU that the merits portion of this case resolved on July 11, 2024, and indicated it would provide a fees and cost demand in the near future. On July 22, I transmitted USRTK's fees and cost demand. That demand made clear that USRTK reserved all rights to appropriately modify or edit the demand if fee motion practice is required.

24. Unfortunately, after many months of negotiations, the parties were unable to settle fees and costs. On November 5, 2024, I offered to attempt to settle this matter through a magistrate judge settlement conference, but this offer was declined by USU.

**BILLING RECORDS, REQUESTED HOURLY RATES, & COSTS**

25. As an attorney that relies on contingency-fee awards, I am accustomed to keeping track of my billable time in 1/10ths of an hour, in six-minute increments. I keep track of and bill this time contemporaneously as I complete the work, with limited exception for things like client phone calls that occur while traveling, which I input manually later. I endeavor to bill hours only for time spent on

substantive work. For instance, in my billing discretion, I frequently do not record time spent on ministerial tasks or items I do not think a reasonable client would be willing to pay their attorney. An example of this would be quickly responding to an email related to the case which only required a minimal amount of my time, such as simply responding with "Yes."

26. USRTK has retained experts to assist with this fee petition – something I told USU would occur if we were forced to litigate this matter, because it is Plaintiff's burden to establish both the appropriate hourly rate and the reasonableness of the hours billed. These experts, who have submitted their own declarations with this filing, have reviewed my work, timesheet, and hours billed. They opine that the hourly rates contained within my timesheet are reasonable and appropriate for an attorney of similar skill and expertise in the Northern District of California, San Francisco Division. They also opine that the overall number of hours billed are reasonable, especially for the result obtained in this case: the complete abandonment by USU of its claimed withholdings.

27. Attached hereto as Exhibit F is a true and correct copy of my timesheet for this litigation through December 18, 2024. I have appropriately edited and modified this timesheet based on input from USRTK's experts and my own billing discretion. This includes billing certain tasks at a paralegal rate. I have also voluntarily given my time a 10% "haircut." Based on the hourly rates sought and hours incurred, my requested lodestar is $46,864.08. Additionally, Public Justice seeks compensation for 0.3 hours of senior paralegal time by Kathy Morris, for a total of $71.70.

28. Public Justice also incurred an additional $570.84 in costs in this litigation. Additional costs, including expert witness fees, are addressed in Rachel Doughty's declaration. These costs represent my own *pro hac vice* admission fee ($317); legal research costs ($251.54); and pacer charges ($2.30). The total for Public Justice is $570.84.

//

//

DECLARATION OF DANIEL C. SNYDER
23-CV-2956 TSH

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE.

Signed and dated this 20th day of December, 2024.

<u>/s/ Daniel C. Snyder</u>

Daniel C. Snyder

Under N.D. Cal. Local Rule 5-1(i)(3), in lieu of a signature, I attest that I obtained approval, on December 20, 2024, from Mr. Snyder for the filing of this declaration.

<u>  /s/ Rachel S. Doughty</u>

ATTORNEY FOR PLAINTIFF

DECLARATION OF DANIEL C. SNYDER
23-CV-2956 TSH