DANIEL C. SNYDER (Oregon State Bar No. 105127)
*Pro hac vice*
PUBLIC JUSTICE
1620 L Street NW, Suite 630
Washington, DC 20036
Telephone:     (202) 861-5251
Facsimile:     (202) 232-7203
dsnyder@publicjustice.net

RACHEL S. DOUGHTY (California State Bar No. 255904)
LILY A. RIVO (California State Bar No. 242688)
GREENFIRE LAW, PC
2748 Adeline St., Suite A
Berkeley, CA 94703
Telephone:     (510) 900-9502
Facsimile:     (510) 900-9502
rdoughty@greenfirelaw.com
lrivo@greenfiirelaw.com

Attorneys for Plaintiff US RIGHT TO KNOW

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| US RIGHT TO KNOW,<br><br>        Plaintiff,<br><br>    v.<br><br>UNITED STATES DEPARTMENT OF DEFENSE, UNIFORMED SERVICES UNIVERSITY OF THE HEALTH SCIENCES,<br><br>        Defendant. | Case No. 23-CV-02956-TSH<br><br>**EXHIBIT B**<br><br>*TO*<br><br>**DECLARATION OF DANIEL C. SNYDER IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS** |



January 3, 2024

Ekta Dharia
Assistant United States Attorney
Northern District of California
450 Golden Gate Ave.
San Francisco, CA 94102

*Via E-Mail Only to*: EDharia@usa.doj.gov

**RE:    USRTK v. USU – Plaintiff's List of Redactions and Withholdings**

Dear Ekta,

We have reviewed the records produced by USU and request that Defendant provide *Vaughn*-type information for the following records, or to remove the exemptions entirely. We identify records using the same format in which they were produced to USRTK. At the outset, it appears that the Agency did not conduct a segregability analysis on virtually all of the fully withheld attachments, which are identified as being withheld under b(5), deliberative process. Instead, these are simply redacted in total. Many of the withheld attachments either originate from outside the US Government or were sent to people outside of USU and any other federal agency. Moreover, the withheld attachments are almost universally of a scholarly, scientific nature – not the type of records created in a deliberative, "fishbowl" environment in which USU decisionmakers are formulating agency policy or law. Many of them contain "FINAL" in the name, yet were fully withheld. We implore USU to take a close look at these withholdings, as they do not appear lawful on first review.

Additionally, USRTK has concerns with the overuse of Exemption 6, which prevents USRTK from confirming whether specific records were transmitted outside of the agency, and to whom. As you will see, we have asked for information justifying all b(6) redactions as a result. Exemption 6 is not a blanket "redact every name in every document" exemption, but instead only applies to personnel and other files, disclosure of which would constitute a clearly unwarranted invasion of personal privacy. Based on the content of these emails, the scientists and staff involved should have no expectation of privacy over their names and email addresses. As such, we request that USU ensure its *Vaughn* index clearly describe whether any senders or recipients of the withheld records are non-governmental employees.

1

**Folder "Query 1 – Broder"**

- **Email 1 & Email 1 Attachment**. There are many b(6) redactions that redact both the sender and recipient of emails, as well as other contact information that does not lend itself to "personnel" files under b6. The entirety of the attachment was withheld under b(5), deliberative process (per the production letter). No line-by-line analysis appears to have been completed for segregability. Based on the email, it appears that the document being redacted is a scope of work draft.
- **Email 2 & Email 2 Attachment**. There are b(6) redactions on the email and the entirety of the attachment is withheld as deliberative. It is unclear to USRTK whether this is a document being shared within the US government, or with people outside the agency. No line-by-line analysis appears to have been completed for segregability.
- **Email 3 & Attachments to Email 3 (two)**. Almost all of the to, from, and CC fields are redacted under b(6), as well as b(6) redactions in the body of the email. The attachments are fully withheld, but appear to be a Notice of Award and Research Performance Progress Report, which are both reportorial in nature and not lending themselves to the deliberative process. No line-by-line analysis appears to have been completed for segregability.
- **Email 4 & Attachments to Email 4**. Almost all of the to, from, and CC fields are redacted under b(6), as well as b(6) redactions in the body of the email, and the attachment is fully withheld. But the attachment is a final annual progress report for a project that was already approved, not a deliberation over the formulation of agency policy or law. No line-by-line analysis appears to have been completed for segregability.
- **Email 5 & Attachments to Email 5 (four)**. Almost all of the to, from, and CC fields are redacted under b(6), as well as b(6) redactions in the body of the email. The attachments are fully withheld, but appear to be draft scientific manuscripts destined for publication that are not subject to the deliberative process. No line-by-line analysis appears to have been completed for segregability.
- **Email 6 & Attachments to Email 6 (two)**. Almost all of the to, from, and CC fields are redacted under b(6), as well as b(6) redactions in the body of the email. The attachments are fully withheld, but appear to be draft scientific manuscripts destined for publication that are not subject to the deliberative process. No line-by-line analysis appears to have been completed for segregability.
- **Email 7 & Attachments to Email 7 (one)**. Almost all of the to, from, and CC fields are redacted under b(6), as well as b(6) redactions in the body of the email. The attachment is fully withheld, but appears to be a draft longitudinal study destined for publication that is not subject to the deliberative process. No line-by-line analysis appears to have been completed for segregability.
- **Email 8 & Attachments to Email 8 (four)**. Almost all of the to, from, and CC fields are redacted under b(6), as well as b(6) redactions in the body of the email. The attachments are fully withheld, and from the content of the email, do not appear to

be draft documents concerning the formulation of agency policy or law. No line-by-line analysis appears to have been completed for segregability.

- **Email 9**. Entire fields are redacted under b(6), but they appear to include emails that were sent to large lists of people, such as the email with the subject line: "CREID 2022 Annual Meeting: Call for Abstracts."

- **Email 10 & Attachments to Email 10 (one)**. Almost all of the to, from, and CC fields are redacted under b(6), as well as b(6) redactions in the body of the email. The attachment is fully withheld, but appears to be a Year 2 Progress Report that is not subject to the deliberative process. No line-by-line analysis appears to have been completed for segregability.

- **Email 11 & Attachments to Email 11 (one redacted)**. Almost all of the to, from, and CC fields are redacted under b(6), as well as b(6) redactions in the body of the email. The redacted attachment is fully withheld, but appears to be an abstract document for participation in the Keystone Symposia, which is not the creation of USU policy or law. No line-by-line analysis appears to have been completed for segregability.

- **Email 12 & Attachments to Email 12 (one redacted)**. Almost all of the to, from, and CC fields are redacted under b(6), as well as b(6) redactions in the body of the email. The redacted attachments are fully withheld, but appear to be final documents concerning the "final Project Description, Project Summary, and Project Management Plan," which are not records reflecting the deliberative process in creating USU policy or law. No line-by-line analysis appears to have been completed for segregability.

- **Email 13 & Attachments to Email 13 (three redacted)**. Almost all of the to, from, and CC fields are redacted under b(6), as well as b(6) redactions in the body of the email. The redacted attachments are fully withheld, but appear to a "penultimate" project description of some sort, which does not reflect the deliberative process in creating USU policy or law. No line-by-line analysis appears to have been completed for segregability.

- **Email 14 & Attachments to Email 14 (one redacted)**. Almost all of the to, from, and CC fields are redacted under b(6), as well as b(6) redactions in the body of the email. The redacted attachment is fully withheld, but appears to be a near-final of a Project Description. Part of the proposed edits appear in the body of the email unredacted. No line-by-line analysis appears to have been completed for segregability.

- **Email 15 & Attachments to Email 15 (one redacted)**. Almost all of the to, from, and CC fields are redacted under b(6). The redacted attachment is fully withheld, but appears to be a near-final of a Project Description. No line-by-line analysis appears to have been completed for segregability.

- **Email 16 & Attachments to Email 16 (one redacted)**. Almost all of the to, from, and CC fields are redacted under b(6), as well as b(6) redactions in the body of the email. The redacted attachment is fully withheld, but appears to be an "example" of a NIH-formatted "biosketch" – not the formulation of agency policy or law. No line-by-line analysis appears to have been completed for segregability.

- **Email 17 (attachment unredacted)**. Almost all of the to, from, and CC fields are redacted under b(6), as well as b(6) redactions in the body of the email. Given the nature of these communications it is unreasonable that the senders and recipients would expect personal privacy.
- **Email 18 and Attachment to Email 18 (one redacted)**. Almost all of the to, from, and CC fields are redacted under b(6), as well as b(6) redactions in the body of the email. A b5 redaction is improperly made for the source of a recorded presentation. And the redacted attachment removes the names of the presenters for the Bat identification workshop, which is plainly improper.
- **Email 19 & Attachments to Email 19 (one redacted)**. Almost all of the to, from, and CC fields are redacted under b(6), as well as b(6) redactions in the body of the email. The redacted attachment is fully withheld, but appears to be "Specific Aims Mavian Bats museum.docx," which by its terms is not a document reflecting the give-and-take of USU's formulation of agency policy or law. No line-by-line analysis appears to have been completed for segregability.
- **Email 20 & Attachments to Email 20 (three redacted)**. Almost all of the to, from, and CC fields are redacted under b(6), as well as b(6) redactions in the body of the email. The redacted attachments are fully withheld, but appear to be "FINAL FINAL" versions of three records. "FINAL FINAL" versions are not deliberative, even if the records could qualify under the exemption as agency records concerning the creation of agency policy or law. No line-by-line analysis appears to have been completed for segregability.
- **Email 21 & Attachments to Email 21 (three redacted)**. Almost all of the to, from, and CC fields are redacted under b(6), as well as b(6) redactions in the body of the email. The redacted attachments are fully withheld, but were provided in response to a request from the King George Medical University for CVs related to ethical approval documents. No line-by-line analysis appears to have been completed for segregability.
- **Email 22**. This is an email from a NYT reporter and should not have any redactions on it whatsoever, especially not Exemption 6. The full, unredacted record should be produced.
- **Email 23 & Attachments to Email 23 (one redacted)**. Almost all of the to, from, and CC fields are redacted under b(6), as well as b(6) redactions in the body of the email. The attachment is fully withheld under b(5) as deliberative, but the body of the email indicates the attachment is a final record submitted to DTRA in 2019, and the grant was funded. As such, it is unclear how the attachment is subject to Exemption 5 at all. No line-by-line analysis appears to have been completed for segregability.
- **Email 24 & Attachments to Email 24 (one redacted)**. Almost all of the to, from, and CC fields are redacted under b(6), as well as b(6) redactions in the body of the email. The attachment is fully withheld under b(5) as deliberative, but the body of the email indicates that the record is merely "the author proofs for our PNAS paper." Such a record is not afforded protection from disclosure under Exemption 5, and should be

produced unredacted, as it does not pertain to the formulation of agency policy or law. No line-by-line analysis appears to have been completed for segregability.

- **Email 25 & Attachments to Email 25 (two redacted)**. Almost all of the to, from, and CC fields are redacted under b(6), as well as b(6) redactions in the body of the email. The attachments, DTRA Statement of Work and DTRA Technical proposal, are apparently final records. They do not appear to be deliberative given the name of the records, but rather pertain to a grant proposal related to the authors and recipients of the email.  is fully withheld under b(5) as deliberative, but the body of the email indicates that the record is merely "the author proofs for our PNAS paper." Such a record is not afforded protection from disclosure under Exemption 5, and should be produced unredacted, as it does not pertain to the formulation of agency policy or law. No line-by-line analysis appears to have been completed for segregability.

- **Email 26 & Attachments to Email 26 (two redacted)**. Almost all of the to, from, and CC fields are redacted under b(6), as well as b(6) redactions in the body of the email. The attachments are revised scholarly manuscripts and not records reflecting the creation of agency policy or law; indeed, the attachments appear to reflect the author's response to non-federal reviewers' comments. No line-by-line analysis appears to have been completed for segregability.

- **Email 27 & Attachments to Email 27 (four redacted)**. Almost all of the to, from, and CC fields are redacted under b(6), as well as b(6) redactions in the body of the email. The attachments are "the project summary and proposal in PDF" which appear to be final records not subject to the deliberative process. The other redactions are a word document pertaining to "COVID-related projects to collect ideas," which was generated following a conversation of the members of EID-SEARCH, a collection of individuals that do not include federal employees or USU staff. As such, these records are not subject to Exemption 5. No line-by-line analysis appears to have been completed for segregability.

- **Emails 28, 29, 30**. Almost all of the to, from, and CC fields are redacted under b(6), as well as b(6) redactions in the body of the email. A section of the body of the email is redacted under Exemption 5, which appears to be "a draft of our manuscript entitled Nipah virus dynamics in bats and implications for spillover to humans." Importantly, this draft was apparently previously shared with Science Advances, a scholarly journal and not a federal entity. The fully withheld material, having been provided outside the federal government, must be produced. No line-by-line analysis appears to have been completed for segregability.

- **Email 31 & Attachments to Email 31 (one redacted)**. Same issues with Emails 28-30. Attachment to 31 is the manuscript that was submitted to PNAS and is therefore not subject to any disclosure exemptions as it was provided outside the federal government.

- **Email 32 & Attachment to Email 32 (one redacted)**. Same issues with Emails 28-31. Additionally, adding a few minor comments to the draft that was submitted to PNAS

does not make this a deliberative document; this is not about the creation of agency policy or law, but rather agency staff doing their usual duties.

- **Email 33 & Attachment to Email 33 (two redacted)**. Same issues with Emails 28-32. Additionally, adding a few suggestions to the draft that was submitted to PNAS does not make this a deliberative document; this is not about the creation of agency policy or law, but rather agency staff doing their usual duties.
- **Emails 34 & 35**. Same issues with Emails 28-33.
- **Email 36 & Attachment to Email 36 (one redacted)**. Almost all of the to, from, and CC fields are redacted under b(6), as well as b(6) redactions in the body of the email. The attachment appears to be a summary statement for an EIDRC Grant, which is not the formulation of agency policy or law, but rather the usual course of agency staff's work. Unclear if shared outside the agency, but no line-by-line segregability analysis was performed.
- **Email 37 & Attachment to Email 37 (two redacted)**. Almost all of the to, from, and CC fields are redacted under b(6), as well as b(6) redactions in the body of the email. The attachments appear to be a "FINAL FINAL" manuscript along with the "study section roster." Does not appear to be formulation of agency policy or law. No line-by-line analysis appears to have been completed for segregability.
- **Email 38 & Attachments to Email 38 (two redacted)**. The b(6) redactions are not supportable and prevent USRTK from knowing the identify of the author of this email. The attachments are fully withheld without any line-by-line segregability analysis. The body of the email suggests the withheld records pertain to the scholarly manuscript "Nipah Virus R01 Research Strategy 2018" and the "reviewer summary." These are not interagency records in which USU decisionmakers are weighing the pros and cons of agency law or policy.
- **Email 39 & Attachment to Email 39 (one redacted)**. Again, b(6) redaction in the from line and signature prevents USRTK from knowing the name of the author, and in any event, it seems highly unlikely given the nature of the email that this author expected his or her identity to remain secret. The attachment is "the panel summary statement from our GHERI proposal" that was submitted on CoV assay development. Nonetheless, USU withheld the entirety of the record under Exemption 5, even though it does not pertain to the formulation of agency policy or law. No line-by-line analysis on segregability occurred.
- **Email 40 & Attachments to Email 40 (one redacted)**. Almost all of the to, from, and CC fields are redacted under b(6), as well as b(6) redactions in the body of the email. The attachment appear to be a "FINAL FINAL" manuscript. It should be produced because it is not a reflection of any USU deliberative process, but rather agency staff doing their usual and ordinary work. And it should be produced because, even if it could be deliberative, it is the "FINAL FINAL" record. No line-by-line segregability analysis appears to have occurred.
- **Email 41 & Attachments to Email 41 (one redacted)**. Almost all of the to, from, and CC fields are redacted under b(6), as well as b(6) redactions in the body of the email. The attachment appear to be a "FINAL FINAL" manuscript. It should be produced

because it is not a reflection of any USU deliberative process, but rather agency staff doing their usual and ordinary work. And it should be produced because, even if it could be deliberative, it is the "FINAL FINAL" record. No line-by-line segregability analysis appears to have occurred.

- **Email 42 & Attachments to Email 42 (four redacted)**. Almost all of the to, from, and CC fields are redacted under b(6), as well as b(6) redactions in the body of the email. The attachments are fully withheld but appear to be additional drafts of the EIDRC Southeast Asia manuscript. No line-by-line segregability analysis appears to have occurred.
- **Email 43 & Attachments to Email 43 (one redacted)**. Almost all of the to, from, and CC fields are redacted under b(6), as well as b(6) redactions in the body of the email. The attachments are fully withheld but appear to be additional drafts of the EIDRC Southeast Asia manuscript. No line-by-line segregability analysis appears to have occurred.
- **Email 44 & Attachments to Email 44 (one redacted)**. Almost all of the to, from, and CC fields are redacted under b(6), as well as b(6) redactions in the body of the email. The attachments are fully withheld but appear to be additional drafts of the EIDRC Southeast Asia manuscript. No line-by-line segregability analysis appears to have occurred.
- **Email 45 & Attachments to Email 45 (two redacted)**. Almost all of the to, from, and CC fields are redacted under b(6), as well as b(6) redactions in the body of the email. The attachments are fully withheld but appear to be additional drafts of the EIDRC Southeast Asia manuscript. No line-by-line segregability analysis appears to have occurred.
- **Email 46 & Attachments to Email 46 (one redacted)**. Almost all of the to, from, and CC fields are redacted under b(6), as well as b(6) redactions in the body of the email. The attachment is fully withheld but appear to be additional drafts of the EIDRC Southeast Asia manuscript. No line-by-line segregability analysis appears to have occurred.
- **Email 47 & Attachments to Email 47 (one redacted)**. Almost all of the to, from, and CC fields are redacted under b(6), as well as b(6) redactions in the body of the email. The attachment is fully withheld but appear to be additional drafts of the EIDRC Southeast Asia manuscript. No line-by-line segregability analysis appears to have occurred.
- **Email 48 & Attachments to Email 48 (one redacted)**. Almost all of the to, from, and CC fields are redacted under b(6), as well as b(6) redactions in the body of the email. The attachment is fully withheld but appear to be additional drafts of the EIDRC Southeast Asia manuscript. No line-by-line segregability analysis appears to have occurred.
- **Email 49 & Attachments to Email 49 (one redacted)**. Almost all of the to, from, and CC fields are redacted under b(6), as well as b(6) redactions in the body of the email. The attachment is fully withheld but appear to be additional drafts of the EIDRC

Southeast Asia manuscript. No line-by-line segregability analysis appears to have occurred.

- **Email 50 & Attachments to Email 50 (one redacted)**. Almost all of the to, from, and CC fields are redacted under b(6), as well as b(6) redactions in the body of the email. The attachment is fully withheld but appear to be the Nipah virus dynamics in bats manuscript submitted to Science Advances, which means it was distributed outside the federal government and should be produced.
- **Email 51 & Attachments to Email 51 (seven redacted)**. Almost all of the to, from, and CC fields are redacted under b(6), as well as b(6) redactions in the body of the email. The attachments are fully withheld, but appear to be final documents being submitted on behalf of scientific experts related to a grant award. These are final records and appear to be created in the usual course of ordinary work, and not the type of records that reflect internal decisionmakers at USU weighing agency policy or law.
- **Emails 52 & 53**. Almost all of the to, from, and CC fields are redacted under b(6), as well as b(6) redactions in the body of the email. Given the nature of this email, it is highly unlikely that the authors and recipients intended their identities to remain secret.
- **Email 54 & Attachments to Email 54 (one redacted)**. The author's email address and name are redacted under b(6), as is the recipient's name. The withheld attachment is "EcoHealth Alliance BEP proposal 2018.docx," which is not a federal government record that is subject to Exemption 5. No line-by-line segregability analysis was performed.
- **Email 55 & Attachments to Email 55 (one redacted)**. Almost all of the to, from, and CC fields are redacted under b(6), as well as b(6) redactions in the body of the email. The withheld attachment is fully redacted under b(5), but appears to be the "Project Summary" from a final state department grant, which is not subject to the deliberative process exemption. Instead, it appears to be a final document, summary in nature, that does not reveal the give-and-take of the consultative process by USU decisionmakers.

## Folder "Query 1 – Broder"

- **Email 56 & Attachments to Email 56 (one redacted)**. Almost all of the to, from, and CC fields are redacted under b(6), as well as b(6) redactions in the body of the email. The attachment, fully withheld under Exemption 5, is entitled "Thailand Y4 Scope of Work." From the content of the email, the document is reportorial in nature, discussing ongoing agency operations and not the give-and-take of the consultative process in which USU decisionmaker formulate agency policy or law. No line-by-line segregability analysis was performed.
- **Email 57 & Attachments to Email 57 (two redacted)**. The from field is redacted under b(6), as well as b(6) redactions in the body of the email. The attachments, fully withheld under Exemption 5, are apparently summary responses to a submission, i.e., scientific critiques and comments. Such a document does not lend itself to the

deliberative process, as it does not concern agency policy or law, but rather routine operations. No line-by-line segregability analysis was performed.

- **Email 58 & Attachments to Email 58 (six redacted)**. Almost all of the to, from, and CC fields are redacted under b(6), as well as b(6) redactions in the body of the email. The attachments, fully withheld under Exemption 5, are related to a draft chapter from someone writing their thesis "that covers the cattle farm project + its Appendix for your review." It is unclear how a thesis on cattle farms is the equivalent of intra-agency communications among USU decisionmakers debating the pros and cons of agency policy or law. No line-by-line segregability analysis was performed.

- **Email 59 & Attachments to Email 59 (nine redacted)**. Almost all of the to, from, and CC fields are redacted under b(6), as well as b(6) redactions in the body of the email. The attachments, fully withheld under Exemption 5, relate to a subaward proposal by Dr. Laing, and include multiple documents that do not indicate they are deliberative in nature, but rather pertain only to an award of grant funds for Dr. Laing's work. No line-by-line segregability analysis was performed.

- **Email 60 & Attachments to Email 60 (five redacted)**. Almost all of the to, from, and CC fields are redacted under b(6), as well as b(6) redactions in the body of the email. The attachments, fully withheld under Exemption 5, relate to a submission by Dr. Laing, and include multiple documents that do not indicate they are deliberative in nature, but rather pertain only to an award of grant funds for Dr. Laing's work. No line-by-line segregability analysis was performed.

- **Email 61 & Attachments to Email 61 (one redacted)**. Almost all of the to, from, and CC fields are redacted under b(6), as well as b(6) redactions in the body of the email. The attachment entitled "WABNet2-whitepaper 7Sep2022.pdf" is fully withheld without explanation. A finished white paper is not a deliberative document and does not present the type of record wherein USU decisionmakers are weighing agency policy or law. No line-by-line segregability analysis was performed.

- **Email 62 & Attachments to Email 62 (four redacted)**. Almost all of the to, from, and CC fields are redacted under b(6), as well as b(6) redactions in the body of the email. The attachments are fully withheld on deliberative process grounds, but the names of the attachments indicates they are scientific, scholarly articles that are part of USU's routine operations, not the formulation of agency policy or law. No line-by-line segregability analysis was performed.

- **Email 63 & Attachments to Email 63 (one redacted)**. Almost all of the to, from, and CC fields are redacted under b(6), as well as b(6) redactions in the body of the email. The attachment is fully withheld on deliberative process grounds, but the email indicates the attachment was the Final Feb 2023 final version that was submitted. Final submissions and final documents are not subject to deliberative process protections. No line-by-line segregability analysis was performed.

- **Emails 64, 65, and 66 & Attachments to Emails 64, 65, and 66 (six redacted)**. Almost all of the to, from, and CC fields are redacted under b(6), as well as b(6) redactions in the body of the email. The attachments pertain to a Liberia R01 Technical scientific proposal, not the weighing of USU policy or law by USU

decisionmakers in a fishbowl environment. No line-by-line segregability analysis was performed.

- **Email 67 & Attachments to Email 67 (eight redacted)**. The email originates outside of the federal government, but again because USU overused the b(6) exemption, USRTK is unable to discern the emails author or recipients. The attachments are fully withheld under the deliberative process exemption, but records that originate outside the US government cannot be afforded protection under that exemption.

- **Email 68 & Attachments to Email 68 (one redacted)**. The email appears to originate outside the federal government, but USRTK cannot fully discern the authors and recipients due to the overuse of the b(6) exemption. There is a large b(5) deliberative process exemption on Email 68, but it appears to be sent to someone outside of the federal government, meaning deliberative process cannot apply. The attachment is also fully withheld under b(5), and no line-by-line segregability analysis was performed.

- **Email 69 & Attachments to Email 69 (two redacted)**. Almost all of the to, from, and CC fields are redacted under b(6), as well as b(6) redactions in the body of the email. The attachments are fully withheld on deliberative process grounds, but the email indicates these are two examples of a final "biosketch" being provided to the recipient for his or her use in drafting their own. A biosketch is not the type of record in which USU decisionmakers are deciding agency policy or law in a fishbowl environment, and no line-by-line segregability analysis was performed.

- **Email 70 & Attachments to Email 70 (four redacted)**. Almost all of the to, from, and CC fields are redacted under b(6), as well as b(6) redactions in the body of the email. The attachments are fully withheld on deliberative process grounds, but the email indicates these are final documents pertaining to R01 budgets and justifications. It is unclear to USRTK how these records can be withheld as deliberative when they are reportorial in nature and do not suggest the give-and-take of the consultative process. No line-by-line segregability analysis was performed.

- **Email 71 & Attachments to Email 71 (two redacted)**. Almost all of the to, from, and CC fields are redacted under b(6), as well as b(6) redactions in the body of the email. However, USU did not redact the "to" line, which indicates these documents were transmitted directly outside of the federal government to someone at the "CREID" network, a non-federal entity. No deliberative process exemption can be afforded to these records as a result.

- **Email 72 & Attachments to Email 72 (one redacted)**. Almost all of the to, from, and CC fields are redacted under b(6), as well as b(6) redactions in the body of the email. From the content of the email, this conversation is of a routine nature that does not involve the deliberative process, such as updating a project title within the attachment. The fully withheld record is a "signed" "Other Support" document that does not indicate or suggest it is deliberative in any way, but rather part of the routine operations of USU and its staff. No line-by-line segregability analysis was performed.

- **Email 73 & Attachments to Email 73 (seven redacted)**. Almost all of the to, from, and CC fields are redacted under b(6), as well as b(6) redactions in the body of the email. The fully withheld records appear to be related to a "Pilot study full v5.pdf," which is not of a deliberative nature, but rather a scientific proposal. The content of the email confirms that the conversations taking place were of a scientific, scholarly nature. No line-by-line segregability analysis was performed.
- **Email 74 & Attachments to Email 74 (five redacted)**. Almost all of the to, from, and CC fields are redacted under b(6), as well as b(6) redactions in the body of the email. The fully withheld records appear to be related to scientific research, not the formulation of USU policy or law. The content of the email confirms that the attachments are things such as "Vertebrate Animals Section," "Human Subject Research," "Foreign Clearance," and a "Letter of Collaboration from CREID RC signed by [REDACTED]." These records are plainly not of a deliberative nature. No line-by-line segregability analysis was performed.
- **Email 75 & Attachments to Email 75 (three redacted)**. Almost all of the to, from, and CC fields are redacted under b(6), as well as b(6) redactions in the body of the email. The fully withheld records appear to be related to scientific research, not the formulation of USU policy or law. The content of the email confirms that the attachments are things such as a "biosketch," "blood specimens in animal-human," and apparently a list of equipment and facilities at EIDCC. These records are plainly not of a deliberative nature. No line-by-line segregability analysis was performed.
- **Email 76 & Attachments to Email 76 (nine redacted)**. Almost all of the to, from, and CC fields are redacted under b(6), as well as b(6) redactions in the body of the email. The fully withheld records appear to be related to scientific research, not the formulation of USU policy or law. The content of the email confirms that the attachments are related to the pilot application, and likely were sent or received by individuals outside of the federal government. Even if the records were entirely internal, how can things like a "mentoring plan" and "proposal cover sheet" reflect the give-and-take of the consultative process by USU decisionmakers? No line-by-line segregability analysis was performed.
- **Email 77 & Attachments to Email 77 (two redacted)**. Almost all of the to, from, and CC fields are redacted under b(6), as well as b(6) redactions in the body of the email. The fully withheld records appear to be related to scientific research, not the formulation of USU policy or law. They also appear to have been shared outside the federal government. No line-by-line segregability analysis was performed.
- **Email 78 & Attachments to Email 78 (three redacted)**. Almost all of the to, from, and CC fields are redacted under b(6), as well as b(6) redactions in the body of the email. The fully withheld records appear to be related to scientific research, not the formulation of USU policy or law. They also appear to have been shared outside the federal government. No line-by-line segregability analysis was performed.
- **Email 79 & Attachments to Email 79 (three redacted)**. Almost all of the to, from, and CC fields are redacted under b(6), as well as b(6) redactions in the body of the email. The fully withheld records appear to be related to scientific research and the

CREID non-governmental entity, not the formulation of USU policy or law. They also appear to have been shared outside the federal government. No line-by-line segregability analysis was performed.

- **Email 80 & Attachments to Email 80 (one redacted)**. Almost all of the to, from, and CC fields are redacted under b(6), as well as b(6) redactions in the body of the email. The fully withheld records appear to be related to scientific research regarding the NIH Biosketch for Liberia R01 proposal, not the formulation of USU policy or law. They also appear to have been shared outside the federal government. No line-by-line segregability analysis was performed.

- **Email 81 & Attachments to Email 81 (four redacted)**. Almost all of the to, from, and CC fields are redacted under b(6), as well as b(6) redactions in the body of the email. The fully withheld records appear to be related to scientific research and the CREID non-governmental entity, not the formulation of USU policy or law. They also appear to have been shared outside the federal government. No line-by-line segregability analysis was performed.

- **Email 82 & Attachments to Email 82 (one redacted)**. Almost all of the to, from, and CC fields are redacted under b(6), as well as b(6) redactions in the body of the email. The fully withheld records appear to be related to scientific research concerning Bangladesh Bats, not the formulation of USU policy or law. They also appear to have been shared outside the federal government. No line-by-line segregability analysis was performed.

- **Email 83 & Attachments to Email 83 (one redacted)**. Almost all of the to, from, and CC fields are redacted under b(6), as well as b(6) redactions in the body of the email. This is a particularly egregious overuse of Exemption 6, as the email is a "blast" to a set of recipients that voluntarily signed up for the information. The withheld record is the "Final Agenda" for the CREID 2022 Annual Meeting. Despite this being a publicly-facing document, USU redacted *every single name* on the record under Exemption 6. Given this record originated outside the federal government, no redactions are justifiable.

- **Email 84 & Attachments to Email 84 (two redacted)**. Almost all of the to, from, and CC fields are redacted under b(6), as well as b(6) redactions in the body of the email. The fully withheld records appear to be related to scientific research concerning Bangladesh Bats, not the formulation of USU policy or law. They also appear to have been shared outside the federal government. No line-by-line segregability analysis was performed on the withheld attachments (fully redacted), which per the content of the email are "two successful applications for 2021 and 2022 for your reference." How can successful applications submitted to the CREID network years prior be part of USU's deliberative process for the creation of agency policy or law? No line-by-line segregability analysis was performed.

- **Email 85 & Attachments to Email 85 (two redacted)**. Almost all of the to, from, and CC fields are redacted under b(6), as well as b(6) redactions in the body of the email. This is a particularly egregious overuse of Exemption 6, as the email is a "blast" to a set of recipients that voluntarily signed up for the information. The

12

withheld record are the final agendas for the CREID 2022 Annual Meeting. Despite this being a publicly-facing document, USU redacted *every single name* on the record under Exemption 6. Given this record originated outside the federal government, no redactions are justifiable.

- **Email 86 & Attachments to Email 86 (one redacted)**. Almost all of the to, from, and CC fields are redacted under b(6), as well as b(6) redactions in the body of the email. The fully withheld records appear to be related to scientific research concerning Bangladesh Bats, not the formulation of USU policy or law. They also appear to have been shared outside the federal government. No line-by-line segregability analysis was performed on the withheld attachment (fully redacted), which per the content of the email is a draft manuscript that is intended for submission to the journal "Nature Communications." USRTK submits that draft manuscripts destined for publication in publicly-facing journals are not deliberative in nature, especially when shared (or, in this case, generated) outside the federal government. No line-by-line segregability analysis was performed.

- **Emails 87, 89 & Attachments to Emails 87, 89 (two total redacted)**. Almost all of the to, from, and CC fields are redacted under b(6), as well as b(6) redactions in the body of the email. The email was shared with someone outside the federal government at EcoHealth Alliance, and the attachment itself appears to be of a purely scientific nature that originated outside the federal government, "EcoHealth Serological Stats." No line-by-line segregability analysis was performed.

- **Email 88 & Attachments to Email 88 (four redacted)**. Almost all of the to, from, and CC fields are redacted under b(6), as well as b(6) redactions in the body of the email. The fully withheld records appear to be related to scientific research, not the formulation of USU policy or law. They also appear to have been shared outside the federal government. The email itself indicates that there were edits from an individual "from UNC," which USRTK interprets as the University of North Carolina (i.e., not a federal employee on which the deliberative process could arguably attach). No line-by-line segregability analysis was performed.

- **Email 90 & Attachments to Email 90 (two redacted)**. Almost all of the to, from, and CC fields are redacted under b(6), as well as b(6) redactions in the body of the email. The fully withheld records appear to be related to scientific research, not the formulation of USU policy or law, as they pertain to individuals not receiving grant money on the "NSF PIPP" proposal. The email indicates they are the "panel summary and reviews," which again are not USU deliberative documents and may have been shared outside the federal government. No line-by-line segregability analysis was performed.

- **Email 91 & Attachments to Email 91 (one redacted)**. Almost all of the to, from, and CC fields are redacted under b(6), as well as b(6) redactions in the body of the email. The fully withheld records appear to be related to scientific research, not the formulation of USU policy or law, as they pertain to notes from an NSF PIPP proposal planning call. No line-by-line segregability analysis was performed.

13

- **Email 92 & Attachments to Email 92 (two redacted)**. Almost all of the to, from, and CC fields are redacted under b(6), as well as b(6) redactions in the body of the email. The fully withheld records appear to be related to scientific research and DEEP Vision, not the formulation of USU policy or law. No line-by-line segregability analysis was performed. Based on the large number of recipients of these messages, USRTK does not believe they were fully internal to USU or other federal agencies, but rather shared with non-federal individuals, vitiating any deliberative process.
- **Email 93 & Attachments to Email 93 (one redacted)**. Almost all of the to, from, and CC fields are redacted under b(6), as well as b(6) redactions in the body of the email. The fully withheld records appear to be related to scientific research, not the formulation of USU policy or law. No line-by-line segregability analysis was performed, and the record itself names "PCR Lab Protocols" does not lend itself to being deliberative in any sense, but rather reportorial.
- **Email 94 & Attachments to Email 94 (one redacted)**. Almost all of the to, from, and CC fields are redacted under b(6), as well as b(6) redactions in the body of the email. The fully withheld records appear to be related to scientific research, not the formulation of USU policy or law. No line-by-line segregability analysis was performed. The originator of the email is from EcoHealth Alliance and not a federal entity, and it appears that author was included in every email in the chain. No withholdings are legally justified.
- **Email 95 & Attachments to Email 95 (two redacted)**. Almost all of the to, from, and CC fields are redacted under b(6), as well as b(6) redactions in the body of the email. The fully withheld records appear to be related to scientific research, not the formulation of USU policy or law. No line-by-line segregability analysis was performed. The originator of the email is from someone at CSU and not a federal entity, and it appears that author was included in every email in the chain. No withholdings are legally justified.
- **Email 96**. Almost all of the to, from, and CC fields are redacted under b(6), as well as b(6) redactions in the body of the email. The originator of the email is from someone at outside the agency, and it appears that author was included in every email in the chain. No withholdings are legally justified.
- **Email 97 & Attachments to Email 97 (one redacted)**. Almost all of the to, from, and CC fields are redacted under b(6), as well as b(6) redactions in the body of the email. This is an email that is being sent to a variety of individuals interested in participating in the Bat One Health Research Network. The originator of the email is from someone outside the federal government. USU perplexingly made dozens of b6 redactions on the attachment, a publicly-facing document about the bat research network and people who actively volunteered and participated in the 2018 workshop. No withholdings are legally justified.

14

<u>Folder "Query 2 – Broder"</u>

- **Emails 98, 99 & Attachments to Emails 98, 99 (two redacted)**. Almost all of the to, from, and CC fields are redacted under b(6), as well as b(6) redactions in the body of the email. This is an email that is being sent to a variety of individuals interested in participating in the Nipah R&D Roadmap Taskforce. The originator of the email is from someone outside the federal government, and it is highly likely given the content of the email that there are recipients also outside the federal government. The fully-withheld record under b(5) is entitled either "Nipad Roadmap TF Meeting Summary.final.docx" or "Nipad RD roadmap.postmeetingrevision.august2023.docx" **Note: only one of these attachments was provided, and USRTK requests USU ensure the second attachment is also reviewed and produced.** No line-by-line segregability analysis was performed, and it appears from the content of the email that the nature of the records is not deliberative, but rather routine work being done with partners outside the federal government, such the World Health Organization.

- **Email 100 & Attachments to Email 100 (seven redacted)**. Almost all of the to, from, and CC fields are redacted under b(6), as well as b(6) redactions in the body of the email. The fully withheld records appear to be related to scientific research and the Rp4 Research Strategy, not the formulation of USU policy or law. No line-by-line segregability analysis was performed on any of the fully withheld attachments, all of which are redacted under b5 as deliberative process. USRTK suspects these emails were exchanged with individuals outside the federal government and scope of the deliberative process, given the multiple "External Email Warning" flags throughout the email chain.

- **Email 101 & Attachments to Email 101 (six redacted)**. Almost all of the to, from, and CC fields are redacted under b(6), as well as b(6) redactions in the body of the email. The fully withheld records appear to be related to scientific research, not the formulation of USU policy or law. No line-by-line segregability analysis was performed on any of the fully withheld attachments, all of which are redacted under b5 as deliberative process. USRTK suspects these emails were exchanged with individuals outside the federal government and scope of the deliberative process, given the multiple "External Email Warning" flags throughout the email chain.

- **Email 102 & Attachments to Email 102 (one redacted)**. Almost all of the to, and CC fields are redacted under b(6), as well as b(6) redactions in the body of the email. The fully withheld records appear to be related to scientific research, not the formulation of USU policy or law. It is entitled "RP5 Research Strategy U190-UTMB USU Final.pdf," and per the redaction is withheld as deliberative process under Exemption 5. USRTK suspects these emails originated from, and were exchanged with, individuals outside the federal government and thus outside the scope of the deliberative process, given the multiple "External Email Warning" flags throughout the email chain. At the bottom of the email chain there is an indication

15

that the author is from the University of Texas, Medical Branch (UTMB). No redactions are legally justifiable.

- **Email 103 & Attachments to Email 103 (four redacted)**. Almost all of the to, from, and CC fields are redacted under b(6), as well as b(6) redactions in the body of the email. The fully withheld records appear to be related to scientific research, not the formulation of USU policy or law. All four records are withheld fully pursuant to the deliberative process exemption, yet were seemingly shared (and perhaps originated) outside the federal government, given the "External Email Warning" flag in the email chain.

- **Email 104 & Attachments to Email 104 (four redacted)**. Almost all of the to, from, and CC fields are redacted under b(6), as well as b(6) redactions in the body of the email. The fully withheld records appear to be related to scientific research and "Core D," not the formulation of USU policy or law. All four records are withheld fully pursuant to the deliberative process exemption, yet were seemingly shared (and perhaps originated) outside the federal government. The records are all "FINAL," meaning that even if these were truly internal deliberative records, they reflect the final decisions made by USU personnel and therefore are not subject to the deliberative process exemption. No line-by-line segregability analysis was performed.

- **Email 105 & Attachments to Email 105 (one redacted)**. Almost all of the to, from, and CC fields are redacted under b(6), as well as b(6) redactions in the body of the email. The fully withheld records appear to be related to scientific research, not the formulation of USU policy or law. Per the redaction, the fully-withheld record is subject to the deliberative process under Exemption 5. USRTK suspects these emails originated from, and were exchanged with, individuals outside the federal government and thus outside the scope of the deliberative process, given the multiple "External Email Warning" flags throughout the email chain. At the bottom of the email chain there is an indication that the author is from the University of Texas, Medical Branch (UTMB). No redactions are legally justifiable.

- **Email 106 & Attachments to Email 106 (six redacted)**. Almost all of the to, from, and CC fields are redacted under b(6), as well as b(6) redactions in the body of the email. The fully withheld records appear to be related to scientific research and research strategies for RP1-Bunyavirales Vaccine, not the formulation of USU policy or law. All six records are withheld fully pursuant to the deliberative process exemption, yet were seemingly shared (and perhaps originated) outside the federal government. No line-by-line segregability analysis was performed. There are multiple b(5) redactions on Email 106 that do not appear supportable, as these correspondences and emails were exchanged directly outside the US government with individuals at UTMB, vitiating any possible disclosure exemptions.

- **Email 107 & Attachments to Email 107 (two redacted)**. Almost all of the to, from, and CC fields are redacted under b(6), as well as b(6) redactions in the body of the email. The fully withheld records appear to be related to scientific research and research strategies, not the formulation of USU policy or law. All two records are withheld fully pursuant to the deliberative process exemption, yet were seemingly

shared (and perhaps originated) outside the federal government. No line-by-line segregability analysis was performed. Finally, the content of the email is routine in nature, not reflecting the give-and-take of the consultative process by decisionmakers at USU.

- **Email 108 & Attachments to Email 108 (one redacted)**. Almost all of the to, from, and CC fields are redacted under b(6), as well as b(6) redactions in the body of the email. The fully withheld record is purely scientific in nature – the final "Research Strategy for the Overall [sic] for the UTMB and USUHS ReVAMPP Center." And the record is "final" by its terms, such that even if it could be deemed "deliberative," it is the final agency action on this particular topic. Additionally, from the content of this email, USRTK strongly suspects it was shared outside the US government with UTMB employees. No line-by-line segregability analysis was performed.

- **Email 109 & Attachments to Email 109 (nine redacted)**. Almost all of the to, from, and CC fields are redacted under b(6), as well as b(6) redactions in the body of the email. The fully withheld records appear to be related to scientific research, not the formulation of USU policy or law. All nine records are withheld fully pursuant to the deliberative process exemption, yet were seemingly shared (and perhaps originated) outside the federal government. No line-by-line segregability analysis was performed. Given that these correspondences and emails were exchanged directly outside the US government with individuals at UTMB (and perhaps elsewhere), any possible disclosure exemptions are vitiated.

- **Email 110 & Attachments to Email 110 (nine redacted)**. Almost all of the to, from, and CC fields are redacted under b(6), as well as b(6) redactions in the body of the email. The fully withheld records appear to be related to scientific research, not the formulation of USU policy or law. All nine records are withheld fully pursuant to the deliberative process exemption, yet originated outside the federal government, as the author of the email is an employee at UTMB and attached all of these documents to the email. No line-by-line segregability analysis was performed. Given that these correspondences and emails were exchanged directly outside the US government with individuals at UTMB (and perhaps elsewhere), any possible disclosure exemptions are vitiated.

- **Email 111 & Attachments to Email 111 (eight redacted)**. Almost all of the to, from, and CC fields are redacted under b(6), as well as b(6) redactions in the body of the email. The fully withheld records appear to be related to scientific research, not the formulation of USU policy or law. All nine records are withheld fully pursuant to the deliberative process exemption, yet originated outside the federal government, as the author of the email is an employee at UTMB and attached all of these documents to the email. No line-by-line segregability analysis was performed. Given that these correspondences and emails were exchanged directly outside the US government with individuals at UTMB (and perhaps elsewhere), any possible disclosure exemptions are vitiated.

- **Email 112 & Attachments to Email 112 (35 redacted)**. Almost all of the to, from, and CC fields are redacted under b(6), as well as b(6) redactions in the body of the

email. The fully withheld records appear to be related to scientific research, not the formulation of USU policy or law. All nine records are withheld fully pursuant to the deliberative process exemption, yet originated outside the federal government, as at least one of the authors of the email and withheld attachments is an employee at UTMB, and the email itself was written by someone at the Henry Jackson Foundation for the Advancement of Military Medicine, a non-governmental non-profit organization. No line-by-line segregability analysis was performed. Given that these correspondences and emails were exchanged directly outside the US government with individuals at UTMB, HJF, and perhaps elsewhere, any possible disclosure exemptions are vitiated.

- **Email 113 & Attachments to Email 113 (two redacted)**. Almost all of the to, from, and CC fields are redacted under b(6), as well as b(6) redactions in the body of the email. The fully withheld records appear to be related to scientific research, not the formulation of USU policy or law. All records are withheld fully pursuant to the deliberative process exemption, yet appear to have originated outside the federal government, or at the very least were shared outside of the federal government. No line-by-line segregability analysis was performed. Given that these correspondences and emails were exchanged directly outside the US government with individuals, it is difficult to understand how the material is subject to the deliberative process. This includes the b(5) redactions appearing in the body of the email, which were shared outside the federal government pursuant to the multiple "External Email Warning."

- **Email 114 & Attachments to Email 114 (three redacted)**. Almost all of the to, from, and CC fields are redacted under b(6), as well as b(6) redactions in the body of the email. The fully withheld records appear to be related to scientific research, not the formulation of USU policy or law. They were shared, or perhaps originated with, non-governmental individuals outside the scope of the deliberative process. The withheld records are entitled "UTMB Core D Project Summary," "Specific Aims Core D," and "UWashington Core D Research Strategy." No line-by-line segregability analysis was performed.

- **Email 115 & Attachments to Email 115 (four redacted)**. Almost all of the to, from, and CC fields are redacted under b(6), as well as b(6) redactions in the body of the email. The fully withheld records appear to be related to scientific research, not the formulation of USU policy or law. They were shared, or perhaps originated with, non-governmental individuals outside the scope of the deliberative process. No line-by-line segregability analysis was performed, and the content of the email demonstrates that these materials were not kept inside the agency, but rather transmitted to UTMB and likely staff at the University of Washington.

- **Email 116 & Attachments to Email 116 (four redacted)**. Almost all of the to, from, and CC fields are redacted under b(6), as well as b(6) redactions in the body of the email. The fully withheld records appear to be related to scientific research, not the formulation of USU policy or law. They were shared, or perhaps originated with, non-governmental individuals outside the scope of the deliberative process. No line-by-line segregability analysis was performed, and the content of the email

demonstrates that these materials were not kept inside the agency, but rather transmitted to UTMB.

- **Email 117 & Attachments to Email 117 (nine redacted)**. Almost all of the to, from, and CC fields are redacted under b(6), as well as b(6) redactions in the body of the email. The fully withheld records appear to be related to scientific research, not the formulation of USU policy or law. Per the content of the email, this message and all attachments originated from someone at UTMB, meaning they cannot be afforded protection as deliberative documents reflecting the give-and-take of the consultative process at USU. No line-by-line segregability analysis appears to have been performed. It is difficult to believe that something as innocuous as an "org chart" and "abstract summary" have absolutely no segregable information from otherwise exempt material, especially given the factual and reportorial nature of the titles of the withheld records.

- **Email 118 & Attachments to Email 118 (22 redacted)**. Almost all of the to, from, and CC fields are redacted under b(6), as well as b(6) redactions in the body of the email. The fully withheld records appear to be related to scientific research, not the formulation of USU policy or law. Per the content of the email, this message and all attachments were transmitted to someone at UTMB, meaning they cannot be afforded protection as deliberative documents reflecting the give-and-take of the consultative process at USU. No line-by-line segregability analysis appears to have been performed.

- **Email 119 & Attachments to Email 119 (nine redacted)**. Almost all of the to, from, and CC fields are redacted under b(6), as well as b(6) redactions in the body of the email. The fully withheld records appear to be related to scientific research, not the formulation of USU policy or law. Per the content of the email, this message and all attachments were transmitted to someone at UTMB, meaning they cannot be afforded protection as deliberative documents reflecting the give-and-take of the consultative process at USU. No line-by-line segregability analysis appears to have been performed.

- **Email 121**. Almost all of the to, from, and CC fields are redacted under b(6), as well as b(6) redactions in the body of the email. Based on how the email is written, the b(5) and b(6) redactions appear to be over material that was shared outside the US government with non-governmental employees, vitiating any possible disclosure exemptions.

- **Email 122 & Attachments to Email 122 (three redacted)**. Almost all of the to, from, and CC fields are redacted under b(6), as well as b(6) redactions in the body of the email. Per the content of the email, the withheld material under b(5) as deliberative process did not originate with USU, but rather was transmitted from someone outside the federal government at HJF. Records that originate from outside the federal government cannot be afforded deliberative process protection.

- **Email 124 & Attachments to Email 124 (two redacted)**. Almost all of the to, from, and CC fields are redacted under b(6), as well as b(6) redactions in the body of the email. The fully withheld records appear to be related to scientific research, not the

formulation of USU policy or law. Per the content of the email, this message and all attachments were transmitted to someone outside the agency at the Gates Foundation, meaning they cannot be afforded protection as deliberative documents reflecting the give-and-take of the consultative process at USU. No line-by-line segregability analysis appears to have been performed.

- **Email 125 & Attachments to Email 125 (one redacted)**. Almost all of the to, from, and CC fields are redacted under b(6), as well as b(6) redactions in the body of the email. The fully withheld record appears to be related to scientific research and reviews from a scientific panel of experts, not the formulation of USU policy or law by decisionmakers. Expert panel comments are not afforded deliberative process protection. USRTK notes that b(5) was applied over text that is plainly not deliberative, but rather factual in nature, such as the "impact score" and the "[REDACTED] percentile" by the review panel.
- **Email 126 & Attachments to Email 126 (one redacted)**. Almost all of the to, from, and CC fields are redacted under b(6), as well as b(6) redactions in the body of the email. The fully withheld record appears to be related to scientific research and is an agenda for a meeting related to CEPI, a non-governmental non-profit organization that is based in Norway. As such, the withheld record cannot be afforded deliberative process protection, and the entirety of the record and associated email should be produced.
- **Email 127 & Attachments to Email 127 (three redacted)**. Almost all of the to, from, and CC fields are redacted under b(6), as well as b(6) redactions in the body of the email. The fully withheld record appears to be related to scientific research and CEPI, a non-governmental non-profit organization that is based in Norway. The attachments originated from CEPI and should not have any redactions on them whatsoever, and certainly not deliberative process exemptions such as that identified on attachment 3. Furthermore, the b(6) redactions on the withheld records are non-sensical, as these are scientists that have voluntarily chosen to participate in CEPI. CEPI's mailing address is publicly available.
- **Email 128 & Attachments to Email 128 (one redacted)**. Almost all of the to, from, and CC fields are redacted under b(6), as well as b(6) redactions in the body of the email. The fully withheld record has a b(6) exemption on the first page, but it appears to be a slide from the University of Sydney about the Research Discovery of a virus genotype.
- **Email 129 & Attachments to Email 129 (one redacted)**. Almost all of the to, from, and CC fields are redacted under b(6), as well as b(6) redactions in the body of the email. The fully withheld record, pursuant to the deliberative process exemption, appears to be a slideshow on the Paramyxoviridae virus. USRTK suspects this email wither originated from outside the agency or was transmitted to other individuals outside the federal government. In any event, a slideshow containing factual, scientific, or reportorial information about a virus is not the same thing as protecting fishbowl conversations by USU decisionmakers on agency policy or law. The record should be produced in full. No line-by-line segregability analysis was performed.

- **Email 130 & Attachments to Email 130 (seven redacted)**. Almost all of the to, from, and CC fields are redacted under b(6), as well as b(6) redactions in the body of the email. The fully withheld records appear to be related to scientific research, not the formulation of USU policy or law. Per the content of the email, this message and all attachments were transmitted to someone at UTMB, meaning they cannot be afforded protection as deliberative documents reflecting the give-and-take of the consultative process at USU. No line-by-line segregability analysis appears to have been performed.
- **Email 131 & Attachments to Email 131 (one redacted)**. Almost all of the to, from, and CC fields are redacted under b(6), as well as b(6) redactions in the body of the email. Two deliberative process exemptions are made for the "percentile" rankings, which are not deliberative but rather factual in nature. The fully withheld record appears to be related to the scoring and commenting on proposed scientific research, not the formulation of USU policy or law. No line-by-line segregability analysis appears to have been performed.
- **Email 132, 133 & Attachments to Email 132, 133 (two redacted)**. Almost all of the to, from, and CC fields are redacted under b(6), as well as b(6) redactions in the body of the email. The fully withheld record appears to be related to scientific research regarding a Tulane proposal for a research strategy for Nipah, not the formulation of USU policy or law. No line-by-line segregability analysis appears to have been performed.
- **Email 134 & Attachments to Email 134 (one redacted)**. Almost all of the to, from, and CC fields are redacted under b(6), as well as b(6) redactions in the body of the email. The fully withheld record appears to be related to proposed scientific research, not the formulation of USU policy or law. No line-by-line segregability analysis appears to have been performed.
- **Email 135 & Attachments to Email 135 (one redacted)**. Almost all of the to, from, and CC fields are redacted under b(6), as well as b(6) redactions in the body of the email. The fully withheld record appears to be related to proposed scientific research, not the formulation of USU policy or law. No line-by-line segregability analysis appears to have been performed.
- **Email 136 & Attachments to Email 136 (four redacted)**. Almost all of the to, from, and CC fields are redacted under b(6), as well as b(6) redactions in the body of the email. The fully withheld records appear to be related to proposed scientific research, not the formulation of USU policy or law. Based on the number of recipients and content of the email, USRTK suspects it was shared with individuals outside of the federal government. No line-by-line segregability analysis appears to have been performed.
- **Email 137 & Attachments to Email 137 (one redacted)**. Almost all of the to, from, and CC fields are redacted under b(6), as well as b(6) redactions in the body of the email. The fully withheld record appears to be generated by CEPI and not the federal government, based on the content of the email and its apparent author. This means no deliberative process can apply. Based on the number of recipients and content of

21

the email, USRTK suspects it was shared with individuals outside of the federal government. No line-by-line segregability analysis appears to have been performed.

- **Email 138 & Attachments to Email 138 (one redacted)**. Almost all of the to, from, and CC fields are redacted under b(6), as well as b(6) redactions in the body of the email. The fully withheld record appears to be related to proposed scientific research, not the formulation of USU policy or law. Based on the number of recipients and content of the email, USRTK suspects it was shared with individuals outside of the federal government. No line-by-line segregability analysis appears to have been performed. There is a b(5) redaction in the email itself that appears to be a Google Docs link, which is not deliberative.

- **Email 139 & Attachments to Email 139 (seven redacted)**. Almost all of the to, from, and CC fields are redacted under b(6), as well as b(6) redactions in the body of the email. The fully withheld records appear to be related to proposed scientific research, not the formulation of USU policy or law. They also appear "final" based on the content of the email and the fact each says "STAMPED" in the title. Based on the number of recipients and content of the email, USRTK suspects it was shared with individuals outside of the federal government. No line-by-line segregability analysis appears to have been performed.

- **Email 140 & Attachments to Email 140 (four redacted)**. Almost all of the to, from, and CC fields are redacted under b(6), as well as b(6) redactions in the body of the email. The fully withheld records appear to be related to proposed scientific research, not the formulation of USU policy or law. They also appear "final" based on the content of the email and the fact each says "STAMPED" in the title. Based on the number of recipients and content of the email, USRTK suspects it was shared with individuals outside of the federal government. No line-by-line segregability analysis appears to have been performed.

- **Email 141 & Attachments to Email 141 (one redacted)**. Almost all of the to, from, and CC fields are redacted under b(6), as well as b(6) redactions in the body of the email. The fully withheld records appear to be related to proposed scientific research and the publishing of a paper in a journal, not the formulation of USU policy or law. They also appear to have originated from CEPI and not the federal government, vitiating any disclosure exemptions. Based on the number of recipients and content of the email, USRTK suspects it was shared with individuals outside of the federal government. No line-by-line segregability analysis appears to have been performed.

- **Email 142 & Attachments to Email 142 (two redacted)**. Almost all of the to, from, and CC fields are redacted under b(6), as well as b(6) redactions in the body of the email. The fully withheld records appear to be related to proposed scientific research and the publishing of a paper in a journal, not the formulation of USU policy or law. They also appear to have originated from CEPI and not the federal government, vitiating any disclosure exemptions. Based on the number of recipients and content of the email, USRTK suspects it was shared with individuals outside of the federal government. No line-by-line segregability analysis appears to have been performed.

- **Emails 143, 144, 145, 146 & Attachments to Emails 143, 144, 145, 146 (six redacted)**. Almost all of the to, from, and CC fields are redacted under b(6), as well as b(6) redactions in the body of the email. The fully withheld records appear to be related to proposed scientific research and the publishing of a paper in a journal, not the formulation of USU policy or law. They also appear to have originated from CEPI and not the federal government, vitiating any disclosure exemptions. Based on the number of recipients and content of the email, USRTK suspects it was shared with individuals outside of the federal government. No line-by-line segregability analysis appears to have been performed.
- **Email 147 & Attachments to Email 147 (one redacted)**. Almost all of the to, from, and CC fields are redacted under b(6), as well as b(6) redactions in the body of the email. The fully withheld records appear to be related to proposed scientific research and the publishing of a paper in a journal, not the formulation of USU policy or law. They also appear to have originated from outside the federal government, vitiating any disclosure exemptions. Based on the number of recipients and content of the email, USRTK suspects it was shared with individuals outside of the federal government. No line-by-line segregability analysis appears to have been performed.
- **Emails 148, 149, 150, 151, 152, & Attachments to Emails 148, 149, 150, 151, 152 (six redacted)**. Almost all of the to, from, and CC fields are redacted under b(6), as well as b(6) redactions in the body of the email. The fully withheld records appear to be related to proposed scientific research and the Nipah Roadmap and manuscript, not the formulation of USU policy or law. They also appear to have originated from outside the federal government, vitiating any disclosure exemptions. Based on the number of recipients and content of the email, USRTK suspects it was shared with individuals outside of the federal government. No line-by-line segregability analysis appears to have been performed.
- **Email 153 & Attachments to Email 153 (one redacted)**. Almost all of the to, from, and CC fields are redacted under b(5), as well as b(5) redactions in the body of the email. USRTK believes this was a scrivener's error, and that USU actually meant to invoke b(6). The fully withheld records appear to be related to proposed scientific research and the publishing of a paper in a journal, not the formulation of USU policy or law. They also appear to have originated from outside the federal government, vitiating any disclosure exemptions. Based on the number of recipients and content of the email, USRTK suspects it was shared with individuals outside of the federal government. No line-by-line segregability analysis appears to have been performed.
- **Email 154 & Attachments to Email 154 (four redacted)**. Almost all of the to, from, and CC fields are redacted under b(6), as well as b(6) redactions in the body of the email. The fully withheld records appear to be related to proposed scientific research and the publishing of a paper in a journal, not the formulation of USU policy or law. They also appear to have originated from outside the federal government, vitiating any disclosure exemptions. Based on the number of recipients and content of the

23

email, USRTK suspects it was shared with individuals outside of the federal government. No line-by-line segregability analysis appears to have been performed.

- **Emails 155, 156, 157, 158, & Attachments to Emails 155, 156, 157, 158 (five redacted)**. Almost all of the to, from, and CC fields are redacted under b(6), as well as b(6) redactions in the body of the email. The fully withheld records appear to be related to proposed scientific research and the publishing of a related paper, not the formulation of USU policy or law. They also appear to have originated from outside the federal government, vitiating any disclosure exemptions. Based on the number of recipients and content of the email, USRTK suspects it was shared with individuals outside of the federal government. No line-by-line segregability analysis appears to have been performed.
- **Email 159 & Attachments to Email 159 (two redacted)**. Almost all of the to, from, and CC fields are redacted under b(6), as well as b(6) redactions in the body of the email. The fully withheld records appear to be related to proposed scientific research and the Nipah roadmap and manuscript, not the formulation of USU policy or law. They also appear to have originated from outside the federal government, vitiating any disclosure exemptions. Based on the number of recipients and content of the email, USRTK suspects it was shared with individuals outside of the federal government. No line-by-line segregability analysis appears to have been performed.
- **Email 160 & Attachments to Email 160 (one redacted)**. Almost all of the to, from, and CC fields are redacted under b(6), as well as b(6) redactions in the body of the email. The fully withheld record appears to be related to proposed scientific research and the Nipah final proposal from CEPI, not the formulation of USU policy or law under Exemption 5. They also appear to have originated from outside the federal government, vitiating any disclosure exemptions. Based on the number of recipients and content of the email, USRTK suspects it was shared with individuals outside of the federal government. No line-by-line segregability analysis appears to have been performed.
- **Email 161 & Attachments to Email 161 (five redacted)**. Almost all of the to, from, and CC fields are redacted under b(6), as well as b(6) redactions in the body of the email. The fully withheld records appear to be related to proposed scientific research and the Nipah roadmap and manuscript, not the formulation of USU policy or law under Exemption 5. They also appear to have originated from outside the federal government, vitiating any disclosure exemptions. Based on the number of recipients and content of the email, USRTK suspects it was shared with individuals outside of the federal government. No line-by-line segregability analysis appears to have been performed.
- **Email 162 & Attachments to Email 162 (two redacted)**. Almost all of the to, from, and CC fields are redacted under b(6), as well as b(6) redactions in the body of the email. The fully withheld records appear to be related to proposed scientific research and the Nipah roadmap and manuscript, not the formulation of USU policy or law. They also appear to have originated from outside the federal government, vitiating any disclosure exemptions. Based on the number of recipients and content of the

email, USRTK suspects it was shared with individuals outside of the federal government. No line-by-line segregability analysis appears to have been performed.

- **Email 164 & Attachments to Email 164 (six redacted)**. Almost all of the to, from, and CC fields are redacted under b(6), as well as b(6) redactions in the body of the email. The fully withheld records appear to be related to proposed scientific research and the Nipah roadmap and manuscript, not the formulation of USU policy or law. They also appear to have originated from outside the federal government, vitiating any disclosure exemptions. Based on the number of recipients and content of the email, USRTK suspects it was shared with individuals outside of the federal government. No line-by-line segregability analysis appears to have been performed.
- **Email 165 & Attachments to Email 165 (one redacted)**. Almost all of the to, from, and CC fields are redacted under b(6), as well as b(6) redactions in the body of the email. The fully withheld record appears to be related to proposed scientific research and the Nipah roadmap and manuscript, not the formulation of USU policy or law. They also appear to have originated from outside the federal government, vitiating any disclosure exemptions. Based on the number of recipients and content of the email, USRTK suspects it was shared with individuals outside of the federal government. No line-by-line segregability analysis appears to have been performed.
- **Emails 166-173, & Attachments to Emails 166-173 (12 redacted).** Almost all of the to, from, and CC fields are redacted under b(6), as well as b(6) redactions in the body of the email. The fully withheld records appear to be related to proposed scientific research and the Nipah roadmap and manuscript, not the formulation of USU policy or law under Exemption 5. Based on the number of recipients and content of the email, USRTK suspects it was shared with individuals outside of the federal government. No line-by-line segregability analysis appears to have been performed.
- **Email 174 & Attachments to Email 174 (one redacted)**. Almost all of the to, from, and CC fields are redacted under b(6), as well as b(6) redactions in the body of the email. The fully withheld record appears to be related to proposed scientific research and the publishing of a scholarly paper, not the formulation of USU policy or law. They also appear to have originated from outside the federal government, vitiating any disclosure exemptions. Based on the number of recipients and content of the email, USRTK suspects it was shared with individuals outside of the federal government. No line-by-line segregability analysis appears to have been performed.
- **Emails 175-177, & Attachments to Emails 175-177 (seven redacted).** Almost all of the to, from, and CC fields are redacted under b(6), as well as b(6) redactions in the body of the email. The fully withheld records appear to be related to proposed scientific research and the Nipah roadmap and manuscript, not the formulation of USU policy or law under Exemption 5. Based on the number of recipients and content of the email, USRTK suspects it was shared with individuals outside of the federal government. No line-by-line segregability analysis appears to have been performed.
- **Email 178 & Attachments to Email 178 (four redacted)**. Almost all of the to, from, and CC fields are redacted under b(6), as well as b(6) redactions in the body of the

email. The attachments are publicly-facing brochures, not of a private nature, that should have all b(6) personal privacy exemptions removed.

- **Email 180 & Attachments to Email 180 (one redacted)**. Almost all of the to, from, and CC fields are redacted under b(6), as well as b(6) redactions in the body of the email. The email is directed at the speakers at a public event – speakers that should not have any expectation of personal privacy. Furthermore, this email and its attachment are unlikely to be construed as "personnel" files under Exemption 6. The full, unredacted versions of these records should be released.

- **Email 182 & Attachments to Email 182 (three redacted)**. Almost all of the to, from, and CC fields are redacted under b(6), as well as b(6) redactions in the body of the email. The fully withheld records appear to be the final R01 application that was submitted, not the formulation of USU policy or law. Based on the number of recipients and content of the email, USRTK suspects it was shared with individuals outside of the federal government. No line-by-line segregability analysis appears to have been performed.

We are happy to meet and confer about this list before USU incurs the time generating *Vaughn*-type information for these redactions. Additionally, we implore you to take a close look at these exemptions, as many appear facially unsupportable because the withheld records either originate from outside the federal government or were shared with individuals outside the federal government, vitiating the Exemption 5 deliberative process privilege. We look forward to your response.

Best,

/s/ Daniel C. Snyder

Daniel C. Snyder, *pro hac vice*

Counsel for USRTK