DANIEL C. SNYDER (Oregon State Bar No. 105127)
*Pro hac vice*
PUBLIC JUSTICE
1620 L Street NW, Suite 630
Washington, DC 20036
Telephone:     (202) 861-5251
Facsimile:      (202) 232-7203
dsnyder@publicjustice.net

RACHEL S. DOUGHTY (California State Bar No. 255904)
LILY A. RIVO (California State Bar No. 242688)
GREENFIRE LAW, PC
2748 Adeline St., Suite A
Berkeley, CA 94703
Telephone:     (510) 900-9502
Facsimile:      (510) 900-9502
rdoughty@greenfirelaw.com
lrivo@greenfiirelaw.com

Attorneys for Plaintiff US RIGHT TO KNOW

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| US RIGHT TO KNOW,<br><br>    Plaintiff,<br><br>    v.<br><br>UNITED STATES DEPARTMENT OF DEFENSE, UNIFORMED SERVICES UNIVERSITY OF THE HEALTH SCIENCES,<br><br>    Defendant. | Case No. 23-cv-02956-TSH<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS** |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ iii
I.   USRTK IS ENTITLED TO FEES & COSTS UNDER THE FOIA ..................................1
II.  LOCAL COUNSEL IS ENTITLED TO A FEE AWARD ..................................................4
III. NO REDUCTION OF HOURS IS WARRANTED............................................................7
IV.  NO CONTRARY EVIDENCE ON REASONABLENESS OF HOURLY RATES ...........11
V.   THE COURT SHOULD AWARD FEES-ON-FEES...........................................................14
VI.  CONCLUSION.....................................................................................................................15

**TABLE OF AUTHORITIES**

**CASES**

*Am. Immigr. Council v. United States Dep't of Homeland Sec.*, 82 F. Supp. 3d 396 (D.D.C. 2015) ..................................................................................................................... 6

*AquAlliance v. Nat'l Oceanic & Atmosphereric Admin.,* No. 17-CV-02108 (CRC), 2019 WL 2451687 (D.D.C. June 12, 2019) ................................................................... 4

*Blum v. Stenson,* 465 U.S. 886 (1984) ................................................................................ 11, 12

*Bounty Fresh, LLC v. Paradise Produce, Inc.*, 2010 WL 3781997 (E.D.N.Y. Aug. 18, 2010) ............................................................................................................................ 6

*Camacho v. Bridgeport Fin., Inc.,* 523 F.3d 973 (9th Cir. 2008) ............................................. 12

*Citizens for Resp. & Ethics in Washington v. U.S. Dep't of Just.*, 825 F. Supp. 2d 226 (D.D.C. 2011) ................................................................................................................ 7

*Coffey v. Bureau of Land Mgmt.*, 316 F. Supp. 3d 168 (D.D.C. 2018) .............................. 5, 11

*Cornucopia Inst. v. Agric. Mktg. Serv.*, 285 F. Supp. 3d 217 (D.D.C. 2018) ......................... 14

*Davy v. C.I.A.*, 550 F.3d 1155 (D.C. Cir. 2008) .................................................................. 3, 4

*Dayoub Mktg., Inc. v. Seven Seas Trading Co.*, 2009 WL 890034 (S.D.N.Y. Mar. 31, 2009) ............................................................................................................................ 6

*Eco. Rights Found. v. Fed. Emergency Mgmt. Agency,* 365 F. Supp. 3d 993 (N.D. Cal. 2018) ........................................................................................................................ 11

*Elec. Priv. Info. Ctr. v. United States Dep't of Homeland Sec.*, 218 F. Supp. 3d 27 (D.D.C. 2016) ................................................................................................................ 4

*Elec. Privacy Info. Ctr. v. Nat'l Sec. Agency*, 87 F.Supp.3d 223 (D.D.C. 2015) ..................... 7

*Ellis v. United States*, 941 F. Supp. 1068 (D. Utah 1996) ....................................................... 3

*Fed. Trade Comm'n v. Elegant Sols., Inc.*, 2020 WL 3891675 (C.D. Cal. May 8, 2020) ............................................................................................................................ 12

*Gauchat-Hargis v. Forest River, Inc.*, 2013 WL 4828594 (E.D. Cal. Sept. 9, 2013) ............................................................................................................................ 8

*Godwin v. World Healing Ctr. Church, Inc.,* 2021 WL 6618801 (C.D. Cal. Oct. 20, 2021) ............................................................................................................................ 8

*Government Accountability Project v. U.S. Department of Homeland Security*,
    2020 U.S. Dist. Lexis 151709 (D.D.C. June 2, 2020) .................................................... 2, 3

*I. T. by & through Renee & Floyd T. v. Dep't of Educ., Hawaii*, 700 F. App'x 596
    (9th Cir. 2017) ..................................................................................................................... 7

*I.T. ex rel. Renee T. v. Dep't of Educ., Hawaii*, 18 F. Supp. 3d 1047 (D. Haw.
    2014) .................................................................................................................................... 7

*Jud. Watch, Inc. v. U.S. Dep't of Just.*, 878 F. Supp. 2d 225 (D.D.C. 2012) ............................ 2

*Lightbourne v. Printroom Inc.*, 2015 WL 12732457 (C.D. Cal. Dec. 10, 2015) ....................... 5

*Long v. U.S. I.R.S.*, 932 F.2d 1309 (9th Cir. 1991) ..................................................................... 7

*Mitchell v. Chavez*, 2018 WL 3218364 (E.D. Cal. June 29, 2018) ............................................ 5

*Moreno v. City of Sacramento*, 534 F.3d 1106 (9th Cir. 2008) ................................................. 7

*Morley v. CIA*, 453 F. Supp. 2d 137 (D.D.C. 2006) .................................................................. 4

*Morley v. CIA*, 894 F.3d 389 (D.C. Cir. 2018) ...................................................................... 4, 7

*Nat'l Rifle Ass'n of Am. v. City of Los Angeles*, 2020 WL 13678997 (C.D. Cal.
    Sept. 29, 2020) ..................................................................................................................... 5

*Our Children's Earth Found. v. Nat'l Marine Fisheries Serv.*, No. 14-CV-01130-
    WHO, 2017 WL 783490 (N.D. Cal. Mar. 1, 2017) ............................................................ 4

*PNC Bank, N.A. v. Spencer*, No. 13-CV-21-BBC, 2013 WL 11320931 (W.D. Wis.
    May 23, 2013) ..................................................................................................................... 6

*Read v. FAA*, 252 F. Supp. 2d 1108 (W.D. Wash. 2003) .......................................................... 3

*Rosenfeld v. U.S. Dep't of Just.*, 903 F. Supp. 2d 859 (N.D. Cal. 2012) ............................... 2, 7

*Story Of Stuff Project et al v. United States Forest Service*, 1:17-cv-00098-APM
    (D.D.C. Feb. 14, 2020) ..................................................................................................... 14

*Swenson v. Mobilityless, LLC*, 2023 WL 5979407 (D. Mass. July 21, 2023) ........................ 10

*The Sierra Club v. United States Env't Prot. Agency*, 75 F. Supp. 3d 1125 (N.D.
    Cal. 2014) .......................................................................................................................... 12

*Welch v. Metro. Life Ins. Co.*, 480 F.3d 942 (9th Cir. 2007) .................................................. 10

*Young v. Sierra Pac. Power Co.*, 2011 WL 4346562 (D. Nev. Sept. 14, 2011*)* ................... 12

**REGULATIONS**

Fed. R. Civ. P. § 26(a)(2) ........................................................................................................... 13

Fed. R. Civ. P. § 26(f) ................................................................................................................. 13

Fed. R. Civ. P. § 68(d) ................................................................................................................. 14

Plaintiff US Right to Know ("USRTK" or Plaintiff) respectfully submits the following Reply in support of Plaintiff's Motion for Attorneys' Fees and Costs, ECF No. 33. Defendant Uniformed Services University of the Health Sciences' ("USU" or Defendant) Opposition is based on distinguishable case law, factual assertions that are contradicted by record evidence, and otherwise lack merit.[1]

At the outset, USRTK addresses two points raised by USU, both admittedly concerning inadvertent filing errors on Plaintiff's part. First, a formatting and conversion error omitted the "User" field of local counsel Greenfire Law, P.C.'s timesheet from USRTK's initial filing. See ECF No. 45 at 7 ("USU Opp."). That this error was inadvertent is exemplified by the fact that USU's initial fee motion included a breakdown of hours spent by Greenfire Law timekeepers, which was tabulated based on the spreadsheet maintained by counsel. ECF No. 33 at 19; see also ECF No. 36 (First Doughty Decl.) at 3-4, ¶ 6-7 & Tables 2 & 3. USRTK appropriately filed an errata with the Court to redress this error, ECF No. 48, and offered USU an opportunity to submit a supplemental brief, which USU declined. Second Doughty Decl. ¶ 3. USU was not prejudiced by this error, as USRTK's fee demand included the incorrectly omitted information. Id. ¶ 4. Second, USU complains that USRTK filed Mr. Drury's declaration one day late, USU Opp. at 19, but fails to inform the Court that the USRTK timely notified USU of this oversight and offered to confer, which USU declined. Sec. Doughty Decl. ¶ 5 & Ex. C. There is no prejudice, because Defendant requested an elongated briefing schedule on this matter, and then requested an extension, both of which USRTK granted. *Id.* ¶ 6.

I.   **USRTK IS ENTITLED TO FEES & COSTS UNDER THE FOIA**

USU makes two arguments concerning entitlement. USRTK addresses each in turn:

***Public Benefit Derived***. USU argues that USRTK does not satisfy the "public benefit derived" factor, claiming Plaintiff "does not state if any documents released in this case have been viewed or downloaded by the public[.]" USU Opp. at 5. But Mr. Ruskin's declaration plainly states that the final, unredacted records were promptly posted on USRTK's COVID-19 website in July 2024, which had been accessed more than 2,000 times. ECF No. 34 ¶ 16, 31; see also Second Ruskin

---

[1] To simplify the issues before the Court, USRTK no longer seeks a multiplier in this case.

1
PLAINTIFF'S REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS

Declaration ¶ 3-5. USU questions the records' public impact, USU Opp. at 5, but ignores Mr. Ruskin's testimony that the records "contradict certain virologists' claims that Fauci had little to do with grant funding decisions, and that grant funding was entirely decided by the NIH's Study Committee reviews." ECF No. 34 ¶ 31-32. USRTK also provided and discussed the records with Congressional staff investigating COVID-19. Id. ¶ 30. Records casting doubt on the accuracy of government officials' representations satisfies the public interest prong. Jud. Watch, Inc. v. U.S. Dep't of Just., 878 F. Supp. 2d 225, 236 (D.D.C. 2012).

USRTK's analysis and dissemination of records concerning COVID-19, including the records in this case, has not gone unnoticed. On February 25, 2025, the Northern California Chapter of the Society of Professional Journalists awarded USRTK with the 40th Annual James Madison Freedom of Information Award for work on the origins of COVID-19. Sec. Ruskin Decl. ¶ 6-7. USRTK satisfies the "public benefit derived" factor.

***Reasonableness Basis in Law.***[2] USU next argues that its withholdings had a reasonable basis in law because USRTK did not challenge Defendant's final July 3, 2024, production. USU Opp. at 5. USRTK did not lodge such a challenge because USU abandoned all contested redactions after USRTK's repeated pushback. There was simply nothing left to challenge. First Ruskin Decl. ¶ 25-30; First Snyder Decl. ¶ 14, 21. USU suggests this its abandonment of its withholdings was done "during the negotiations phase of a production," USU Opp. at 7, but Defendant's production and subsequent conferral was completed pursuant to this Court's Order, ECF No. 24 at ¶ 4, not some good faith gesture on the part of USU. USRTK challenged the USU's withholdings three times pursuant to that Order, and only then did USU relent, withdrawing contested redactions without any explanation. First Snyder Decl. ¶ 14-21 & Exs. B-D.

Defendant misleadingly cites *Government Accountability Project v. U.S. Department of Homeland Security*, 2020 U.S. Dist. Lexis 151709, at *4 (D.D.C. June 2, 2020) ("GAP") for the proposition that when a FOIA plaintiff "does not contest an agency's determinations, it has agreed there was no improper withholding, [and] the Court need not decide whether the agency had a

---

[2] While weighing Plaintiff's favor her, this factor "is not dispositive" and can be outweighed when other factors favor an award. *Rosenfeld v. U.S. Dep't of Just.*, 903 F. Supp. 2d 859, 870 (N.D. Cal. 2012) (citation omitted).

1  colorable or reasonable basis." USU Opp. at 5 (cleaned up). But GAP did not involve any agency
2  withholdings. Instead, the government conducted a search for responsive records after summary
3  judgment briefing and found none. GAP, 2020 WL 4931932 at *1. GAP is therefore inapposite,
4  because USU initially withheld and redacted virtually all responsive records and then reversed its
5  position after USRTK's pushback. Indeed, nowhere does USU attempt to satisfy its burden that its
6  prior withholdings had a colorable basis under the law. Davy v. C.I.A., 550 F.3d 1155, 1163 (D.C.
7  Cir. 2008).

USU also asks the Court to ignore its pre-suit inaction and not evaluate whether Defendant's disregard of the FOIA's requirements had a colorable basis in law. USU Opp. at 5-7. USU suggests "Plaintiff cannot demonstrate that the agency's position was to frustrate Plaintiff," USU Opp. at 5, but that is incorrect as a matter of law: USU's bears the affirmative burden on this point. *Davy,* 550 F.3d at 1163. To be clear, there is no dispute that USU failed to comply with the FOIA's twenty-day deadline, failed to provide USRTK with the requested estimated completion date, failed to render a decision on USRTK's request for a waiver of fees, and failed to communication with USRTK whatsoever *for years* prior to commencement of suit. First Snyder Decl. ¶ 11–12; ECF No. 22, Answer ¶ 42–49, 72.

USU points to a handful of cases for the proposition that if a plaintiff only challenges agency delay, then courts must also find "obdurate behavior or bad faith." *See, e.g., Ellis v. United States*, 941 F. Supp. 1068, 1080 (D. Utah 1996). These cases only apply where a plaintiff does not challenge the agency's withholdings, which USRTK did here, making this authority distinguishable.[3] USU first cites *Read v. FAA*, 252 F. Supp. 2d 1108, 1112 (W.D. Wash. 2003). In this case, the court found the government properly redacted two records, and that the agency's correspondence with the requester prior to suit meant the government's delay was not attributable to "mere bureaucratic ineptitude." *Id*. Nonetheless, the court found the requester entitled to fees. USU's conduct here is

---

[3] USU submits the Van Nostrand declaration, ECF No. 45-1, which describes a constraint on FOIA resources at USU. But USU advances no related legal argument based on that constraint. In any event, the FOIA "does not contain a statutory exception for administrative inefficiency." *Miller v. U.S. Dep't of State*, 779 F.2d 1378, 1390 (8th Cir. 1985); see also *Am. Bird Conservancy v. U.S. Fish & Wildlife Serv.*, 110 F. Supp. 3d 655, 670 (E.D. Va. 2015).

3
PLAINTIFF'S REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS

more egregious, for USU ignored USRTK's multiple pre-suit communications and did not respond to the FOIA Request until after suit was filed. It is "clear that an agency lacks a colorable basis in law where it does not respond to a FOIA request until after a lawsuit has been filed*." Elec. Priv. Info. Ctr. v. United States Dep't of Homeland Sec.*, 218 F. Supp. 3d 27, 46 (D.D.C. 2016) (citing *Davy*, 550 F.3d at 1158).

USU next cites *Morley v. CIA*, 453 F. Supp. 2d 137, 142-43 (D.D.C. 2006) and an appellate decision, *Morley v. CIA*, 894 F.3d 389, 393 (D.C. Cir. 2018). Here, it appears USU's opposition borrows language from the court's opinion in *AquAlliance v. Nat'l Oceanic & Atmosphereric Admin.,* No. 17-CV-02108 (CRC), 2019 WL 2451687, at *5 (D.D.C. June 12, 2019). Regardless, the *AquAlliance* court noted that the delay in *Morley* was only "four months," *id*., and the *Morley* appellate decision found "some delay" past the 20-day mark "is not necessarily so unreasonable" to give rise to fees. 894 F.3d at 393. Here, USRTK's FOIA Request was submitted to USU on January 11, 2021. Defendant did not respond to *at all* until it filed its Answer on September 11, 2023, nearly 32 months later – eight times longer than the delay the D.C. Circuit found was "not necessarily so unreasonable." No case cited by USU found such delay reasonable or colorable under the law, and courts award fees in far less severe situations. *See, e.g., Davy*, 550 F.3d at 1163 (four-month delay in responding to FOIA); *Elec. Prv. Info. Ctr.*, 218 F. Supp. 3d at 34-35, 38 (approximately nine-month delay); *Our Children's Earth Found. v. Nat'l Marine Fisheries Serv.*, No. 14-CV-01130-WHO, 2017 WL 783490, at *9 (N.D. Cal. Mar. 1, 2017) (agency violated multiple statutory deadlines). The entitlement prong is satisfied.

## II.     LOCAL COUNSEL IS ENTITLED TO A FEE AWARD

Next, USU attempts to turn an admitted inadvertent filing error into a failure by USRTK to justify the hours of its local counsel, Greenfire Law P.C. ("GFL"). USU Opp. at 7. Defendant argues this error—corrected by an errata that was accompanied by USRTK's consent for Defendant to file a supplemental brief—means local counsel should get paid nothing for their work on this case. That this was a scrivener's error is manifest when reviewing USRTK's fee motion and declaration, both of which tabulate the hours that each of GFL's timekeepers recorded, an exercise only possible if those timekeepers contemporaneously kept track of their time. ECF No. 36 (First Doughty Decl.) at

3-4, ¶ 6-7 & Tables 2 & 3. It would be manifestly unjust to deny local counsel fees *entirely* due to a formatting error that was timely identified, with consent to allow the opposing party an opportunity to respond.

No case cited by USU supports its position that Plaintiff "cannot…cure this deficiency." USU Opp at 8. In *Mitchell*, the timesheets submitted by counsel were *intentionally* redacted under the work product doctrine, and contrary to USU's representation, Plaintiff's counsel did *not* attempt to submit the records for *in camera* review. *Mitchell v. Chavez*, 2018 WL 3218364, at *8 & n.7 (E.D. Cal. June 29, 2018). The situation was similar in *Lightbourne*, where counsel submitted redacted time records, and the court allowed fees on partially redacted records but disallowed counsel from submitting fully redacted records for *in camera* review. *Lightbourne v. Printroom Inc.*, 2015 WL 12732457, at *7 (C.D. Cal. Dec. 10, 2015). And in *NRA of Am.*, against the backdrop of "massively inflated billing," the court made an overall reduction of 12% of the fees sought based on block billing, vagueness, and redacted billing entries. *Nat'l Rifle Ass'n of Am. v. City of Los Angeles*, 2020 WL 13678997, at *9 (C.D. Cal. Sept. 29, 2020). None of these cases support the proposition that FOIA plaintiffs cannot correct filing errors, or that a defendant is prejudiced by such an error when they have been offered an opportunity to timely and substantively respond. Courts have allowed corrections to billing statements on reply in the FOIA context. *See Coffey v. Bureau of Land Mgmt.*, 316 F. Supp. 3d 168, 171 (D.D.C. 2018).

Next, USU argues that GFL should receive no fees because it was allegedly not involved in "substantive work" in this case. USU Opp. at 8. USU cites not a single case in support of this argument, because there are none. The Court should treat USU's failure to support this argument with any legal authority a concession of its weakness. USU also contradicts its own claim, as USU acknowledges that GFL "demands compensation for 7.47 hours of billable time for the merits of the FOIA litigation[.]" *Id*. A review of the GFL spreadsheet shows hours billed (and voluntarily reduced, oftentimes by 100%) for substantive work in this case related to the complaint, service of process, search terms and parameters, case management proposals, and on redactions and USU's *Vaughn* index. *See* ECF No. 48 at 1-5. GFL should be compensated just as any reasonable client would compensate their local counsel.

5
PLAINTIFF'S REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS

Finally, USU asserts Plaintiff must demonstrate it was "reasonably necessary" to retain local counsel. USU Opp. at 9. USU would have the Court ignore Mr. Ruskin's testimony about how "few public interest lawyers" are willing to do FOIA work on a contingency fee basis, and that USRTK "had difficulty in locating attorneys who would litigate our FOIA requests on a contingency basis." ECF No. 34 ¶ 12-13. USU offers no evidence contradicting Mr. Ruskin's testimony that there are few public interest attorneys in this District that are willing to work for free – oftentimes for years, as this case exemplifies – without being paid. And USU ignores this Court's local rules, which affirmatively require *Pro Hac Vice* counsel to obtain local counsel to prosecute cases in the Northern District. L.R. 11-3(a)(3).

The cases USU cites in support of this assertion are starkly distinguishable. *Dayoub Marketing, Inc.* was a non-FOIA case with "scant information in the record concerning the nature of the legal work that local counsel performed, the attorneys who performed the work, the dates of that work, and the hours expended." *Dayoub Mktg., Inc. v. Seven Seas Trading Co.*, 2009 WL 890034, at *17 (S.D.N.Y. Mar. 31, 2009). The case says nothing about a "reasonably necessary" test for local counsel to be compensated, and GFL submitted far more than "scant information" in its declaration and exhibits. The *Bounty Fresh, L.L.C.* court, another non-FOIA matter, also denied local counsel fees where there was a lack of any billing records for local counsel; in *dicta*, the court also stated it was denying local counsel fees because there was no need for multiple firms in a case where "defendants defaulted*." Bounty Fresh, LLC v. Paradise Produce, Inc.*, 2010 WL 3781997, at *6 (E.D.N.Y. Aug. 18, 2010). The holding from *PNC Bank, N.A.* is not that a fee litigant must prove local counsel was reasonably necessary, but rather that plaintiff's "national coordinating counsel" would not get paid for hours on a removal action that were duplicative of local counsel's time. *PNC Bank, N.A. v. Spencer*, No. 13-CV-21-BBC, 2013 WL 11320931, at *3 (W.D. Wis. May 23, 2013), *aff'd in part, appeal dismissed in part,* 763 F.3d 650 (7th Cir. 2014). USU's final citation is a FOIA case, but it makes no mention of a test that local counsel must be reasonably necessary to prosecute the action. Instead, the court in *AM. Immigr. Council* found that having 11 attorneys billing time in a FOIA matter was an example of overstaffing. *Am. Immigr. Council v. United States Dep't of Homeland Sec.*, 82 F. Supp. 3d 396, 411 (D.D.C. 2015).

### III. NO REDUCTION OF HOURS IS WARRANTED

USU seeks to reduce the number of compensable hours in five ways, each of which should be rejected.[4] "By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008). Courts avoid the type of "nitpicking" that is advanced by USU's objections. *Citizens for Resp. & Ethics in Washington v. U.S. Dep't of Just.*, 825 F. Supp. 2d 226, 229–30 (D.D.C. 2011). "It is axiomatic that trial courts need not, and indeed should not, become green-eyeshade accountants in examining fee requests since the essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection." *Elec. Privacy Info. Ctr. v. Nat'l Sec. Agency*, 87 F.Supp.3d 223, 235 (D.D.C. 2015) (quotation omitted).

***Clerical & Administrative Work.*** Clerical or administrative work is not compensable if it is part of a firm's overhead, and the government bears the burden to show as much. *Rosenfeld,* 903 F. Supp. 2d at 877. USU cites a District of Hawaii case outlining a list of items USU contends are non-compensable, but that list only applies in Hawaii, and it requires that the items be part of a firm's overhead. *I.T. ex rel. Renee T. v. Dep't of Educ., Hawaii*, 18 F. Supp. 3d 1047, 1062 (D. Haw. 2014), *aff'd sub nom. I. T. by & through Renee & Floyd T. v. Dep't of Educ., Hawaii*, 700 F. App'x 596 (9th Cir. 2017).

USU attacks Mr. Snyder's timesheet as including 5.3 hours of allegedly "administrative tasks." USU Opp at 12. But these hours are related to this case and most are billed at a paralegal rate. *See* ECF No. 37-6 for entries on 11/30/23, 2/29/24, 3/4/24, 11/22/24, and 12/18/24. The first three entries relate to using USU's software platform, USAFx, to access USU's productions. Login credentials were only provided to Mr. Snyder, and as the entries reveal, the software was plagued with issues. *See, e.g.,* 2/29/24 entry. The only entry billed at an attorney rate is 11/7/24, incurred

---

[4] USU cites Morley for the proposition that courts have "very broad discretion" about "whether to award or deny fees." USU Opp. at 9. The cited page in Morley concerns discretion when balancing the entitlement prong factors, not as a general matter. *See Morley*, 894 F.3d at 396. Once eligibility and entitlement are established, "the award must be given and the only room for discretion concerns the reasonableness of the amount requested." *Long v. U.S. I.R.S.*, 932 F.2d 1309, 1314 (9th Cir. 1991).

7
PLAINTIFF'S REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS

assembling litigation documents for an expert's review (.4 hours) and drafting an expert services agreement (also .4 hours). USU makes no explanation for how these tasks are "administrative" and part of Public Justice's overhead, because they are not. The final contested entry on 12/18/24 involves Mr. Snyder assembling and finalizing his declaration and exhibits, and this too is billed at a paralegal rate.

As to GFL, USU attacks 26 entries as clerical, but makes no arguments to support its burden as to how each of these entries actually represents non-compensable work. For instance, USU cites an entry on 6/6/23, in which Ms. Doughty billed 0.2 hours to "prepare complaint." But the complaint was not filed until June 15, over a week later, and Ms. Doughty was making substantive edits to the complaint. The same is true for Ms. Doughty's 12/10/24 entry to "prepare fee motion" and Ms. Rivo's entry on 6/22/23, which pertains to a legal opinion on service under Fed. R. Civ. P. 4(m). On 8/14/23, GFL personnel reviewed the parties' stipulation and researched why there was a return service packet, which is similarly compensable. The majority of the other contested GFL entries already reflect voluntary billing discretion which warrants no further deductions: 6/15/23 (70% reduction); 6/18/23 (same); 7/5/23 (same); 7/7/23 (same); 7/14/23 (100%); 7/18/23 (same); 7/25/23 (70%); 9/21/23 (70%); 3/13/24 (70%).

*Internal Communications*. USU appears to claim that every time entry submitted in which USRTK's attorneys corresponded with each other, or which contains the words "emailing" or "updating," should be fully eliminated. USU Opp at 13-14. No case cited by USU supports such a sweeping conclusion. *Godwin v. World Healing Ctr. Church, Inc.,* 2021 WL 6618801, at *3 (C.D. Cal. Oct. 20, 2021) dealt with 116.5 hours of correspondence in a case where only a complaint, motion to dismiss, and an offer of judgment were involved; the court reduced the time to 15 hours. And in *Gauchat-Hargis v. Forest River, Inc*., 2013 WL 4828594, at *3 (E.D. Cal. Sept. 9, 2013), the court reduced 20.5 hours of time spent by senior counsel training junior attorneys and related interoffice communications, out of 109 internal conferences. None of those circumstances are present here.

USU contests 9.5 hours of GFL time under this theory but does not articulate why particular entries are non-compensable; indeed, many entries relate to preparing and reviewing drafts. USU

8
PLAINTIFF'S REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS

claims an entry on 5/22/23 should be reduced, but they relate to GFL's work on the complaint, which necessarily includes conferral between senior and junior counsel. ECF No. 48 at 1. USU points to 6/5/23 and 6/7/23 as another example, but they reference communications between Public Justice and GFL, not internal correspondence. The same is true for the challenged entries on 9/4/24, 10/23/24, 11/4/24, 11/6/24, 11/13/24, 11/15/24, 11/18/24, 11/22/24, 11/25/24, 11/27/24 (hour long strategy call with cocounsel "re DOJ failure to settle the matter"), 12/3/24, 12/4/24, 12/9/24, and 12/18/24. The 6/13/23 entry relates to preparing the complaint, not internal correspondence. The entries for 7/14/23 are already fully reduced, except for one attorney entry for verifying service was accomplished. USU cites three entries for 7/16/24, all of which relate to attorneys at GFL working on fee materials and updating fee charts. Indeed, it appears that USU has challenged *every* entry in which co-counsel spoke to each other or reviewed each other's work product. Such a position in untenable and unworkable.

      As to Mr. Snyder, USU tabulated every entry on Mr. Snyder's timesheet that uses the term "updating" or "emailing," but does not make any reference of the actual substance of the entries. USU Opp. at 14. USU also asserts Mr. Snyder's time entries are not sufficiently detailed and claims that GFL was somehow not involved in the merits of the litigation. The Court need only a cursory review of some of USU's challenged entries to underscore the weakness of these positions. For instance, Mr. Snyder's 7/19/23's entry states "Emails w/ Lily Rivo GFL re notices of unavailability," which reasonably specifies on how that time was incurred. Entries on 9/5/23 and 9/25/23 pertain to the modification of search terms and exclusion of drafts. 7/11/24 relates to an email *with opposing counsel*, checking internal records, and then emailing GFL about a fees and cost demand; the 7/16/24 entry is for the same task, including emails with Public Justice's paralegal. The 9/26/24 entry pertains to an email *from opposing counsel* and its discussion with cocounsel. 11/6/24 concerns USU's improper Rule 68 offer (discussed below), including research and communications on the same. USRTK questions whether USU read the entries between 12/3/24 and 12/18/24 that it challenges, as each describes work related to the fee petition, not internal correspondence. In sum, there is no good cause to reduce this time.

      **Block Billing.** There has been no block billing. "Block billing" is "the time-keeping method

9
PLAINTIFF'S REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS

by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks." *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 945 n.2 (9th Cir. 2007). As shown in Plaintiff's timekeeping records, no attorney billed the total daily time spent working on this case but rather kept an itemization of time spent on specific tasks. And were the Court to find any entries inappropriately block billed (which it should not), caselaw supports a 10-20% reduction in those entries, not complete elimination as USU proposes for Mr. Snyder. *See id.* at 948.

The challenged entries for Mr. Snyder break down how time was spent on each task or are so closely related that the Court can readily discern the reasonableness of the time expended. *See, e.g,* 8/7/23 entry (0.4 hours billed for "Phone call w/ Sai (.2); emails with client and cocounsel re: call and extension"); 9/26/23 (entire entry relates to CMO and emails w/ DOJ on the same); 9/26/24 (0.2 billed for "Rev email from VS; email to cocounsel re: same"). Notably, not one challenged entry exceeds 0.5 hours of time, calling into question the veracity of USU's argument. The same is true for GFL's timekeeping. USU identifies 20 entries it claims are block-billed, 18 of which are less than 0.5 hours, with most of them being 0.1-0.2 hours in length. Each challenged entry shows the time incurred all relate to the same task and subject matter. *See, e.g.,* 7/16/24 (0.5 hours: "Add JSL to fee chart, review entries and reduce admin/duplicative tasks for RSD review"); 12/20/24 (0.5 hours: "Review declarations ISO fee motion, call RSD regarding same); 12/18/24 (0.3 hours: "Update costs with new expert invoices, update costs and fees chart with same; email opposing counsel re settlement discussion"). No challenged entry blocks time spent over an entire day, and the majority are for time increments of 0.1-0.4 hours. Such entries are not block billed. *See Swenson v. Mobilityless, LLC*, 2023 WL 5979407, at *7 (D. Mass. July 21, 2023), *report and recommendation adopted*, 2023 WL 5978280 (D. Mass. Aug. 7, 2023).

**Overstaffing, Excessive Billing, Duplicative Work.** As a catch-all, USU makes a shotgun argument why certain entries should be reduced (these are largely identical to the other entries USU challenges). Defendant challenges USRTK's conduct in strategizing about its legal position, USU Opp. at 15, but surely a private party would reasonably pay their attorneys to think about their case's strengths and weaknesses. *See id.* (challenging Snyder 11/6/24 entries, which pertain to "legal

strategy for petition" and "call with potential expert on fees and cost strategy (.6); f/u with team and USRTK (.3)"). Defendant asserts that USRTK should not have spent time negotiating and preparing its eventual fee motion, but courts encourage parties to engage in settlement discussions on FOIA fees. *Coffey v. Bureau of Land Mgmt.*, 316 F. Supp. 3d 168, 172 (D.D.C. 2018) (awarding fees for time spent in FOIA fees settlement discussions). On excessive billing, USRTK asked its expert, David Bahr, to compare hours incurred in this case to other similarly situated FOIA matters. USU makes no attempt to rebut Mr. Bahr's opinions, instead asserting that "those cases, which involved different claims and a completely different set of facts, do not control the fact-specific reasonableness inquiry in this case." USU Opp. at 20. But just two pages earlier, USU claims that USRTK's hourly rates should be reduced to rates awarded by other courts, in other districts, based on cases involving different claims and facts. USU Opp. at 18-19. Defendant cannot have it both ways and offers nothing to contradict Bahr's testimony.

USU next challenges GFL for spending time on Mr. Drury's declaration, but that work was necessary to establish USRTK's burden on hourly rates. Defendant complains of duplicative billing on five entries, but those entries do not reflect impermissible duplication, but rather the reality of working in a small litigation team, where some issues will require multiple sets of eyes and further discussions.

*Additional Percentage Reduction.* USU argues the Court may go beyond its stated challenges and further reduce USRTK's fee award. USU Opp. at 16. USU makes no argument as to why or how much of a reduction should apply, instead only citing cases for the proposition. This case is not analogous to *Eco. Rights Found. v. Fed. Emergency Mgmt. Agency*, where plaintiff's counsel billed excessive hours on summary judgment motions and related research that the court could not find a reasonable client would pay under the circumstances. 365 F. Supp. 3d 993, 1008 (N.D. Cal. 2018).

## IV.  NO CONTRARY EVIDENCE ON REASONABLENESS OF HOURLY RATES

In assessing a reasonable hourly rate, courts consider the prevailing market rate in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation. *Blum v. Stenson,* 465 U.S. 886, 895–96 & n. 11 (1984). The relevant community is the

"forum in which the district court sits." *Camacho v. Bridgeport Fin., Inc.,* 523 F.3d 973, 979 (9th Cir. 2008). Defendant first argues that USRTK was required to submit evidence that Plaintiff's counsel billed USRTK at the hourly rates claimed in this fee motion. USU Opp. at 17. The Supreme Court long ago rejected this argument, *Blum v. Stenson*, 465 U.S. at 894 (1984) (fee awards do not vary because client is non-profit), and Mr. Ruskin's declaration makes clear that counsel works on a contingency fee basis.

USU asserts that the rates being sought here are based on *Laffey*, but Mr. Drury clearly states that the rates he identifies as reasonable are based on his own expertise, of which the *Laffey* matrix is but one data point.[5] ECF No. 38 ¶¶ 7-18, 25-26. Mr. Drury reviewed counsel's resumes and experience and concludes that the rates sought herein represent market rate recovery in 2025. *Id*. It was USU's obligation to put forth rebuttal evidence showing Mr. Drury's opinions are incorrect, which USU has not done. *The Sierra Club v. United States Env't Prot. Agency*, 75 F. Supp. 3d 1125, 1152 (N.D. Cal. 2014) (agency failed to contest rates when it submitted no rebuttal evidence to proffered expert testimony). The rate USRTK's counsel should be paid is based on the rate attorneys of similar skill and experience use in this District. The only evidence in the record on this topic is Mr. Drury's declaration.

USU seizes on a fee award from Eastern District of Washington to contest Mr. Snyder's claimed rate of $878/hour. In that 2023 case, Mr. Snyder was awarded 100% of his hours at a rate of $512/hour, with the relevant community being Yakima, Washington – a city with a population of less than 100,000 people. Naturally, the hourly rates for attorneys in the Northern District of California are substantially higher than Yakima. Taking into account a locality adjustment to one of

---

[5] USU takes issue that Mr. Drury's declaration was filed on Monday, 12/23/24, one business day late. Counsel informed USU on that Monday that Mr. Drury's declaration had inadvertently not been filed with USRTK's fee material. USRTK asked if USU had an objection, and no response was provided. Later that day, counsel again wrote USU, noting how much time USU had to respond to the motion and asking, "[i]n the event you do indeed have an objection, please contact us to confer." Sec. Doughty Decl. ¶ 5 & Ex. C. USU did not respond nor seek to confer. Id. USU suggests the Court could strike Mr. Drury's declaration, but USU not file a motion seeking such relief, which is what occurred in each of the cases cited in support. *Young v. Sierra Pac. Power Co.,* 2011 WL 4346562, at *2 (D. Nev. Sept. 14, 2011*); Fed. Trade Comm'n v. Elegant Sols., Inc.*, 2020 WL 3891675, at *2 (C.D. Cal. May 8, 2020), aff'd, 2022 WL 2072735 (9th Cir. June 9, 2022).

the most expensive legal markets in the country, and add recent inflation, Mr. Snyder's rate of $878 is more than justified. The other cases cited by USU pertain to a different attorney named Daniel Snyder. As to GFL attorneys Rivo and Doughty, USU claims Mr. Bahr's declaration supports rates of $306.72 to $572.25/hour, without explanation. USRTK's hourly rate expert opines that these attorneys should be paid substantially more.

USU also argues that USRTK must prove non-local counsel was "necessary" to prosecute this matter. USU Opp. at 18. USRTK incorporates the arguments it makes in response to this same claim on pp. 7-8, *supra.* In sum, there is no requirement, and Mr. Ruskin's declaration does exactly what USU claims is missing: explain why hiring Mr. Snyder was necessary at the time the case was filed. USU's confusing references to non-forum rates is a red herring, as USRTK seeks market rates for this forum.

Next, USU asserts that Messrs. Bahr and Drury's declarations should be stricken because they were not disclosed as expert witnesses under Fed. R. Civ. P. 26(a)(2). USU Opp. at 19. But that rule only applies to expert witnesses that would testify at trial, and the parties stipulated that no discovery conference under Rule 26(f) would take place. ECF No. 23 ¶ 3. Moreover, this is a FOIA case, where discovery is generally not allowed and where cases are resolved at summary judgment. USRTK is unaware of any cases requiring a FOIA plaintiff to disclose its fee experts under Rule 26(a)(2).

USU attacks Mr. Bahr's discussion of the hours incurred by USRTK as improperly comparing this case with other FOIA matters. USU Opp. at 19. But USU does the same thing concerning hourly rates. *Id*. at 18 (comparing Mr. Snyder's rate with other cases); 21-22 (same as to Ms. Rivo and Doughty). As described *supra*, USRTK anticipated USU would argue that this case was unique when, in reality, it's not: many FOIA cases have a smaller amount of hours incurred on the merits, only to see those hours grow when a recalcitrant defendant refuses to settle the matter and necessitates fee litigation. ECF No. 35 ¶ 15-16. As to Mr. Drury, USU offers mere speculation that Mr. Drury did not "draft" his declaration and "cherry picked" cases from 2014-2023. USU must proffer more than speculation and conclusory statements to rebut Mr. Drury's declaration.

Finally, USU claims Ms. Doughty's rate is too high. In support, USU says the Court should

13
PLAINTIFF'S REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS

ignore the Drury Declaration and focus only on two cases from years prior where Ms. Doughty was awarded lower hourly rates. USU Opp. at 21. USU suggests this case is similar to *Cornucopia Inst. v. Agric. Mktg. Serv.*, 285 F. Supp. 3d 217, 226 (D.D.C. 2018), but that case involved different lead counsel (not Ms. Doughty) and different facts, with a fees mediation and briefing that grossly exceeded the merits phase. That case is now seven years old. In *Story Of Stuff Project et al v. United States Forest Service*, 1:17-cv-00098-APM, at Dkt. No. 50-4 at 11 (D.D.C. Feb. 14, 2020), due to the particularities of that case, the parties stipulated to using the USAO fee matrix to determine hourly rates. *See* Sec. Doughty Decl.¶ 8. Again, time incurred in that case was nearly a decade ago. And, there is no stipulation to rates here.

### V.  THE COURT SHOULD AWARD FEES-ON-FEES

USU directs the Court to a Rule 68 offer it made in this matter. USU fails to inform the Court that USRTK rejected Defendant's offer as legally unsupportable and void, because the offer admitted no liability and asserted that USRTK could be responsible for USU's "attorneys fees" and costs. *See* Sec. Doughty Decl. Ex. D (describing how FOIA authorizes only one-way attorneys' fees, meaning USU's Rule 68 offer was legally void). USU asserts without citation that USRTK must obtain fees and costs in excess of $23,500 "for work competed up to and including November 5, 2024 in order tor recover costs and fees billed after November 5, 2024." USU Opp. at 22. But Rule 68 only requires an offeree to obtain a judgment that is "more favorable than the unaccepted offer," not that it obtain a fee higher than what is offered for the specific time period in which the offer was made. Fed. R. Civ. P. 68(d). Even if that were the case, USU's Rule 68 offer was void when issued, because the FOIA does not allow the government to seek attorneys' fees from FOIA requesters.

USU also says Plaintiff should get no fees-on-fees because the merits portion of this case involved less attorney time than litigating fees. USU Opp. at 22-23. USRTK acknowledges that fee litigation is expensive and time-consuming – it informed USU as much throughout the parties' settlement discussions and offered to mediate before incurring expense briefing the matter, which USU refused. *See* First Snyder Decl. (ECF 37) ¶ 24, 26. USRTK does not reach the same figures as proffered by USU on the amount of fees pertaining solely to fees-on-fees, and USU did not submit a spreadsheet explaining its math, making the exercise challenging. In any event, Mr. Snyder is

voluntarily waiving all hours he has incurred on USRTK's reply brief, in addition to the 10% haircut offered on his original hours. Greenfire Law seeks a total of $30,762.52, which is just 66% of the fees incurred by Greenfire Law. *See* Sec. Doughty Decl.¶ 9.

## VI. CONCLUSION

For the reasons herein, USRTK respectfully requests the Court grant its Fees & Costs motion, along with an award of fees-on-fees: $77,698.30 in fees and $6,583.96 in costs for a total of $84,282.26.

Respectfully Submitted this 7th day of March 2025.

*/s/ Rachel Doughty*
RACHEL S. DOUGHTY (California State Bar No. 255904)
LILY A. RIVO (California State Bar No. 242688)
GREENFIRE LAW, PC
2748 Adeline St., Suite A
Berkeley, CA 94703
Telephone: (510) 900-9502
Facsimile: (510) 900-9502
rdoughty@greenfirelaw.com
lrivo@greenfirelaw.com

*/s/ Daniel C. Snyder*
Daniel C. Snyder (Oregon State Bar No. 105127)
*Pro hac vice*
PUBLIC JUSTICE
1620 L Street NW, Suite 630
Washington, DC 20036
Telephone: (202) 861-5251
Facsimile: (202) 232-7203
dsnyder@publicjustice.net

*Attorneys for Plaintiff US Right to Know*

Under N.D. Cal. Local Rule 5-1(i)(3), in lieu of a signature, I attest that I obtained approval, on December March 7, 2025, from Mr. Snyder for the filing of this declaration.

/s/ *Rachel Doughty*
Rachel Doughty
ATTORNEY FOR PLAINTIFF

15
PLAINTIFF'S REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS