UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

US RIGHT TO KNOW,

               Plaintiff,

     v.

UNITED STATES DEPARTMENT OF DEFENSE, UNIFORMED SERVICES UNIVERSITY OF THE HEALTH SCIENCES,

               Defendant.

Case No. 23-cv-02956-TSH

**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR ATTORNEYS' FEES AND COSTS**

Re: Dkt. No. 33

## I.  INTRODUCTION

Plaintiff US Right to Know moves for an award of attorneys' fees and costs pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552(a)(4)(E)(i).  ECF No. 33.  Defendant United States Department of Defense, Uniformed Services University of the Health Sciences ("Defendant" or "USU") filed an Opposition (ECF No. 45)[1] and Plaintiff filed a Reply (ECF No. 49).  The Court finds this matter suitable for disposition without oral argument and **VACATES** the March 27, 2025 hearing.  *See* Civ. L.R. 7-1(b).  For the reasons stated below, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's motion.[2]

## II.  BACKGROUND

Plaintiff is a nonprofit investigative public health research group that reports on and

---

[1] Defendant confusingly refers to itself in the plural ("Defendants") throughout its opposition brief.  In fact, there is only one Defendant in this case.  *See* ECF No. 1 (Complaint); ECF No. 22 (Answer).
[2] The parties consent to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c).  ECF Nos. 7, 18.

United States District Court
Northern District of California

1    publishes information obtained through public record laws related to health, environment, and

2    food system matters.  Ruskin Decl. ¶ 3, ECF No. 34.  For the last 4.5 years, Plaintiff has been

3    investigating virological research and the origins of COVID-19.  *Id*. ¶ 7.  As part of its

4    investigation, Plaintiff has filed more than 160 public record requests.  *Id*. ¶ 10.

5          Plaintiff submitted the FOIA request at issue in this litigation to USU on January 11, 2021.

6    Compl. ¶ 34, ECF No. 1; *id.*, Ex. A (copy of request), ECF No. 1-1.  The request sought public

7    records concerning COVID-19 from two doctors at USU and their communications with a variety

8    of individuals and specified email domain addresses.  *Id.* ¶ 37 & Ex. A.  USU provided an

9    automated receipt of the request and a "delivery date" for responsive records of June 1, 2021.  *Id.*

10   ¶¶ 43-44.  USU did not otherwise communicate with Plaintiff or respond to the request in 2021 or

11   2022.  *Id*. ¶ 45; Ruskin Decl. ¶ 21.  As such, Plaintiff wrote USU on January 11, 2023 requesting it

12   provide a determination of whether it would comply with the request, an updated estimated

13   completion date, and a response to Plaintiff's request for a fee waiver.  Compl. ¶ 46; Ruskin Decl.

14   ¶ 21; Answer ¶ 46, ECF No. 22.  Plaintiff received no further communication from USU between

15   then and the date it filed its complaint, June 15, 2023.  Ruskin Decl. ¶ 22.

16          In its complaint, Plaintiff requests the Court (1) order USU to disclose the requested

17   records, (2) declare USU's failure to provide Plaintiff with a final determination for the request as

18   unlawful under FOIA, (3) declare USU's failure to provide all non-exempt records responsive to

19   the request as unlawful under FOIA, (4) declare USU's failure to provide Plaintiff with an

20   estimated date of completion (or updated estimated date of completion) unlawful under FOIA, and

21   (5) award reasonable attorneys' fees and costs.  Compl. at 10-11.

22          Defendant filed its Answer on September 11, 2023.  USU admits it did not respond to the

23   FOIA request, did not respond to Plaintiff's written correspondences about the request, did not

24   provide an updated estimated completion date, and did not provide the requisite 20-day

25   "determination" under FOIA.  Answer ¶¶ 43–49, 52–53.  USU also raised the following

26   affirmative defenses: "The Complaint fails to state a claim upon which relief may be granted,"

27   "[t]he information that Defendant has withheld or will withhold in response to Plaintiff's FOIA

28   request may be exempt in whole or part from public disclosure under FOIA, 5 U.S.C. § 552(b),"

United States District Court
Northern District of California

1   and "Plaintiff's FOIA requests fail to reasonably describe the records sought." *Id.*, Affirmative

2   Defenses Nos. 1, 2 & 4.

3          The parties thereafter reached a stipulation on how this case would be litigated.  In the

4   stipulation, Defendant stated it "has completed the process of locating potentially responsive

5   records" and committed to providing all responsive records to Plaintiff within 60 days of the

6   Court's entry of an order granting the parties' stipulation.  ECF No. 23 ¶ 4.a.  USU also committed

7   to a streamlined process to avoid motion practice on the FOIA exemptions, wherein Plaintiff

8   would provide USU a list of records it believed improperly redacted or withheld.  The parties

9   would thereafter confer about that list and, if Plaintiff requested, USU would provide "reasonable

10  information to justify any exemptions or withholdings claimed." *Id.* ¶ 4.c.  USU further agreed

11  that, if it agreed to remove redactions and produce records as part of the FOIA production order

12  process, it would produce those records to Plaintiff within 30 days. *Id.* ¶ 4.d.  The Court granted

13  the parties' stipulation on September 28, 2023.  ECF No. 24.

14         USU produced responsive records on November 29, 2023.  Snyder Decl. ¶ 14, ECF No.

15  37.  According to Plaintiff, "[v]irtually every record produced by USU was redacted," including

16  "99% of the attachments" being fully withheld under FOIA Exemption 5, the deliberative process

17  privilege.  Ruskin Decl. ¶ 24.  USU also asserted redactions under Exemption 4, related to

18  confidential business information or trade secrets, and Exemption 6, which concerns "personnel

19  and medical files and similar files the disclosure of which would constitute a clearly unwarranted

20  invasion of personal privacy," 5 U.S.C. § 552(b)(4), (6).  Snyder Decl. ¶ 14; *id.*, Ex. A (sampling

21  of the pages produced by USU in its first production).

22         On January 3, 2024, Plaintiff provided its "List of Redactions and Withholdings" that it

23  believed were improper under the FOIA. *Id.* ¶ 15.  The list went through the 182 emails and 492

24  attachments that USU had produced and redacted, providing an argument for why exemptions

25  should not apply to the specific records. *Id.* & Ex. B (Pl.'s 1/3/2024 letter).  The parties conferred

26  on January 23 to discuss the withholdings. *Id.* ¶ 16.  During that call, USU agreed to remove

27  Exemption 6 redactions as they pertained to third parties, revise its deliberative process claims,

28  provide further explanation for those withholdings, and make a second amended production of

1    responsive records by February 28, 2024.  *Id.*  USU also raised at this time that records may be

2    subject to additional withholdings under Exemption 3 (pertaining to records specifically exempt

3    from disclosure by statute), based on 10 U.S.C. § 3309.  *Id.* & Ex. C (confirmatory email between

4    counsel for parties).

5         On February 28, 2024, USU made its second amended production of responsive records.

6    *Id.* ¶ 17.  On March 13 USU provided a letter to Plaintiff containing USU's justifications for its

7    withholdings on the challenged records.  *Id.* ¶ 18.  USU agreed to remove Exemption 6 redactions

8    except for some Department of Defense employees, but otherwise claimed that its withholdings

9    under Exemption 5, deliberative process, were a proper application of the "consultant corollary."

10   *Id.*  In response, Plaintiff asserted that USU failed to sustain its burden to substantiate its

11   withholdings.  *Id.* ¶ 19 & Ex. D.  Plaintiff specifically challenged the use of the consultant

12   corollary, and it proposed a path forward: USU will reprocess all deliberative process

13   withholdings line-by-line, provide a *Vaughn* index for each withholding made under Exemption 3,

14   and provide a final position on whether it will stand on its invocation of the consultant corollary.

15   *Id.*, Ex. C at 2–3.  By email on March 28, USU requested an additional 45-60 days to consider

16   Plaintiff's proposal, which Plaintiff agreed to.  *Id.* ¶ 20.  On April 25, USU informed Plaintiff that

17   it would conduct another review of the outstanding Exemption 3 and 5 withholdings.  *Id.* ¶ 21.

18        On July 8, 2024, USU made its third amended production of records.  Ruskin Decl. ¶ 30.

19   Upon review, Plaintiff determined "USU had changed its position and abandoned all of its

20   withholdings." *Id.*  "Whereas USU's first production had redacted 99% of attachments and huge

21   swaths of emails, the July 3 production removed virtually all redactions under (b)(5) and (b)(3).

22   Only limited and uncontested redactions under (b)(6), personal privacy, remained."  Snyder Decl.

23   ¶ 22.  Plaintiff's team placed all unredacted records on its public webpage.  Ruskin Decl. ¶ 30.  It

24   also provided the unredacted records to congressional staff investigating matters related to

25   COVID-19's origins.  *Id.*

26        On July 11, 2024, Plaintiff advised USU that the merits portion of this case had been

27   resolved.  Snyder Decl. ¶ 23.  On July 22 Plaintiff transmitted its fees and costs demand to USU.

28   *Id.*  The parties attempted to settle Plaintiff's request but were unsuccessful.  *Id.* ¶ 24.

1    Plaintiff filed the present motion on December 20, 2024.

2                              **III.   LEGAL STANDARD**

3         "The court may assess against the United States reasonable attorney fees and other

4    litigation costs reasonably incurred in any case under this section in which the complainant has

5    substantially prevailed." 5 U.S.C. § 552(a)(4)(E)(i).  "To obtain an award of attorney fees under

6    the FOIA, a plaintiff must demonstrate both eligibility and entitlement to the award." *Oregon*

7    *Nat'l Desert Ass'n v. Locke*, 572 F.3d 610, 614 (9th Cir. 2009); *see also Long v. U.S. I.R.S.*., 932

8    F.2d 1309, 1313 (9th Cir. 1991).  Eligibility requires a plaintiff to show that he or she "has

9    substantially prevailed" in the FOIA suit by obtaining relief through either: (1) a judicial order, or

10   an enforceable written agreement or consent decree; or (2) a voluntary or unilateral change in

11   position by the agency, if the plaintiff's claim is not insubstantial.  5 U.S.C. § 552(a)(4)(E)(i)-(ii);

12   *First Amend. Coal. v. U.S. Dep't of Justice*, 878 F.3d 1119, 1127 (9th Cir. 2017).  "A complainant

13   is deemed eligible for a fee award by satisfying either subsection." *Poulsen v. Dep't of Def.*, 994

14   F.3d 1046, 1050 (9th Cir. 2021) (quotation omitted).

15        If a plaintiff establishes eligibility to fees and costs, "the district court may, in the exercise

16   of its discretion, determine that the [complainant] is *entitled* to an award of attorney's fees." *Id.*

17   (alteration and emphasis in original) (citing *Long*, 932 F.2d at 1313).  In making this

18   determination, courts consider four criteria: "(1) the public benefit from the disclosure, (2) any

19   commercial benefit to the plaintiff resulting from the disclosure, (3) the nature of the plaintiff's

20   interest in the disclosed documents, and (4) whether the government's withholding of the records

21   had a reasonable basis in law." *Hiken v. Dep't of Def.*, 836 F.3d 1037, 1044 (9th Cir. 2016)

22   (citation omitted).  "Essentially, the first three factors assist a court in distinguishing between

23   requesters who seek documents for public informational purposes and those who seek documents

24   for private advantage." *Davy v. C.I.A.*, 550 F.3d 1155, 1160 (D.C. Cir. 2008).  As to the fourth

25   factor in the entitlement calculus, "[t]he question is not whether [the plaintiff] has affirmatively

26   shown that the agency was unreasonable, but rather whether the agency has shown that it had any

27   colorable or reasonable basis for not disclosing the material until after [the plaintiff] filed suit";

28   and if the agency makes such a showing, that factor is "weighed along with other relevant

United States District Court
Northern District of California

5

1    considerations in the entitlement calculus." *Id.* at 1162–63 (citation omitted).  In deciding fees and

2    costs, courts should "bear[] in mind that under FOIA, attorneys' fees are to be awarded in light of

3    [FOIA's] basic policy—'the encouragement of maximum feasible access to government

4    information.'" *Weisberg v. U.S. Dep't of Just.*, 745 F.2d 1476, 1499 (D.C. Cir. 1984) (quoting

5    *Nationwide Bldg. Maint., Inc. v. Sampson*, 559 F.2d 704, 715 (D.C. Cir. 1977)).

6                                        **IV.    DISCUSSION**

7    **A.    Eligibility and Entitlement**

8            Defendant does not contest that Plaintiff is eligible to receive an award of fees and costs.

9    *See* Opp'n at 4. n.1.  As such, the Court focuses its analysis on Plaintiff's entitlement to an award.

10           **1.    Public Benefit**

11           In considering the public benefit factor, courts consider "the degree of dissemination and

12    the likely public impact that might result from disclosure."  *Church of Scientology of California v.*

13    *U.S. Postal Serv.*, 700 F.2d 486, 493 (9th Cir. 1983).  The factor generally weighs in favor of an

14    award where the information is broadly disseminated to the public.  *See, e.g., Electronic Frontier*

15    *Foundation v. Office of Dir. of Nat. Intelligence*, 2008 WL 2331959, at *3 (N.D. Cal. June 4,

16    2008) (finding that the public benefit factor was satisfied where the plaintiff "immediately posted

17    the requested information on its website" and "created press releases for public access").  "Even

18    where the degree of dissemination is limited, or where the level of public interest in the requested

19    information itself is minimal, the public benefit factor may still favor an award 'as long as there is

20    a public benefit from the fact of . . . disclosure.'" *Public.Resource.org v. U.S. I.R.S.*, 2015 WL

21    9987018, at *3 (N.D. Cal. Nov. 20, 2015) (quoting *O'Neill, Lysaght & Sun v. D.E.A.*, 951 F. Supp.

22    1413, 1423 (C.D.Cal.1996)); *see also Am. Small Bus. League v. Small Bus. Admin.*, 2024 WL

23    3678001, at *5–6 (N.D. Cal. Aug. 6, 2024) ("courts consider public benefit broadly"); *Cohodes v.*

24    *United States Dep't of Just.*, 2025 WL 572888, at *9 (N.D. Cal. Jan. 24, 2025) ("Where 'at least

25    one of the requested documents was not previously available to the public,' the public-benefit

26    factor weighs in favor of the plaintiff.") (quoting *Davy*, 550 F.3d at 1159).

27           As described above, Plaintiff is a nonprofit investigative public health research

28    organization that works to "uncover, report on, and publish documents obtained through public

United States District Court
Northern District of California

6

United States District Court
Northern District of California

1    records laws and whistleblowers that expose corporate wrongdoing or government failures that

2    threaten our health, environment, and food system." Ruskin Decl. ¶ 3. Plaintiff is presently

3    engaged in "an investigation into high-risk virological research and the origins of COVID-19." *Id*.

4    ¶ 7. As to the records produced in this case, Plaintiff posted USU's production on its public

5    COVID-19 website, which had been accessed more than 2,000 times in the three months prior to

6    Plaintiff filing the present motion. *Id*. ¶¶ 16, 30. Plaintiff also directed its staff researchers to

7    review and investigate the final records and provided them to congressional staff investigating

8    matters related to COVID-19's origins. *Id*. ¶ 30. According to Plaintiff, the information it

9    obtained in this case "seems to contradict certain virologists' claims that [National Institute of

10   Allergy and Infectious Disease Director Anthony] Fauci had little to do with grant funding

11   decisions, and that grant funding was entirely decided by the [National Institute of Health's] Study

12   Committee reviews." *Id*. ¶ 32. As other courts have held, "[s]urely the public has an interest in

13   documents that cast doubt on the accuracy of government officials' representations regarding the

14   possible politicization of agency decisionmaking." *Jud. Watch, Inc. v. U.S. Dep't of Just.*, 878 F.

15   Supp. 2d 225, 236 (D.D.C. 2012).

16         Accordingly, the Court finds the public interest factor weighs in favor of an award of fees.

17         **2.    Commercial Benefit and Nature of Plaintiff's Interest**

18         "Courts consider the second and third factors together to determine 'whether the plaintiff

19   had a sufficient private incentive to pursue his FOIA request even without the prospect of

20   obtaining attorneys' fees.'" *Am. Small Bus. League*, 2024 WL 3678001, at 6 (quoting *McKinley v.

21   Fed Hous. Fin. Agency*, 739 F.3d 707, 712 (D.C. Cir. 2014)). "Ninth Circuit precedent instructs

22   courts evaluating these two factors that they 'should generally award fees if the complainant's

23   interest in the information sought was . . . public-oriented.'" *The Sierra Club v. United States

24   Env't Prot. Agency*, 75 F. Supp. 3d 1125, 1144 (N.D. Cal. 2014) (quoting *Long*, 932 F.2d at 1316).

25   "[W]here a plaintiff is a 'nonprofit public interest group, an award of attorney's fees furthers the

26   FOIA policy of expanding access to government information.'" *Am. Civ. Liberties Union of N.

27   Cal. v. Drug Enf't Agency*, 2012 WL 5951312, at *4 (N.D. Cal. Nov. 8, 2012) (citing *Church of

28   Scientology*, 700 F.2d at 494)). However, "[w]here 'a litigant seeks disclosure for . . . personal

7

United States District Court
Northern District of California

reasons, an award of fees is usually inappropriate.'" *Am. Small Bus. League*, 2024 WL 3678001, at 6 (quoting *Cotton v. Heyman*, 63 F.3d 1115, 1120 (D.C. Cir. 1995)).

Plaintiff is a non-profit organization. Ruskin Decl. ¶ 3. It "has no commercial interest in the records that are responsive to this Request, because [it] intended to use them in conjunction with its COVID-19 investigation, research, and journalism." *Id.* ¶ 20. Plaintiff's advocacy in this matter contributes "significantly to public understanding of the operations or activities of the government," especially as it relates to COVID-19 and public health emergencies. *U.S. Dep't of Def. v. FLRA*, 510 U.S. 487, 495 (1994); *see also, e.g., Jud. Watch, Inc.*, 878 F. Supp. 2d at 236 (factors weigh in favor of fees where "Judicial Watch has no commercial stake in this litigation and because it sought records from the DOJ to further the FOIA's purpose"). Accordingly, the Court finds the second and third factors also support a fees and costs award.

### 3.    Basis for Withholding

"The fourth factor is 'whether the government's withholding had a reasonable basis in law'; in other words, whether the government's actions appeared to have 'a colorable basis in law' or instead appeared to be carried out 'merely to avoid embarrassment or to frustrate the requester.'" *Eco. Rights Found. v. Fed. Emergency Mgmt. Agency*, 365 F. Supp. 3d 993, 1001 (N.D. Cal. 2018) (quoting *Church of Scientology*, 700 F.2d at 492 n.6). "This factor 'is not dispositive' and can be outweighed where the other relevant factors favor an award." *Cohodes*, 2025 WL 572888, at *11 (quoting *Rosenfeld v. U.S. Dep't of Just.*, 903 F. Supp. 2d 859, 870 (N.D. Cal. 2012)); *O'Neill*, 951 F. Supp. at 1425 (noting that the reasonable basis in law factor "in particular should not be considered dispositive"). The burden is on the government to demonstrate that its conduct is reasonable. *Davy*, 550 F.3d at 1163 ("The question is not whether Davy has affirmatively shown that the agency was unreasonable, but rather whether the agency has shown that it had any colorable or reasonable basis for not disclosing the material until after Davy filed suit.").

USU admits it failed to comply with FOIA's 20-day determination deadline, failed to provide an estimated completion date, failed to render a decision on Plaintiff's request for a waiver of search and production fees, and failed to communicate with Plaintiff for over two years until

after suit was commenced.  Answer at ¶¶ 43–49; *id.* ¶ 72 ("Defendant admits that, as of the date of the Complaint, it had not provided Plaintiff with an estimated date of completion of any response to its FOIA request.").  This failure to respond was not reasonable.  *See The Sierra Club*, 75 F. Supp. 3d at 1147 (finding the EPA failed to meet its burden of showing an objectively reasonable basis in law for delay where "after eight months of unsuccessful attempts to communicate with the EPA regarding the status of their FOIA request, Plaintiffs were warranted in bringing suit."); *Campaign for Responsible Transplantation v. U.S. Food & Drug Admin.*, 593 F. Supp. 2d 236, 245 (D.D.C. 2009) (same); *Davy*, 550 F.3d at 1163 ("[F]ailing to explain the basis for deferring its response" to a FOIA request "is exactly the kind of behavior the provision was created to combat.").

As to the agency's invocation of FOIA's disclosure exemptions, "[v]irtually every record produced by USU [in its first production] was redacted, including every attachment being fully withheld under the Deliberative Process privilege, b(5), and under alleged personal privacy interests, b(6) . . . 99% of attachments to emails were fully withheld."  Ruskin Decl. ¶ 24.  After receiving Plaintiff's "challenge list" pursuant to the Court's case management order, ECF No. 24 ¶ 4, the agency agreed to re-review its exemptions and made a second subsequent production that reversed some of the contested withholdings, but not all.  Snyder Decl. ¶¶ 18–19.  Following a second round of conferral, the agency again agreed to re-review the production and ultimately made a third production in which "it became apparent that USU had changed its position and abandoned all of its withholdings," Ruskin Decl. ¶ 30, except for some unchallenged redactions under Exemption 6.  Snyder Decl. ¶ 22.  In these circumstances, the agency's redactions were not reasonable.  *See The Sierra Club*, 75 F. Supp. 3d at 1147 (finding agency unreasonable where "the documents that the EPA did provide to Plaintiffs were so heavily redacted that Plaintiffs could not determine the subject matter to which they should narrow the scope of their request.").

Defendant argues it had a reasonable basis in law for its withholdings "as demonstrated by the fact that Plaintiff did not challenge the withholdings made to Defendant's July 3, 2024 final production."  Opp'n at 5.  It asserts its actions were not intended to frustrate Plaintiff and that it engaged in discussions to resolve the FOIA request without judicial intervention.  *Id.*  However, as

United States District Court
Northern District of California

1    Plaintiff points out, it did not lodge such a challenge because the agency "abandoned all contested

2    redactions after [Plaintiff's] repeated pushback.  There was simply nothing left to challenge."

3    Reply at 2.  Defendant suggests the agency's abandonment of its withholdings was done "during

4    the negotiations phase of a production," Opp'n at 7, but Defendant's production and subsequent

5    conferral was completed pursuant to this Court's Order, ECF No. 24 ¶ 4.  Plaintiff challenged

6    Defendant's withholdings three times pursuant to that Order; only after those challenges did

7    Defendant withdraw its contested redactions.  Snyder Decl. ¶ 14-21 & Exs. B-D.  Defendant cites

8    *Government Accountability Project v. U.S. Department of Homeland Security*, 2020 WL 4931932

9    (D.D.C. June 2, 2020), for the proposition that when a FOIA plaintiff "does not contest an

10   agency's determinations, it has agreed there was no improper withholding, [and] the Court need

11   not decide whether the agency had a colorable or reasonable basis."  Opp'n at 5 (cleaned up).  But

12   that case did not involve any agency withholdings.  Instead, the government conducted a search

13   for responsive records after summary judgment briefing and found none.  *Government*

14   *Accountability Project*, 2020 WL 4931932 at *1.  In contrast, the agency in this case initially

15   withheld and redacted virtually all responsive records and then reversed its position after

16   Plaintiff's pushback.  Indeed, nowhere does Defendant attempt to satisfy its burden that the

17   agency's prior withholdings had a colorable basis under the law.  *Davy*, 550 F.3d at 1163.

18          Defendant also contends that pre-suit delay alone does not compel a finding of

19   unreasonableness, as the delay in this case was not due to bad faith or obdurate behavior, and that

20   the agency worked with Plaintiff to resolve the FOIA request in an expeditious manner once the

21   lawsuit was filed.  Opp'n at 5-6.  However, "an agency lacks a colorable basis in law where it does

22   not respond to a FOIA request until after a lawsuit has been filed."  *Elec. Priv. Info. Ctr. v. United*

23   *States Dep't of Homeland Sec.*, 218 F. Supp. 3d 27, 46 (D.D.C. 2016) (citing *Davy*, 550 F.3d at

24   1158).  "For the agency to receive the benefit of the fourth factor it must present at least a

25   'colorable basis in law' for its failure to respond" to a FOIA request and "[i]t is not enough to say

26   that 'once the agency faced a justiciable FOIA claim, it offered no resistance.'"  *Davy*, 550 F.3d at

27   1158; *Elec. Priv. Info. Ctr.*, 218 F. Supp. 3d at 46 (finding agency could not establish its conduct

28   was reasonable where, "beyond acknowledging receipt of the request, DHS failed to respond in

10

any meaningful way to EPIC's FOIA request prior to the initiation of this lawsuit.").

Finally, even if Defendant could establish it acted reasonably, this factor "is not dispositive" and can be outweighed when other factors favor an award.  *Rosenfeld*, 903 F. Supp. 2d at 870 (citation omitted); *Cohodes*, 2025 WL 572888, at *11 ("And in any event, the factor is not dispositive because the other factors favor fees.").

In sum, the Court finds Plaintiff has established its entitlement to an award.

## B.    Fee Award

"[O]nce the court has determined that the plaintiff is both eligible for and entitled to recover fees, the award must be given and the only room for discretion concerns the reasonableness of the amount requested." *Long*, 932 F.2d at 1314.  In making this determination, the Court must scrutinize the reasonableness of (i) the hourly rates and (ii) the number of hours claimed.  *Id*. at 1313-14.  "If these two figures are reasonable, then there is a strong presumption that their product, the lodestar figure, represents a reasonable award."  *Id*. at 1314 (internal quotation marks omitted).  "It is axiomatic that 'trial courts need not, and indeed should not, become green-eyeshade accountants' in examining fee requests since '[t]he essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection.'"  *Elec. Priv. Info. Ctr. v. Nat'l Sec. Agency*, 87 F. Supp. 3d 223, 235 (D.D.C. 2015) (quoting *Fox v. Vice*, 563 U.S. 826, 838 (2011)).  Nevertheless, a court "may authorize an upward or downward adjustment from the lodestar figure if certain factors relating to the nature and difficulty of the case overcome this strong presumption and indicate that such an adjustment is necessary." *Long*, 932 F.2d at 1314.

Plaintiff requests the Court award $77,698.30 in fees and $6,583.96 in costs, for a total of $84,282.26.  Plaintiff has submitted declarations in support of their fees request, which can be summarized as follows:

| Timekeeper & Role | Hourly Rate | Hours Sought (percent reduction) | Total Requested |
|---|---|---|---|

| | | | |
|---|---|---|---|
| Daniel C. Snyder, Lead Counsel | $878[3] | 56.52 | $46,864.08 |
| Rachel Doughty, Co-Counsel & Local Counsel | $878 | 15.6 | $13,696.80 |
| Lily Rivo, Co-Counsel & Local Counsel | $777 | 18.82 | $14,623.14 |
| Kathy Morris, Senior Paralegal | $239 | .3 | $71.70 |
| Jessica San Luis, Senior Paralegal | $239 | 7.37 | $1,761.43 |
| Nuria de la Fuente, Legal Assistant | $239 | 2.85 | $681.15 |
| **Total** | | **101.46** | **$77,698.30** |

Snyder Decl., Ex. F; Doughty Decl., Ex. 1, ECF No. 4; Sec. Doughty Decl. ¶ 9, ECF No. 49-2.

### 1.     Declarations of Richard Drury and David Bahr

In support of its fees request, Plaintiff submits the declaration of Richard Drury, an attorney licensed to practice law in the State of California.  Drury Decl. ¶ 2, ECF No. 38.  "As a practicing California lawyer for over thirty years," Mr. Drury states he is "very familiar with rates charged by public interest lawyers in the San Francisco Bay Area and the market for services performed by attorneys with the level of experience and competence of the lawyers in this action."  *Id*. ¶ 4.  Mr. Drury outlines his expertise and familiarity with fee awards in this district, describing various fee awards that have been made to partners, associates, and paralegals.  *Id*. ¶¶ 6–17.  Mr. Drury also states he is familiar with Greenfire Law's attorneys, identifying hourly rates that are consistent with those sought in this litigation for 2025 rates.  *Id*. ¶ 18.  Mr. Drury opines that the adjusted *Laffey* Matrix, named after *Laffey v. Northwest Airlines, Inc.*, 572 F. Supp. 354, 371 (D.D.C. 1983), is a "useful benchmark in determining reasonable market rates[,]" with multiple courts relying on the matrix, including in the Northern District of California.  *Id*. ¶ 19.  He states the current matrix contains the following rates: "paralegals - $258; 1-3 year lawyers - $473; 4-7 year lawyers - $581; 8-10 year lawyers - $839; 11-19 year lawyers - $948; 20+ year lawyers -

---

[3] Mr. Snyder also billed at $239 when performing paralegal work.  *See* Snyder Decl., Ex. F.

United States District Court
Northern District of California

$1,141." *Id.* ¶ 20.  Based on his review of the file in this case and his understanding of prevailing market rates in this legal community, Mr. Drury's opines that "the market rates identified by Plaintiffs' counsel are well within the range of, if not below, prevailing market rates for attorneys with comparable expertise and skill in the San Francisco Bay Area" and that the "rates for counsel who billed time in this matter are consistent with, or substantially lower than, rates for attorneys with similar skill and experience for comparable litigation in the Northern District of California." *Id.* ¶¶ 25–26.

Plaintiff also retained David Bahr, who has practiced public interest law for 30 years, with a specialized expertise in FOIA litigation.  Bahr Decl. ¶¶ 1–2, ECF No. 35.  Based on his review of the case file, Mr. Bahr concludes that "plaintiff's attorneys were efficient in prosecution of this case and that the very modest amount of time for which compensation is requested is reasonable and appropriate." *Id.* ¶¶ 8-9.  Mr. Bahr opines that the "time for which Plaintiff seeks compensation is very reasonable and appropriate for a case of this type[,]" and reflects a "modest amount of time" which is "below what similar FOIA cases have settled for." *Id.* ¶ 10.  Mr. Bahr opines: "The ultimate disclosure of the unlawfully withheld information" contained within USU's responsive records "was directly caused by the 'push-back' of Plaintiff's counsel[,]" requiring Plaintiff "to spend significant time and energy, expenditures that were a direct consequence of Defendant's overly broad — and thus unlawful — assertions of FOIA's disclosure exemptions in the first two rounds of production." *Id.* ¶ 14.

Defendant argues Mr. Bahr's and Mr. Drury's declarations should be stricken because they were not disclosed as expert witnesses under Federal Rule of Civil Procedure 26(a)(2).  Opp'n at 19.  But that rule only applies to expert witnesses that would testify at trial, and the parties stipulated that no discovery conference under Rule 26(f) would take place.  ECF No. 23 ¶ 3.  Moreover, this is a FOIA case, where discovery is generally not allowed and where cases are resolved at summary judgment.

Defendant also argues Mr. Drury's declaration should be stricken because it was not executed or filed until Monday, December 23, 2024, three days after Plaintiff's motion for attorneys' fees was due.  Opp'n at 19; *see* ECF Nos. 32 (order setting 12/20/2024 as deadline for

United States District Court
Northern District of California

Plaintiff's motion); 38 (Drury Decl., filed 12/23/2024).  Plaintiff's counsel states they informed Defendant that Mr. Drury's declaration had inadvertently not been filed with its fee material and, when they asked if Defendant had an objection, no response was provided.  Reply at 12 n. 5.  It is true that the Court could potentially strike Mr. Drury's declaration as untimely.  *See Young v. Sierra Pac. Power Co.*, 2011 WL 4346562, at *2 (D. Nev. Sept. 14, 2011); *Fed. Trade Comm'n v. Elegant Sols., Inc.*, 2020 WL 3891675, at *2 (C.D. Cal. May 8, 2020), *aff'd*, 2022 WL 2072735 (9th Cir. June 9, 2022).  However, Plaintiff filed its motion on Friday, December 20, and filed Mr. Drury's declaration one business day later, on December 23, after counsel realized it inadvertently failed to file it.  Further, the parties subsequently filed two stipulations to extend the deadline for Defendant's opposition, which the Court granted, giving Defendant nearly two months (until February 18, 2025) to file its response.  ECF Nos. 41-44.  In these circumstances, the Court declines to strike Mr. Drury's declaration.  *Compare Fed. Trade Comm'n*, 2020 WL 3891675, at *2 (granting motion to strike where party "had less than 24 hours to respond to the allegations and substantial amount of evidence in [the late-filed] declaration, which hindered its ability to meaningfully review and respond in its Reply.").

### 2. Local Counsel

Defendant argues Plaintiff should not be awarded any attorneys' fees for its local counsel, Greenfire Law P.C., for three reasons.  Opp'n at 7-9.  First, it argues Greenfire Law's billing records "fail to include quintessential information such as the identity of the person billing and their hourly rate."  *Id.* at 7 (citing ECF No. 36-1).  In her original declaration in support of Plaintiff's motion, Rachel Doughty included a copy of the billing records for Greenfire Law, but it omitted the last column, which contained the name of the biller for each entry.  Doughty Decl., Ex. 1, ECF No. 36-1.  However, Plaintiff subsequently filed an errata which included the omitted information.  ECF No. 48.  A review of Plaintiff's fee motion and declaration also show that Plaintiff provided the requested hourly rates and tabulated the hours that each of Greenfire Law's timekeepers recorded.  Doughty Decl. ¶¶ 6-7.  It would be unjust to deny local counsel fees due to a formatting error that was timely identified and corrected.

Second, Defendant argues Greenfire Law's billing records do not show its attorneys were

substantively engaged in the merits of the underlying FOIA claim.  Opp'n at 8.  It argues "[t]here are no billing records indicating anyone from Greenfire Law reviewed the documents at issue, conducted any legal research, participated in the meet and confers, or negotiations related to the withholdings.  In fact, billing records show that Greenfire Law did not become substantively involved until after fees discussions broke down."  *Id.*  Defendant cites no authority in support of its argument that Plaintiff's request should be denied based on the amount of substantive work in which its local counsel engaged.  Regardless, Defendant acknowledges that Greenfire Law "demands compensation for 7.47 hours of billable time for the merits of the FOIA litigation[.]"  *Id.*  A review of Greenfire Law's spreadsheet shows hours billed for substantive work in this case related to the complaint, service of process, search terms and parameters, case management proposals, and on redactions and the agency's *Vaughn* index.  *See* Doughty Decl., Ex. 1 at 1-5, ECF No. 48.

Finally, Defendant argues Greenfire Law's request should be denied because they have not demonstrated it was "reasonably necessary" to retain both local and out of town counsel "for this modest FOIA case."  Opp'n at 9.  However, Plaintiff has submitted testimony about how "few public interest lawyers" are willing to do FOIA work on a contingency fee basis, and that it "had difficulty in locating attorneys who would litigate our FOIA requests on a contingency basis."  Ruskin Decl. ¶¶ 12-13.  Defendant offers no evidence contradicting this testimony.[4]  The Court

_____

[4] Further, the cases Defendant cites in support of its position, none of which are binding on this Court, are all distinguishable.  *See* Opp'n at 9.  *Dayoub Marketing, Inc.* was a non-FOIA case with "scant information in the record concerning the nature of the legal work that local counsel performed, the attorneys who performed the work, the dates of that work, and the hours expended."  *Dayoub Mktg., Inc. v. Seven Seas Trading Co.*, 2009 WL 890034, at *17 (S.D.N.Y. Mar. 31, 2009).  The case does not set out a "reasonably necessary" test for local counsel to be compensated, and Greenfire Law in this case has submitted far more than "scant information" in its declaration and exhibits.  The *Bounty Fresh, L.L.C.* court, another non-FOIA matter, also denied local counsel fees where there was a lack of any billing records for local counsel; in dicta, the court also stated it was denying local counsel fees because there was no need for multiple firms in a case where "defendants defaulted."  *Bounty Fresh, LLC v. Paradise Produce, Inc.*, 2010 WL 3781997, at *6 (E.D.N.Y. Aug. 18, 2010), *report and recommendation adopted*, 2010 WL 3746826 (E.D.N.Y. Sept. 17, 2010).  The holding from *PNC Bank, N.A.* is not that a fee litigant must prove local counsel was reasonably necessary, but rather that plaintiff's "national coordinating counsel" would not get paid for hours on a removal action that were duplicative of local counsel's time.  *PNC Bank, N.A. v. Spencer*, 2013 WL 11320931, at *3 (W.D. Wis. May 23, 2013), *aff'd in part, appeal dismissed in part*, 763 F.3d 650 (7th Cir. 2014).  Defendant's final citation is a FOIA case, but it makes no mention of a test that local counsel must be reasonably

United States District Court
Northern District of California

finds no reason to deny Plaintiff's fees request on this basis.

### 3.    Hourly Rates

In assessing a reasonable hourly rate for the lodestar figure, courts should consider the prevailing market rate in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation. *Blum v. Stenson*, 465 U.S. 886, 895–96 and n. 11 (1984). The relevant community for purposes of determining the prevailing market rate is generally the "forum in which the district court sits." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008). The initial burden is on the fee applicant to produce "satisfactory evidence" that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation. *Blum*, 465 U.S. at 895 n.11. "Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of America v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990). "The defendant may introduce rebuttal evidence in support of a lower hourly rate." *Sorenson v. Mink*, 239 F.3d 1140, 1145 (9th Cir. 2001).

Plaintiff seeks $878 per hour for its lead counsel, Daniel C. Snyder, the Director of the Environmental Enforcement Project at Public Justice. Snyder Decl. ¶ 3. Mr. Snyder has 15 years of experience, with a focus on environmental law and the public's access to governmental records. *Id.* ¶¶ 5-6, 8. Plaintiff also seeks $878 per hour for Rachel Doughty, who has 20 years of experience and founded Greenfire Law, PC in 2011. Doughty Decl. ¶¶ 5, 8. Plaintiff seeks $777 for Lily Rivo, who has 16 years of experience and is an attorney at Greenfire. *Id.* ¶¶ 5, 9. Plaintiff seeks $239 per hour for paralegals Kathy Morris and Jessica San Luis and for Legal Assistant Nuria de la Fuente. *Id.* ¶ 5. These are in line with rates approved in other recent FOIA cases in this District. *See Cohodes*, 2025 WL 572888, at *3, 12 (awarding hourly rate of $325 for

---

necessary to prosecute the action. Instead, the court in *American Immigr. Council* found that having 11 attorneys billing time in a FOIA matter was an example of overstaffing. *Am. Immigr. Council v. United States Dep't of Homeland Sec.*, 82 F. Supp. 3d 396, 411 (D.D.C. 2015).

United States District Court
Northern District of California

paralegals and $540 to $895 for attorneys); *Am. Small Bus. League*, 2024 WL 3678001, at *3, 10 (awarding hourly rates up to $850 for attorneys).[5]  Further, Plaintiff has provided evidence that the rates "are well within the range of, if not below, prevailing market rates for attorneys with comparable expertise and skill in the San Francisco Bay Area" and that the "rates for counsel who billed time in this matter are consistent with, or substantially lower than, rates for attorneys with similar skill and experience for comparable litigation in the Northern District of California." Drury Decl. ¶¶ 25–26.

Defendant argues Plaintiff was required to submit evidence that its counsel billed it at the hourly rates claimed in this fee motion.  Opp'n at 17 ("Plaintiff offers no evidence that the client, U.S. Right to Know, is billed at the same rate[.]").  However, the Supreme Court has rejected this argument.  *See Blum*, 465 U.S. at 894 (rejecting cost-based standard and finding fee awards do not vary because client is non-profit); *Hensley v. Eckerhart*, 461 U.S. 424, 447 (1983) ("[J]udges awarding fees must make certain that attorneys are paid the full value that their efforts would receive on the open market.").  Counsels' declarations also make clear that they worked on a contingency fee basis.  Ruskin Decl. ¶¶ 12-13, 15; Doughty Decl. ¶ 11.

Defendant also argues Plaintiff justifies its rates by relying on the *Laffey* matrix, but it has not made a "substantial showing" that the *Laffey* matrix rates are in line with the prevailing rates for FOIA litigation in this District.  Opp'n at 17.  However, Mr. Drury states that the rates he identifies as reasonable are based on his own expertise, of which the *Laffey* matrix is but one data point.  Drury Decl. ¶¶ 7-18, 25-26; *id.* ¶ 19 ("Another useful benchmark in determining reasonable market rates is the adjusted Laffey Matrix.").  As Plaintiff met its initial burden to produce satisfactory evidence that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation, it was Defendant's obligation to put forth rebuttal evidence showing Plaintiff's evidence is incorrect, which it has not done.  *See The Sierra Club*, 75 F. Supp. 3d at 1152 (agency failed to contest rates

---

[5] The *American Small Business League* decision does not provide a breakdown of the hourly rates sought but instead cites generally to counsel's declaration in which a breakdown is provided.  *Id.* at *3 (citing ECF No. 78-1).

1 when it submitted no rebuttal evidence to proffered expert testimony).

2       Next, Defendant argues "no court has awarded anything close to [Mr. Snyder's $878] rate

3 for a straightforward FOIA litigation." Opp'n at 17-18. Defendant cites to a case from the

4 Eastern District of Washington in which Mr. Snyder received a rate of $512 per hour. *Id.* (citing

5 *Cmty. Ass'n for Restoration of Env't Inc. v. DeCoster*, 704 F. Supp. 3d 1110, 1118 (E.D. Wash.

6 2023)). In that case, Mr. Snyder was awarded 100% of his hours, with the relevant community

7 being Yakima, Washington. Defendant has presented no evidence that the hourly rates for

8 attorneys in the Northern District of California are comparable to those in Yakima. *See Murphy v.*

9 *Celestron Acquisition, LLC*, 2024 WL 1221963, at *3 (N.D. Cal. Mar. 20, 2024) (declining to

10 reduce fee where counsel's hourly rate went from $400/hour to $700/hour as "[t]his rate increase

11 could have been due to several reasonable considerations including inflation, increased

12 experience, locality adjustments, or a whole host of other factors. The Court sees no reason to

13 require this attorney's rate remain unchanged across localities and over the course of time."). As

14 to Ms. Doughty and Ms. Rivo, Defendant argues Mr. Bahr's declaration supports rates of $306.72

15 to $572.25 per hour, without explanation. But Mr. Bahr does not opine on appropriate hourly

16 rates while Mr. Drury, who does, opines that the requested rates are reasonable. Further, as cited

17 above, the requested rates are in line with rates approved in other recent FOIA cases in this

18 District. *See Cohodes*, 2025 WL 572888, at *3, 12; *Am. Small Bus. League*, 2024 WL 3678001, at

19 *3, 10.

20       Defendant also argues Plaintiff must prove non-local counsel was "necessary" to prosecute

21 this matter. Opp'n at 18. However, as discussed above, Plaintiff is not required to prove local

22 counsel was necessary and, regardless, Mr. Ruskin's declaration explains why hiring Mr. Snyder

23 was necessary at the time the case was filed. While Defendant has shown Mr. Snyder received a

24 lower rate in another district, the rate Plaintiff's counsel should be paid is based on the rate

25 attorneys of similar skill and experience use in this District.

26       In sum, the Court is satisfied that the requested rates are reasonable.

27

28

18

United States District Court
Northern District of California

### 4.    Number of Hours Claimed

The next issue is whether Plaintiff's hours were "reasonably expended in pursuit of the ultimate result achieved in the same manner that an attorney traditionally is compensated by a fee-paying client for all time reasonably expended on a matter." *Hensley*, 461 U.S. at 431 (quotation omitted). Ordinarily, a prevailing party has the initial burden of establishing the hours expended litigating the case and must provide detailed time records documenting the tasks completed and the amount of time spent. *Id.* at 437; *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 945–46 (9th Cir. 2007). The applicant must exercise sound "billing judgment" regarding the number of hours worked, eliminate excessive, redundant, unproductive, or unnecessary hours, and provide the district court with billing records supporting the time claimed. *Hensley*, 461 U.S. at 434, 437. The applicant is "not required to record in great detail how each minute of his time was expended," but should "identify the general subject matter of his time expenditures." *Id*. at 437 n.12. "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Id.* at 433; *see Fischer v. SJB-P.D., Inc.*, 214 F.3d 1115, 1121 (9th Cir. 2000) ("[P]laintiff's counsel can meet his burden — although just barely — by simply listing his hours and 'identify[ing] the general subject matter of his time expenditures.'") (second alteration in original). The district court may exclude any hours that are excessive, redundant, or otherwise unnecessary. *Hensley*, 461 U.S. at 434.

After the party seeking fees has come forward with its evidence supporting the time billed, "[t]he party opposing the fee application has a burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in its submitted affidavits." *Gates v. Deukmejian*, 987 F.2d 1392, 1397–98 (9th Cir. 1992). The party opposing fees must identify defects or deficiencies in the hours requested; conclusory and unsubstantiated objections are insufficient to warrant a reduction in fees. *Cancio v. Fin. Credit Network, Inc.*, 2005 WL 1629809, at *3 (N.D. Cal. July 6, 2005).

Defendant contends fees should be eliminated or reduced for five reasons: (1) Plaintiff wrongly seeks compensation for unnecessary, clerical, and administrative work; (2) Plaintiff's

billings for excessive internal communication are unreasonable and therefore not compensable; (3)

Plaintiff's block billing is unreasonable and the corresponding entries should be reduced; (4)

Plaintiff's billings are characterized by overstaffing, excessive billing, and duplicative work that

constitute unreasonable billing hours; and (5) the Court should impose an additional overall

percentage cut on the fees request.

### a.    Administrative and Clerical Work

Attorney fees should not be awarded for purely clerical tasks, even at paralegal rates,

because such work should be subsumed into the firm's overhead.  *Nadarajah v. Holder*, 569 F.3d

906, 921 (9th Cir. 2009); *Neil v. Comm'r of Soc. Sec.*, 495 F. App'x 845, 847 (9th Cir. 2012).

Defendant argues the Court should eliminate 5.5[6] hours Mr. Snyder billed "for

administrative tasks including multiple billing entries for 'downloading' documents and

assembling documents which should be eliminated: 11/30/2023, 2/29/2024, 3/4/2024, 7/8/2024,

11/7/2024, 11/22/2024, 12/18/2024."  Opp'n at 12 (citing Snyder Decl., Ex. F).  These entries are

billed as follows:

| Date | Description | Time | Rate | Total |
|---|---|---|---|---|
| 11/30/2023 | Access USAfx and download production, send to client, bill at paralegal | 0.30 | 239.00 | $71.70 |
| 2/29/2024 | Deal with failed logins and frustration, 2x emails re: same. Bill @ Paralegal rate | 0.40 | 239.00 | $95.60 |
| 3/4/2024 | Deal with downloading from USAFx Bill @ Paralegal rate. | 0.40 | 239.00 | $95.60 |
| 7/8/2024 | Rev newest re-production for continued exemption usage | 1.70 | 878.00 | $1,492.60 |
| 11/7/2024 | Assemble relevant docs for experts (.4); draft expert services agreement (.4) | 0.80 | 878.00 | $702.40 |
| 11/22/2024 | Transmit relevant USU records to experts, bill at paralegal | 0.40 | 239.00 | $95.60 |
| 12/18/2024 | Assemble and prep exhibits for DCS declaration | 1.50 | 239.00 | $358.50 |

Snyder Decl., Ex. F.

As to the first three entries, Plaintiff notes they relate to using USU's software platform,

USAFx, to access its productions, and "the software was plagued with issues."  Reply at 7.

---

[6] Defendant's brief lists 5.3 hours, but the cited entries total 5.5 hours.

1    Plaintiff notes login credentials were only provided to Mr. Snyder, but he billed at a paralegal rate.

2    *Id.*  However, reasonably expended time is generally time that "could reasonably have been billed

3    to a private client."  *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008).  Plaintiff

4    has not shown that it typically bills its clients for 'failed logins and frustration" and downloading

5    issues, and the Court is not convinced that Plaintiff would pass these costs on to its client.

6    Accordingly, the Court finds these fees should be eliminated.  As Mr. Snyder has already made an

7    overall reduction on his billing records of 10 percent, the Court deducts $236.61 ($262.90 -

8    $26.29) for these fees.

9        As to the remaining entries, which are fees incurred for reviewing document production

10   and assembling files, the Court finds no deduction is warranted.  "Courts in this district have

11   concluded that tasks such as filing documents on ECF, revising and preparing documents referred

12   to in time records as 'filings,' email exchanges between attorneys, and organizing certain files in

13   anticipation of preparing a motion are not clerical tasks."  *Am. C.L. Union Immigrants' Right*

14   *Projects v. U.S. Immigr. & Customs Enf't*, 2018 WL 488997, at *4–5 (N.D. Cal. Jan. 19, 2018)

15   (citing *Elder v. Nat'l Conference of Bar Examiners*, 2011 WL 4079623, at *4 (N.D. Cal. Sept. 12,

16   2011)).

17       Defendant also argues 4.71 hours billed by Greenfire Law "for administrative tasks such as

18   calendaring, confirming services deadlines, assigning service to USPS, making sure service was

19   accomplished, reviewing file to note delivery, checking the docket, and preparing documents to

20   file which should be eliminated: 6/6/2023, 6/13/2023, 6/15/2023, 6/18/2023, 6/22/2023, 7/5/2023,

21   7/7/2023, 7/10/2023, 7/10/2023, 7/13/2023, 7/14/2023, 7/18/2023, 7/24/2023, 7/25/2023,

22   7/25/2023, 7/25/2023, 8/14/2023, 9/21/2023, 3/13/2024, 11/5/2024, 12/10/2024."  Opp'n at 12-13

23   (citing Doughty Decl., Ex. A).  These entries are billed as follows:

24

| Date | Description | Time-Keeper | Time | Rate | Total |
|------|-------------|-------------|------|------|-------|
| 6/6/2023 | Prepare complaint | Doughty | 0.20 | 878 | $175.60 |
| 6/13/2023 | Prepare pleadings to file | Doughty | 0.10 | 878 | $87.80 |
| 6/15/2023 | Complete all initial case filings | Rivo | 0.36 | 777 | $279.72 |
| 6/18/2023 | Calendar Deadline for Consent to Proceed Before Magistrate Judge | Rivo | 0.03 | 777 | $23.31 |

| 6/22/2023 | Confirm 90 day limit to serve documents in USRTK cases per FRCP Rule 4(m) | Rivo | 0.2 | 777 | $155.40 |
|---|---|---|---|---|---|
| 7/5/2023 | Update all deadlines per CMC and calendar | Rivo | 0.06 | 777 | $46.62 |
| 7/7/2023 | Incorporate recently docketed files for service packets | Rivo | 0.03 | 777 | $23.32 |
| 7/10/2023 | Prepare service packets w LR, print labels, research signature required vs. certified mail on stams.com prepare envelopes. | de la Fuente | 1.8 | 239 | $430.20 |
| 7/10/2023 | Confer with NF regarding SOP to go out today | Rivo | 0.1 | 777 | $77.70 |
| 7/13/2023 | Assign matter to each USPS certified mail service packet sent before forwarding receipt to Admin | de la Fuente | 0.1 | 239 | $23.90 |
| 7/14/2023 | Make sure service accomplished and direct staff re POS of process | Doughty | 0.1 | 878 | $87.80 |
| 7/18/2023 | Update POS for Summons issued per LR email | de la Fuente | 0.1 | 239 | $23.90 |
| 7/24/2023 | Review file, note delivery to USU Dept of Defense | Rivo | 0.1 | 777 | $77.70 |
| 7/25/2023 | Download USPS service tracking and assemble POS of Summons for AG, DIA and USAO and Pentagon | de la Fuente | 0.7 | 239 | $167.30 |
| 7/25/2023 | Update docket per DS filing Notice of Unavailability of Counsel | Rivo | 0.03 | 777 | $23.32 |
| 7/25/2023 | Review documents, confirm POS ready for all defendants as created by NF | Rivo | 0.2 | 777 | $155.40 |
| 8/14/2023 | Review returned service packet to USU (Dept of Science). Check docket regarding defendant's deadline to answer. | Rivo | 0.1 | 777 | $77.70 |
| 9/21/2023 | Confirm upcoming deadlines for CMC and CMCS in October, email DW to inquire as to adding this as a task | Rivo | 0.03 | 777 | $23.32 |
| 3/13/2024 | Calendar joint status report and associated deadlines | Rivo | 0.03 | 777 | $23.32 |
| 11/5/2024 | Review filed order and calendar all deadlines | Rivo | 0.02 | 777 | $155.40 |
| 12/10/2024 | Prepare fee motion | Doughty | 0.2 | 878 | $175.60 |

Doughty Decl., Ex. A.

Plaintiff explains Ms. Doughty's 6/6/23 and 12/10/24 entries, stating they are for time spent making substantive edits. Reply at 8. As to Ms. Rivo's entry on 6/22/23, Plaintiff states it pertains to a legal opinion on service under Rule 4(m). *Id.* The Court finds these entries are reasonable. *See Am. C.L. Union Immigrants' Right Projects*, 2018 WL 488997, at *4–5 (revising

and preparing documents are not clerical tasks).

As to the remaining entries, the Court finds a deduction is warranted. Specifically, while "communications regarding the service of the complaint" are compensable, *see id.* at 5, billing "for purely clerical tasks such as filing documents and preparing and serving summons" is not. *See Neil*, 495 F. App'x at 847 (citing *Missouri v. Jenkins*, 491 U.S. 274, 288 n. 10 (1989)). Accordingly, the Court shall deduct $668.62 for the following billing entries: 7/7/2023 ($23.32); 7/10/2023 ($430.20); 7/13/2023 ($23.90); 7/18/2023 ($23.90); and 7/25/2023 ($167.30).

Likewise, calendaring, scheduling, and docketing are not compensable as attorney fees. *Campbell v. Nat'l Passenger R.R. Corp.*, 718 F. Supp. 2d 1093, 1105 (N.D. Cal. 2010) (citing *Davis v. City and Cnty. of San Francisco*, 976 F.2d 1536, 1543 (9th Cir. 1992) *vacated in part on other grounds* at 984 F.2d 345 (9th Cir. 1993)). Accordingly, the Court shall deduct $372.99 for the following billing entries: 6/18/2023 ($23.31); 7/5/2023 ($46.62); 7/25/2023 ($23.32); 8/14/2023 ($77.70); 9/21/2023 ($23.32); 3/13/2024 ($23.32); 11/5/2024 ($155.40).

The Court finds no further deductions are warranted. In sum, the Court finds a deduction of $1,278.22 is warranted for tasks that are clerical in nature.

### b.    Internal Communication

Defendant next seeks to eliminate 15.5 hours it argues consist of improper "internal communications and review of communications." Opp'n at 13-14.

As to Greenfire Law's billing records, Defendant requests the Court eliminate 9.5 hours "of internal communications or review of communications related to the 'status of the complaint,' 'conferring on SOP,' 'exchanging emails of filing status,' 'conferring on deadlines,' 'reviewing materials from DS to Drury' [and] 'reviewing communication.'" *Id.* at 13. Defendant contests 46 billing entries (5/22/2023, 6/5/2023, 6/7/2023, 6/13/2023, 7/10/2023, 7/14/2023, 7/16/2024, 7/16/2024, 7/16/2024, 7/17/2024, 9/4/2024, 9/4/2024, 9/24/2024, 9/24/2024, 9/27/2024, 10/1/2024, 10/23/2024, 11/4/2024, 11/4/2024, 11/6/2024, 11/6/2024, 11/13/2024, 11/15/2024, 11/18/2024, 11/22/2024, 11/25/2024, 11/25/2024, 11/27/2024, 11/27/2024, 11/27/2024, 11/27/2024, 12/2/2024, 12/3/2024, 12/4/2024, 12/6/2024, 12/6/2024, 12/6/2024, 12/9/2024, 12/9/2024, 12/11/2024, 12/11/2024, 12/11/2024, 12/11/2024, 12/16/2024, 12/18/2024,

1    12/20/2024).  *Id.* (citing Doughty Decl., Ex. A).

2         As to Mr. Snyder's billing records, Defendant requests the Court eliminate six hours of

3    internal communication "updating" and "emailing" co-counsel: 6/14/2023, 7/19/2023, 9/5/2023,

4    9/25/2023, 4/3/2024, 6/5/2024, 7/11/2024, 7/16/2024, 9/26/2024, 10/1/2024, 10/23/2024,

5    11/4/2024, 11/5/2024, 11/6/2024, 11/6/2024, 11/25/2024, 11/27/2024, 12/3/2024, 12/4/2024,

6    12/6/2024, 12/9/2024, 12/16/2024, 12/18/2024, 12/18/2024.  *Id.* at 14 (citing Snyder Decl., Ex. F).

7    Defendant argues these billing entries "also are not reasonable because they are not sufficiently

8    detailed to provide insight in the necessity of the communication and because local counsel did not

9    participate in the litigation of the merits of the FOIA claim and therefore not compensable."  *Id.*

10        "The Ninth Circuit has approved reducing fees for unnecessary internal communications."

11   *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, 2020 WL 5371404, at

12   *10 (N.D. Cal. Sept. 8, 2020) (citing *Welch*, 480 F.3d at 949 (holding a district court's reduction

13   of 5.75 hours for time spent in intra-office conferences was reasonable based on plaintiff's

14   counsel's substantial experience and plaintiff's failure to provide a persuasive justification for the

15   intra-office meetings).  However, "[i]ntra-office communications are not always duplicative."

16   *Ehrhardt v. EPublishing, Inc.*, 2022 WL 22912938, at *6 (N.D. Cal. May 9, 2022).  Thus, where

17   "time entries include the discussion topic or include an attorney giving direction to a paralegal, the

18   hours spent on intra-office communications are reasonable."  *Id.*  (citing *MacDonald v. Ford

19   Motor Co.*, 2016 WL 3055643, at *4 (N.D. Cal. May 31, 2016) (holding $40,000 billed for

20   intraoffice communications was reasonable because it represented 7% of the overall billing)).

21        Here, Plaintiff's billed time is reasonable.  As to Greenfire Law's time, Defendant does not

22   articulate why particular entries are non-compensable, instead just arguing they are "not

23   reasonable."  Opp'n at 13.  Reviewing these entries, some are not internal communications but are

24   instead related to preparing and reviewing drafts.  *See, e.g.* Doughty Decl., Ex. A at 6/13/2023

25   ("Prepare pleadings to file"), 7/16/2024 ("Update fee chart with formulas"), 10/1/2024 ("Review

26   counteroffer, suggest edits and submit to DS").  Where Greenfire Law does bill for

27   communications between attorneys, it appropriately includes the discussion topic.  *See, e.g., id.*

28   6/5/2023 ("Communicate with Dan re status of complaint edits"), 6/7/2023 ("Email to DS and find

United States District Court
Northern District of California

corporate disclosure statement example"), 7/10/2023 ("Confer with NF regarding SOP to go out today"), 7/14/2023 ("Confer with NF regarding filing POS for Summons"), 7/16/2024 ("Confer with RSD regarding USRTK fees and costs"), 7/17/2024 ("Communicate with DS regarding fees and costs"), 9/4/2024 ("Exchange emails with DS regarding upcoming status report").  As such, the Court finds these entries are reasonable.  *See Ehrhardt*, 2022 WL 22912938, at *6.

As to Mr. Snyder's billing records, the Court finds the following entries should be eliminated because he doesn't provide any information about the discussion topic or otherwise give context:

| Date | Description | Time | Rate | Total |
|------|-------------|------|------|-------|
| 6/14/2023 | "Email update to LR" | 0.20 | 878 | $175.60 |
| 4/3/2024 | "Rev CMS, emails w/ Lily and Valerie" | 0.30 | 878 | $263.40 |
| 6/5/2024 | "email to LR (.1); email to VS (.1)" | 0.20 | 878 | $175.60 |
| 7/11/2024 | "Email w/ VS" | 0.10 | 878 | $87.80 |
| 9/26/2024 | "Rev email from VS, email to cocounsel re: same" | 0.20 | 878 | $175.60 |
| 10/1/2024 | "Rev emails from local counsel, finalize and serve response" | 0.10[7] | 878 | $87.80 |
| 10/23/2024 | "Emails with LR" | 0.10 | 878 | $87.80 |
| 11/4/2024 | "Emails w/ Lily and Rachel, then call w/ Rachel (.4); emails back to Valerie (.2)" | 0.60 | 878 | $526.80 |
| 11/5/2024 | "respond to VS (.2); email to team (.1)" | 0.30 | 878 | $263.40 |
| 12/3/2024 | "emails to GR (.1) email to Dave Bahr (.1); email to GFL (.1)" | 0.30 | 878 | $263.40 |
| | | | **Total** | **$2,107.20** |

*See Santiago v. Equable Ascent Fin.*, 2013 WL 3498079, at *5 (N.D. Cal. July 12, 2013) ("Work entries are inadequately vague when the district court is unable to discern how the time spent is attributable to the case at hand"; noting that courts in this District have been unable to determine whether billing entries were reasonable because the entries description only consisted of "conferences," "telephone calls," or "review of documents" without describing the subject of the call or correspondence.).  The Court finds no further deductions are warranted.

In sum, the Court finds a deduction of $2,107.20 is warranted for entries where Plaintiff "fails to "provide a persuasive justification for" seeking these fees.  *Welch*, 480 F.3d at 948.

---

[7] In his declaration, Mr. Snyder bills for 0.20 hours, but he does not break down which portion is for review of emails.  As such, the Court deducts 50%.

United States District Court
Northern District of California

1

            **c.**      **Block Billing**

2

       Defendant next argues Plaintiff's request should be reduced because Plaintiff's "block

3

billing" is unreasonable.  Opp'n at 14-15.  It argues Mr. Snyder's billing records have a total of

4

2.3 hours which should be eliminated: 8/7/2023, 8/29/2023, 9/26/2023, 3/15/2024, 9/26/2024.  *Id.*

5

(citing Snyder Decl., Ex. F.)  As to Greenfire Law, Defendant argues a total of 10 hours should be

6

eliminated: 8/14/2023, 7/16/2024, 9/24/2024, 11/4/2024, 11/6/2024, 11/15/2024, 11/18/2024,

7

11/27/2024, 11/27/2024, 11/27/224, 12/6/2024, 12/9/2024, 12/11/2024, 12/11/2024, 12/12/2024,

8

12/16/2024, 12/18/2024, 12/20/2024, 12/20/2024, 12/20/2024.  *Id.* at 15 (citing Doughty Decl.,

9

Ex. A).  Defendant argues "[a]t minimum, the Court should reduce these hours by no less than

10

20%."  *Id.*

11

       "Block billing is the time-keeping method by which each lawyer and legal assistant enters

12

the total daily time spent working on a case, rather than itemizing the time expended on specific

13

tasks."  *Welch*, 480 F.3d at 945 n.2 (cleaned up).  The Court may "reduce hours that are billed in

14

block format" because such format "makes it more difficult to determine how much time was

15

spent on particular activities."  *Id.* at 948; *Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 971

16

(D.C. Cir. 2004) (noting block billing format "lump[s] together multiple tasks, making it

17

impossible to evaluate ... reasonableness").  A district court may apply a 20 percent reduction to

18

block billed hours in these circumstances.  *Welch*, 480 F.3d at 948.  However, "block billing may

19

be appropriate when the tasks listed in a block are related."  *Electronic Frontier Foundation*, 2008

20

WL 2331959, at *6.

21

       The challenged entries for Mr. Snyder are billed as follows:

22

| Date | Description | Time | Rate | Total |
|------|-------------|------|------|-------|
| 8/7/2023 | "Phone call w/ Sai (.2); emails with client and cocounsel re: call and extension" | 0.70 | 878 | $614.60 |
| 8/29/2023 | "Emails w/ Ekta, calls to USRTK re: search terms" | 0.40 | 878 | $351.20 |
| 9/26/2023 | "Emails re: CMO, rev and edit CMO, emails re: same, then back to Ekta for filing. Add'l email re: typo." | 0.50 | 878 | $439.00 |
| 3/15/2024 | "Quick review on Vaughn for compliance with legal reqs, then email to client re: same" | 0.50 | 878 | $439.00 |
| 9/26/2024 | "Rev email from VS, email to cocounsel re: same" | 0.20 | 878 | $175.60 |

Snyder Decl., Ex. F.  The Court finds these entries, all of which are 0.70 hours or less, provide an

United States District Court
Northern District of California

appropriate break down of how time was spent on each task or are so closely related that the Court can readily discern the reasonableness of the time expended. Accordingly, no deduction is warranted. *See Am. C.L. Union Immigrants' Right Projects*, 2018 WL 488997, at *6 (declining to deduct hours where entries were related); *Clements, Jr. v. Ivory*, 2025 WL 753200, at *1 (N.D. Cal. Feb. 18, 2025) (declining to deduct for block billing where "invoices are sufficiently itemized to 'determine how much time was spent on particular activities.'") (quoting *Welch*, 480 F.3d at 948).

The same is true of Greenfire Law's entries. While Defendant identifies 20 entries it claims are block-billed, 18 are less than 0.5 hours, with most of them being 0.1-0.2 hours in length. Each challenged entry shows the time incurred relates to the same task and subject matter. *See, e.g.*, 7/16/24 (0.5 hours: "Add JSL to fee chart, review entries and reduce admin/duplicative tasks for RSD review"); 12/20/24 (0.5 hours: "Review declarations ISO fee motion, call RSD regarding same); 12/18/24 (0.3 hours: "Update costs with new expert invoices, update costs and fees chart with same; email opposing counsel re settlement discussion"). No challenged entry blocks time spent over an entire day, and the majority are for time increments of 0.1-0.4 hours. As these entries are sufficiently detailed to determine that counsels' time was expended on related tasks, the Court finds they are not block billed. *See Am. C.L. Union Immigrants' Right Projects*, 2018 WL 488997, at *6; *Clements, Jr.*, 2025 WL 753200, at *1.

### d.   Overstaffing and Duplicative Work

Defendant argues 14.8 hours of time billed should be excluded because Plaintiff's billings are characterized by overstaffing, excessive billing, and duplicative work that constitute unreasonable billing hours. Opp'n at 15-16. First, it argues "Plaintiff's counsel often had multiple attorneys working on the fees motion in this case, despite the fact that (as Plaintiff goes to great lengths to say) they claim to be highly experienced in litigation and FOIA litigation, spending 4.2 hours of time 'strategizing'" on the fee motion." *Id.* at 15 (citing Doughty Decl., Ex. A at 11/6/2024, 11/6/2024, 11/7/2024, 11/26/2024, 11/27/2024, 11/27/2024, 12/6/2024, 12/9/2024, 12/11/2024, 12/16/2024; Snyder Decl., Ex. F at 11/6/2024, 11/6/2024, 11/25/2024). Second, it argues "Plaintiff's bill 67.8 hours for fees negotiations and the fee motion which constituted

almost 70% of the entire time billed.  This time is disproportionately excessive compared to the 37.47 hours billed for the time spent litigating the merits of the FOIA complaint." *Id.* (citing Smith Decl., Exs. A, D, ECF No. 46).  Third, Defendant argues "Plaintiff improperly seeks to bill for the cost of expert declarations from 'experts' that Plaintiff failed to disclose." *Id.*  Fourth, Defendant argues Greenfire Law bills excessively for the creation of fee charts, totaling 3.7 hours. *Id.* (citing Doughty Decl., Ex. A at 11/12/2024, 11/27/2024, 12/6/2024, 12/9/2024, 12/11/2024, 12/11/2024, 12/12/2024, 12/17/2024, 12/18/2024).

"The Court may reduce the lodestar where the case was overstaffed and hours are duplicated." *Stonebrae, L.P. v. Toll Bros.*, 2011 WL 1334444, at *12 (N.D. Cal. Apr. 7, 2011), *aff'd*, 521 F. App'x 592 (9th Cir. 2013) (citing *Chalmers v. Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986)).  "While it is not uncommon to have co-counsel in litigation, and fees are commonly awarded to multiple counsel, counsel seeking fee awards bear the risk that the lodestar will be subject to scrutiny and possible reduction due to unreasonable inefficiencies and duplicative efforts engendered by multiple counsel and law firms." *Id.*; *see also Herrington v. Cnty. of Sonoma*, 883 F.2d 739, 747 (9th Cir.1989) (The identification of "duplication of effort by the co-counsel assigned to [a] case . . . necessitates some reduction of the hours claimed."); *Rosenfeld v. U.S. Dep't of Justice*, 904 F. Supp. 2d 988, 1006 (N.D. Cal. 2012) ("subtracting ten percent of the time claimed" for "unnecessarily duplicative and redundant hours . . . resulting from multiple counsel performing overlapping work").

The Court finds a deduction is not warranted in this case.  Defendant challenges Plaintiff's conduct in spending 4.2 hours "strategizing," Opp'n at 15, but a private party would reasonably pay their attorneys to think about their case's strengths and weaknesses.  *See id.* (challenging Snyder 11/6/24 entries, which pertain to "legal strategy for petition" and "call with potential expert on fees and cost strategy (.6); f/u with team and USRTK (.3)").  As to time spent negotiating and preparing a fee motion, courts encourage parties to engage in settlement discussions on FOIA fees.  *Coffey v. Bureau of Land Mgmt.*, 316 F. Supp. 3d 168, 172 (D.D.C. 2018) (awarding fees for time spent in FOIA fees settlement discussions).  This is also not a case in which Plaintiff retained a large number of attorneys to work on this case.  *Compare Stonebrae,*

United States District Court
Northern District of California

United States District Court
Northern District of California

*L.P.*, 2011 WL 1334444, at *13 (finding defendant "demonstrated a substantial amount of duplication and inefficiency generally resulting from the fact that 26 attorneys worked on this case"). While there may be some instances of duplicate billing, it does not appear to be unreasonable, given the reality of working in a small litigation team, where some issues will require multiple sets of eyes and further discussions. *See Kim v. Fujikawa*, 871 F.2d 1427, 1435 n.9 (9th Cir. 1989) ("participation of more than one attorney does not necessarily constitute an unnecessary duplication of effort.").

As to excessive billing, Plaintiff presented Mr. Bahr's declaration to compare hours incurred in this case to other similarly situated FOIA matters. In response, Defendant somewhat confusingly asserts that "those cases, which involved different claims and a completely different set of facts, do not control the fact-specific reasonableness inquiry in this case," Opp'n at 20, while at the same time arguing that Plaintiff's hourly rates should be reduced to rates awarded by other courts, in other districts, based on cases involving different claims and facts, *id.* at 18-19. As to Mr. Bahr's and Mr. Drury's declarations, as discussed above, Plaintiff was not required to disclose its fee experts.

Accordingly, the Court finds no reduction is warranted.

### e.    Overall Deduction

Finally, Defendant argues the Court should impose an additional overall percentage cut on the fees request. Opp'n at 16. Courts in the Ninth Circuit are permitted to "impose a small reduction, no greater than 10 percent—a 'haircut'—based on [their] exercise of discretion and without a more specific explanation" given their relative familiarity with the case. *Moreno*, 534 F.3d at 1112; *see also Lahiri v. Universal Music & Video Distribution Corp.*, 606 F.3d 1216, 1222 (9th Cir. 2010) ("An apportioned percentage is not an abuse of discretion because it would be impossible to determine with mathematical precision the fees and costs generated [in certain situations].""); *Banas v. Volcano Corp.*, 47 F. Supp. 3d 957, 969 (N.D. Cal. 2014) (finding a further 5% discretionary deduction appropriate).

Defendant argues a reduction is appropriate because the fees Plaintiff seeks for time spent on fees negotiations and the fee motion are well over the amount billed for time spent litigating the

merits of the FOIA complaint.  However, courts regularly award fees for work on fee motions that are large in comparison to the fees awarded on the merits.  *See, e.g., Bernardi v. Yeutter*, 951 F.2d 971, 977 (9th Cir. 1991) (awarding $65,641.50 for fees work, 58.2% the size of the merits lodestar); *Hum. Rights. Def. Ctr. v. Cnty. of Napa*, 2021 WL 1176640, at *14 (N.D. Cal. Mar. 28, 2021) ("The Court also does not agree that the fees for fees request is unreasonable because it amounts to over half of the merits fee request."); *Prison Legal News v. Schwarzenegger*, 561 F. Supp. 2d 1095, 1101-05, 1107 (N.D. Cal. 2008) (granting request for fees with $42,098.38 for fees work, 44.7% the size of the merits lodestar).  The Court further notes that where, as here, a case settles early in the litigation, the proportion of time spent on recovering attorneys' fees relative to the time spent on the merits is likely to be larger than it would be if the parties engaged in lengthy litigation.  In that context, the Court finds that such a comparison is not necessarily a good measure of reasonableness.  Nor does it make sense to take an approach that essentially penalizes a plaintiff for obtaining an early settlement.  Accordingly, the Court finds a "haircut" is unwarranted.

### 5.    Multiplier

The court may award a multiplier and adjust the lodestar upwards or downwards.  *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000).  However, there is a strong presumption that the lodestar is reasonable and should only be adjusted in "rare or exceptional cases, supported by both specific evidence on the record and detailed findings . . . that the lodestar amount is unreasonably low or unreasonably high."  *Id.* (cleaned up).  The Court has broad discretion in determining whether to award a multiplier.  *In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litigation*, 109 F.3d 602 (9th Cir. 1997).

In its motion, Plaintiff requested a fee multiplier of 1.5.  Mot. at 17-18, 20.  However, Defendant opposed Plaintiff's request, arguing it failed to offer any support an award of a multiplier in this case.  Opp'n at 24.  In its reply, Plaintiff withdrew the request.  Reply at 1 n.1 ("To simplify the issues before the Court, USRTK no longer seeks a multiplier in this case.").  As such, the Court declines to award a multiplier.

### 6.    Fees on Fees

Defendant also argues Plaintiff is not entitled to an award of "fees on fees" because it made an offer of settlement for $23,500 on November 5, 2024 under Rule 68 to resolve the issue of attorneys' fees.  Opp'n at 21-22 (citing Smith Decl., Ex. E).  It maintains Plaintiff must establish that an award in excess of $23,250 is reasonable for work completed up to and including November 5, 2024 to recover for costs and fees billed after November 5, 2024.  *Id.* at 22.

Plaintiffs may recover attorney's fees for time reasonably expended on a motion for attorney's fees and costs.  *Brown v. Sullivan*, 916 F.2d 492, 497 (9th Cir. 1990).  "As a general rule, fees awarded for work on a fee motion should 'bear a rational relation to the number of hours spent litigating the merits of the case.'"  *Hum. Rights. Def. Ctr.*, 2021 WL 1176640, at *14 (quoting *Vallejo v. Astrue*, 2011 WL 4383636, at *4 (E.D. Cal. Sept. 20, 2011)).  Thus, "an inflated request for a 'fees-on-fees' award may be reduced to an amount deemed reasonable by the awarding court."  *Rosenfeld*, 903 F. Supp. 2d at 878 (reducing fees on fees award by 30% where requested award was "grossly inflated," finding many arguments made were repeated by the same counsel in fees motion brought in a related case).

As discussed above, because this case settled prior to any motion practice, the proportion of time spent on attorneys' fees relative to the time spent on the merits is naturally larger than it would have been if the parties continued to litigate.  Further, courts regularly award fees for work on fee motions that are large in comparison to the fees awarded on the merits.  *See, e.g., Bernardi*, 951 F.2d at 977; *Prison Legal News*, 561 F. Supp. 2d at 1107.  Apart from the specific entries discussed above, the Court has determined Plaintiff's requested time is reasonable.  *See Kopp v. United States Secret Serv.*, 2019 WL 2327933, at *7 (N.D. Cal. May 31, 2019) ("Because the issue of fees was not resolved by the production of documents, further litigation beyond that point was necessary, and fees for such litigation were reasonably incurred."); *Hum. Rights. Def. Ctr.*, 2021 WL 1176640, at *14 (finding fees on fees request reasonable because case settled early in the litigation and the proportion of time spent on recovering attorneys' fees relative to the time spent on the merits was understandably larger than if the parties engaged in lengthy litigation).

As to Defendant's argument regarding work performed after the Rule 68 offer, it is true

United States District Court
Northern District of California

1    that a plaintiff is not entitled to "fees on fees" work performed after acceptance of a Rule 68 offer

2    where the offer limited plaintiff to hours expended "prior to the date of" offer.  *See Guerrero v.*

3    *Cummings*, 70 F.3d 1111, 1113 (9th Cir. 1995).  However, Plaintiff did not accept Defendant's

4    offer, and Rule 68 only requires an offeree to obtain a judgment that is "more favorable than the

5    unaccepted offer," not that it obtain a fee higher than what is offered for the specific time period in

6    which the offer was made.  Fed. R. Civ. P. 68(d).

7        For these reasons, the Court finds the time Plaintiff seeks for its fees on fees work is

8    reasonable, and no deduction is warranted.

9    **C.    Costs**

10       Plaintiff also seeks $6,583.96 in costs for the filing fee ($402), pro hac vice admission fee

11   ($317), postage related to the service of the complaint ($33.12), legal research costs ($251.54),

12   Pacer charges ($2.30), expert witness costs for Mr. Drury ($760.00) and expert witness costs for

13   Mr. Bahr ($4,818.00).  Snyder Decl. ¶ 28; Doughty Decl. ¶¶ 10-12.

14       FOIA allows district courts to "assess against the United States reasonable attorney fees

15   and other litigation costs reasonably incurred in any case under this section in which the

16   complainant has substantially prevailed."  5 U.S.C. § 552(a)(4)(E)(i).  Costs are typically awarded

17   to the prevailing party in a civil action as a matter of course unless the court directs otherwise.  *See*

18   Fed. R. Civ. R. 54(d).  The Court finds Plaintiff's request reasonable as to the filing fee and

19   service costs.  *See Hum. Rights Def. Ctr.*, 2021 WL 1176640, at *16 (awarding filing fees and

20   service of process fees).  Plaintiff's request is also reasonable as to Pacer charges and legal

21   research costs.  *See Trustees of Const. Indus. & Laborers Health & Welfare Tr. v. Redland Ins.*

22   *Co.*, 460 F.3d 1253, 1258 (9th Cir. 2006) (expenses for computerized legal research are

23   compensable as "reasonable attorney's fees" so long as "separate billing for such expenses is 'the

24   prevailing practice in the local community.'") (quoting *Missouri*, 491 U.S. at 287 n. 9); *Logtale,*

25   *Ltd. v. IKOR, Inc.*, 2016 WL 7743405, at *5 (N.D. Cal. Oct. 14, 2016) (finding that passing on

26   legal research costs is "the prevailing practice" in the local community); *Bd. of Trustees v.*

27   *Piedmont Lumber & Mill Co.*, 2016 WL 4446993, at *3 (N.D. Cal. Aug. 24, 2016) (awarding

28   costs of PACER and legal research).

United States District Court
Northern District of California

1     However, pro hac vice fees are not recoverable as costs. *Kalitta Air L.L.C. v. Cent. Texas*

2  *Airborne Sys. Inc.*, 741 F.3d 955, 958 (9th Cir. 2013) (reversing district court's award of costs for

3  pro hac vice fees); *Tarango v. City of Bakersfield*, 2017 WL 5564917, at *21 (E.D. Cal. Nov. 20,

4  2017) (declining to award $436.00 related to obtaining certificates of good standing and

5  applications to proceed pro hac vice, holding that "[t]his Court has determined 'pro hac vice fees

6  are not recoverable as costs.' . . . Fees related to pro hac vice applications are akin to fees for

7  admittance to a state or federal bar, which an attorney would not expect either a client or losing

8  party to pay.") (collecting cases)). Accordingly, the Court declines to award Plaintiff's request for

9  $317 in costs for pro hac vice admission fees.

10     As to Plaintiff's request for costs related to expert declarations, while FOIA allows for

11  recovery of "reasonable attorney fees and other litigation costs," it does not contain language that

12  explicitly allows for the recovery of expenses associated with expert witnesses and consultants.

13  "A statute awarding 'costs' will not be construed as authorizing an award of litigation expenses

14  beyond the six categories listed in [28 U.S.C. §§] 1821 and 1920, absent an explicit statutory

15  instruction to that effect."[8] *Rimini St., Inc. v. Oracle USA, Inc.*, 586 U.S. 334, 340 (2019)

16  ("Sections 1821 and 1920 create a default rule and establish a clear baseline against which

17  Congress may legislate. Consistent with that default rule, some federal statutes simply refer to

18  'costs.' In those cases, federal courts are limited to awarding the costs specified in §§ 1821 and

19  1920.") As such, "courts have held that th[e] language in FOIA does not constitute the explicit

20  authorization needed to allow recovery of expert witness expenses beyond the per diem expert

_____

[8] The six categories that a federal court may award as costs are:
    (1) Fees of the clerk and marshal;
    (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
    (3) Fees and disbursements for printing and witnesses;
    (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
    (5) Docket fees under section 1923 of this title;
    (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.
28 U.S.C. § 1920.
In addition, § 1821 provides reimbursement rates for witnesses' "[p]er diem and mileage" expenses.

witness fee authorized by 18 § U.S.C. § 1821." *Myers v. Aitkin Cnty.*, 2016 WL 11186989, at *21 (D. Minn. Nov. 30, 2016), *report and recommendation adopted in relevant part, rejected in part*, 2017 WL 1134575 (D. Minn. Mar. 27, 2017); *Nw. Coal. for Alternatives to Pesticides v. Browner*, 965 F. Supp. 59, 66 (D.D.C. 1997) (in FOIA case, finding "Plaintiffs are not entitled, however, to reimbursement for expert services") (citing *W. Virginia Univ. Hosps., Inc. v. Casey*, 499 U.S. 83, 86-91 (1991)); *Ray v. U.S. Dep't of Just., I.N.S.*, 856 F. Supp. 1576, 1585 (S.D. Fla. 1994), *aff'd sub nom. Ray v. U.S. Dep't of Just.*, 87 F.3d 1250 (11th Cir. 1996) ("Thus, it follows that the FOIA fee-shifting provision, which allows recovery for 'attorney's fees and other litigation costs reasonably incurred,' would not allow the court to award expert witness fees in excess of the limit set by § 1821."). Accordingly, the Court declines to award Plaintiff's request for $5,578 in expert witness costs.

Accordingly, the Court awards $688.96 in costs.

## V.    CONCLUSION

For the reasons stated above, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's motion. The Court awards $74,312.88 in attorneys' fees and $688.96 in costs.

**IT IS SO ORDERED.**

Dated: March 19, 2025

THOMAS S. HIXSON
United States Magistrate Judge

*United States District Court*
*Northern District of California*